IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

      Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

      Defendants.

---

## PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc.

("Plaintiff") hereby moves for entry of final summary judgment against defendants Nofal LLC

d/b/a Food Town Mart ("Nofal LLC") and Sharif Jaber ("Jaber") (collectively, the "Defendants"),

and states as follows:

## INTRODUCTION

Defendants own and operate the "Food Town Mart" (f/k/a "Villard Foodtown")

supermarket located at 3217 W. Villard Avenue, Milwaukee, WI 53209. This lawsuit concerns

whether Defendants displayed/published, without Plaintiff's permission, one of Plaintiff's

copyrighted photographs on a Facebook page (https://www.facebook.com/villardfoodtown/) (the

"Facebook Page") purporting to be the official Facebook page for Food Town Mart. Although

Jaber *perjured* himself for several hours in deposition by disclaiming the Facebook Page and

absurdly claiming that the photographs thereon did not depict his grocery store, he apparently

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

forgot to get his son, Amjad Hamed ("Hamed"), on the same lie. As set forth herein, Hamed unequivocally testified that the Facebook Page is the official page for Food Town Mart, that Hamed was responsible for publishing/displaying the subject photograph thereon, that the photographs on the Facebook Page do depict the grocery store, and that his father was well aware of all of this. Defendants can certainly attempt to create an issue of fact here, but Plaintiff *suspects* that Jaber will now retreat from his prior perjurious testimony and acknowledge what the naked eye already can see – the Facebook Page is under Defendants' control, Defendants caused the photograph to be published/displayed thereon, and Defendants did not have a license/permission from Plaintiff.

## STATEMENT OF UNDISPUTED FACTS

1.  Plaintiff is in the business of licensing high-end, professional photographs for the food industry.[1]

2.  Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly fee of, at minimum, $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.[2]

3.  Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios

---

[1]     See Declaration of Rebecca Jones, dated January 9, 2024 (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A," at ¶ 3.

[2]     Id. at ¶ 4.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.[3]

4.   Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.[4]

5.   Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end suers' for which Plaintiff's photographs are to be used). Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).[5]

6.   In 1997, a professional photographer employed and/or contracted by Plaintiff created a photograph titled "RawPorkChopCCBnls005_ADL.jpg" (the "Work").  A copy of the Work is displayed below:[6]

---

[3]   Id. at ¶ 5.

[4]   Id. at ¶ 6.

[5]   Id. at ¶ 7.

[6]   Id. at ¶ 14.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228



7. The Work is owned by Plaintiff for which Plaintiff serves as the licensing agent. The Work is available for license on the above-stated terms, and all were created through the same or substantially similar creative process as described above.[7]

8. The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on January 20, 2017 and was assigned Registration No. VA 2-027-172. A true and correct copy of the Certification of Registration pertaining to the Work is attached to the Second Amended Complaint as Exhibit "A" thereto.[8]

9. Nofal LLC owns and operates a full-line grocery store located at 3217 W. Villard Avenue, Milwaukee, WI 53209 under the trade name "Food Town Mart" and/or "Foodtown Mart."[9]

---

[7]  Id. at ¶ 15.

[8]  Id. at ¶ 16.

[9]  See Deposition Transcript of Sharif Jaber, dated September 26, 2023 (the "Jaber Tr."), a true and correct copy of which is attached hereto as Exhibit "B," at 7:22 – 8:21.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

10.     Jaber is the manager, sole member, and person with exclusive control over the business activities of Nofal LLC.[10]

11.     Nofal LLC maintains a business Facebook page at https://www.facebook.com/villardfoodtown.[11]

12.     On September 28, 2020 (after Plaintiff's above-referenced copyright registration of the Work), Nofal LLC published the Work on its business Facebook page (at https://www.facebook.com/villardfoodtown/?ref=page_internal):[12]



---

[10]     Id. at 8:4 – 8:18; 17:4 – 17:20.

[11]     See Deposition Transcript of Amjad Hamed, dated (the "Hamed Tr."), a true and correct copy of which is attached hereto as Exhibit "C," at 10:23 – 11:23; 15:1 – 15:16; 19:10 – 19:20.

[12]     Id. at 21: 19 – 22:21; see also Second Amended Complaint, at Exhibit B thereto.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

13.     Defendants are not and have never been licensed to use or display the Work.[13]

## ARGUMENT

## I.     Legal Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Material facts" are those that "might affect the outcome of the suit."  See Anderson, 477 U.S. at 248.  A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Id.  Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor.  Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

## II.     Plaintiff is Entitled to Final Summary Judgment

### A.     *Count I – Copyright Infringement*

#### 1.     Elements of Copyright Infringement

Count I of the Second Amended Complaint asserts a claim for copyright infringement against Nofal LLC with respect to its publication/display of the Work on the Facebook Page.  The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the

---

[13]     See Jones Decl., at ¶ 18.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement has two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" FameFlynet, Inc. v. Jasmine Enters., 344 F. Supp. 3d 906, 910–11 (N.D. Ill. 2018) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, (1991)).

### a) *Ownership of a Valid Copyright*

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c). Here, the Second Amended Complaint alleges that the Work was not registered until later than 5 years from first publication. The registration certificate therefore does not constitute "prima facie" evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim. See, e.g., Sater Design Collection, Inc. v. Waccamaw Constr., Inc., Civil Action No. 4:08-cv-4133-TLW-SVH, 2011 U.S. Dist. LEXIS 15226, at *9 (D.S.C. Feb. 14, 2011) (quoting M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 434 (4th Cir. 1986)) ("The Fourth Circuit Court of Appeals has held that a certificate of copyright granted by the Copyright Office 'is prima facie proof of the validity of plaintiff's copyright, including the existence of the elements of originality and fixation.'"); Softech Worldwide, LLC v. Internet Tech. Broad. Corp., 761 F. Supp. 2d 367, 371 (E.D. Va. 2011) (" Regarding ownership, a certificate of registration from the United States Copyright Office is prima facie evidence of a copyright's validity."; Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans.").  As succinctly explained in <u>Southall v. Force Partners, LLC</u>, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not *forbid[14]* a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright. <u>Yurman Design, Inc. v. Golden Treasure Imps., Inc.</u>, 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright<u>); Telerate Sys., Inc. v. Caro</u>, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). ***In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's evidentiary weight can be presented to the Court for decision***.[15] The copyright-infringement claim survives.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above.  Defendants have not challenged or otherwise contested Plaintiff's ownership of the Work, nor have they raised any affirmative defenses concerning ownership.  As such, Plaintiff has satisfied the first element.

---

[14]     Emphasis in original.

[15]     Emphasis added.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

### b) *Copying of Constituent Elements*

The copying element of an infringement claim has two components. <u>See</u> <u>CRC Press, LLC</u> <u>v. Wolfram Research, Inc.</u>, 149 F. Supp. 2d 500 (C.D. Ill. 2000). "The second element of copying can be divided into two subissues: (1) 'whether the alleged copier had access to the work that he is claimed to have copied;' and (2) whether the copied work is substantially similar to the copyrighted work." <u>Id</u>. at 505.

In reverse order, the copy of the Work, compared with the screenshots of the Facebook Page, unequivocally show the two photographs to be the same:

 

Clearly, the constituent elements of the Work were copied and displayed on the Facebook page, leaving only the question as to whether Defendants (rather than some unaffiliated third-party) were responsible for the copying.

Here, Jaber testified that Nofal LLC does business as Food Town Mart, that he is the sole owner of Food Town Mart, and that the address for Food Town Mart is 3217 W. Villard Avenue,

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Milwaukee, WI 53209.[16]  Despite being the owner of Nofal LLC since 2017,[17] Jaber repeatedly testified in his deposition that Nofal LLC/Food Town Mart **does not** have a Facebook page, that the Facebook Page is **not** controlled by Nofal LLC, that the photographs thereon depicting the store were apparently some other location he was not familiar with, and that the assortment of products displayed thereon (such as hookahs and speakers) were **never** sold in the store.[18]  Jaber testified that he is at the Food Town Mart store at least 5 days per week consistently since 2017 and knows what is happening at and inside the store.[19]

Jaber's testimony about the Facebook Page not being associated with his store is, in a word, **perjury**.  Following the deposition, Plaintiff sent a Subpoena to Produce Documents, Information, or Objects (the "Subpoena") to Meta Platforms, Inc. (Facebook) for production of documents identifying the subscriber information/owner of the Facebook Page.[20]  On November 13, 2023, Meta Platforms, Inc. responded to the Subpoena by producing thirteen (13) pages of documents that identify "Amjad Hamed" as the owner of the Facebook Page.[21]

Plaintiff took Hamed's deposition on December 18, 2023.  Hamed lives with his parents, one of which is Jaber.[22]  Hamed has worked for Food Town Mart for the last 3 years.[23]  He is employed as Food Town Mart's "floor manager," meaning that he is in charge of ordering, in

---

[16]    See Jaber Tr., at 7:22 – 8:21.

[17]    Id. at 11:8 – 11:10.

[18]    Id. at 14:19 – 14:21; 15:1 – 15:2; 19:20 – 19:25; 22:20 – 23:4; 25:24 – 26:19; 30:14 – 31:2; 31:18 – 31:22; 31:23 – 32:8; 32:21 – 32:3; 33:22 – 34:7; 34:19 – 34:25.

[19]    Id. at 45:21 – 46:7.

[20]    A true and correct copy of the Subpoena is attached hereto as Exhibit "D."

[21]    A true and correct copy of the documents produced by Meta Platforms, Inc. is attached hereto as Exhibit "E."

[22]    See Hamed Tr., at 6:13 – 6:14.

[23]    Id. at 7:22 – 8:11.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

charge of opening the store, closing the store, and making sure everything is in order.[24] Interestingly, Jaber was asked during his deposition to identify each of the employees of Food Town Mart[25] and whether he could think of any person who could be running the Facebook Page.[26] Although Jaber listed himself and others as the employees of Food Town Mart, he neglected to mention that his son, Hamed, was also an employee of the store.

Contrary to his father's testimony, Hamed testified that Food Town Mart ***does*** have a Facebook page and that he is the person in charge thereof, with his brother (Nofal) running the Facebook Page prior to Hamed taking over.[27] Hamed testified that he was the person who created the subject September 28, 2020 posting on the Facebook Page which utilized the Work to advertise the sale of pork chops.[28] Hamed likewise testified (again contrary to Jaber's testimony) that Food Town Mart does sell hookahs and that the photographs of such on the Facebook Page were hookahs being sold in the store.[29] Hamed likewise testified that (again contrary to Jaber's testimony) that Food Town Mart does sell speakers and that the photographs of such on the Facebook Page were speakers being sold in the store.[30] Indeed, Hamed confirmed that ***all*** of the postings on the Facebook Page depict or relate to items for sale at the Food Town Mart store or were otherwise

---

[24]  Id. at 9:24 – 10:4.

[25]  Id. at 26:20 – 28:18.

[26]  Id. at 33:4 – 33:7.

[27]  Id. at 10:23 – 11:23; 15:1 – 15:16; 19:10 – 19:20.

[28]  Id. at 21: 19 – 22:21.

[29]  Id. at 31:19 – 32:8; 34:2 – 34:13; 36:23 – 38:1; 38:4 – 38:18.

[30]  Id. at 41:16 – 42:4.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

promoting the store.[31]  Perhaps most importantly, Hamed testified that Jaber was aware that Hamed was running Food Town Mart's Facebook Page:

> Q. Was your father aware that you were running the Facebook account for the store?
> A. Yes, sir.[32]

Thus, unless Defendants are prepared to double down on Jaber's perjurious testimony to create an issue of fact, it is crystal clear that the Facebook Page is controlled by Defendants (through Hamed, their floor manager) and that the Work was published/displayed thereon.  Hamed found the Work online by doing a Google search, finding a photograph he liked, and then copying/pasting such photograph.[33]  There is no question that Defendants copied the constituent elements of the Work, meaning that both elements of a claim for copyright infringement are proven here.

### 2. Defendant's Infringement was Willful

"[I]infringement is willful 'if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right.'"  Bell v. Merchs. Bank of Ind., 456 F. Supp. 3d 1046, 1051 (S.D. Ind. 2020) (quoting Wildlife Exp. Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 511 (7th Cir. 1994)).  Here, Hamed found the Work by doing basic Google searches and not even endeavoring to visit the websites on which photos were hosted prior to copying/taking screenshots of such photos.  He was given no instructions or policies to follow by his father or brother and was essentially left on his own to populate the Facebook Page.  This is,

---

[31]     Id. at 42:19 – 45:4.

[32]     Id. at 45:18 – 45:20.

[33]     Id. at 23:18 – 25:17

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

at minimum, reckless. See, e.g. Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1186 (9th Cir. 2016) ("Given an approval process that never explicitly asks about copyrights at all, a jury could reasonably conclude that Live Nation's reliance on the artists who were the subjects of the photographs at issue to clear photographic rights, rather than on the photographers who took them — based only on a purported industry practice never reflected in any document — amounted to recklessness or willful disregard, and thus willfulness."); Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 991-92 (9th Cir. 2017) (finding willfulness where defendant "did not attempt to discover the origin of the Subject Design in this case."). But coupled with Jaber's perjurious testimony where he spent hours lying under oath about the Facebook Page and failing to disclose his son's involvement therewith, there is little question that willfulness exists here.

Finally, a finding of willfulness is likewise proper when a defendant, despite notice of an alleged infringement, fails or refuses to remove the subject work from its website/social media. See, e.g. Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *10 (S.D. Fla. Dec. 19, 2022) ("Defendant's refusal to remove Plaintiff's Work after nearly a dozen communication attempts demonstrates Defendant's willfulness."); Burch v. Nyarko, 2007 U.S. Dist. LEXIS 55345, at *3 (S.D.N.Y. July 30, 2007) ("Nyarko's conduct throughout this action - reflected in his refusal to talk to Plaintiff, to remove the photographs promptly from the website, and to respond to this suit - supported a finding of willfulness under 17 U.S.C. § 504(c)(2)."); Schwabel v. HPT Serv., LLC, No. 3:17-cv-791-J-34JBT, 2018 U.S. Dist. LEXIS 171820, at *10 n.8 (M.D. Fla. Sep. 6, 2018) ("Because Defendant failed to remove the Photograph from the subject sites after Plaintiff demanded that he do so, the undersigned recommends that the infringements were willful."). As

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

discussed below, Nofal LLC did not endeavor to remove the Work from the Facebook Page until at least December 2023 – long after this lawsuit was filed.

### 3. Damages[34]

#### a) Actual Damages

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are 'usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.'" Bell v. Taylor, 827 F.3d 699 (7th Cir. 2016) (quoting McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003)).

"In calculating the fair market value of an unauthorized use, courts will attempt to determine the price to which a willing buyer and a willing seller would have agreed had they engaged in an ex-ante 'hypothetical negotiation' for the specific type of unlicensed use at issue." Epic Sys. Corp. v. Attachmate Corp., No. 15-cv-179-bbc, 2016 U.S. Dist. LEXIS 88572, at *4 (W.D. Wis. July 8, 2016). "In situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.'" Id. at *4–5 (quoting McRoberts Software, Inc., 329 F.3d at 566).

---

[34] To the extent the Court finds Defendants' conduct to be willful, Plaintiff requests that the Court enter final judgment on the entirety of Plaintiff's claim for copyright infringement (including damages). If the Court believes genuine issues of material fact exist with respect to willfulness, then Plaintiff requests that the Court enter partial summary judgment on liability and allow the parties to proceed to trial on willfulness/damages.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

As set forth in the Jones Decl. (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15–20-year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the one at issue

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1-2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

Here, Nofal LLC first published/displayed the Work on its Facebook Page on September 28, 2020. The Work remained published/displayed thereon until at least December 18, 2023 (the date of Hamed's deposition at which he testified he had not removed any photographs from the Facebook Page).[35] This would result in at least three (3) years of licensing owing to Plaintiff (September 28, 2020 – December 18, 2023). For each year that Nofal LLC published the Work, Plaintiff would be owed an annual license fee of $11,988.00. Plaintiff thus proffers that its actual damages can be calculated as follows: $11,988.00 x 3 = $35,964.00.

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's damages:

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find

---

[35]    See Hamed Tr., at 27:7 – 27:12.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

$11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

<u>Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC</u>, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022). The same analysis was adopted by a multitude of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before those courts. <u>See, e.g.</u> <u>Prepared Food Photos, Inc. v. 193 Corp.</u>, No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; <u>Prepared Food Photos, Inc. v. Miami Beach 411 Corp.</u>, No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); <u>Prepared Food Photos, Inc. v. Fat Daddy Co.</u>, No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.</u>, No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc.</u>, No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc.</u>, Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing the

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

$11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Shadowbrook Farm LLC, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto).

### b)  *Statutory Damages*

Pursuant to 17 U.S.C. § 504(c)(1), a copyright owner "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(2) further provides that, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Here, Plaintiff elects to recover statutory damages in the Court's discretion.

Where (as here) willful infringement has occurred, courts will generally look to a plaintiff's actual damages and award 2x – 5x to properly account for statutory damages.. Nicholl v. Sec. Studies Grp., Civil Action No. 1:21cv0563 (TSE/JFA), 2022 U.S. Dist. LEXIS 95811, at *11 (E.D. Va. Mar. 25, 2022) ("In cases of knowing and deliberate infringement, it is common practice to award more than the statutory minimum and more than the infringer would have paid in licensing fees. An award equal to five times the typical licensing fee is also more likely to deter future copyright infringement than an award of the licensing fees alone."). See, e.g., Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendants' conduct is willful and justifies a substantial damages award:

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound. (DE 1 ¶¶ 15, 17). Further, as described above, Defendant's conduct was willful. And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Commc'n Corp.*, 902 F.3d at 851 (internal quotation omitted). The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Patriot Fine Foods LLC, 2022 U.S. Dist. LEXIS 205649, at *12-13. The same facts and damages analysis as in Patriot Fine Foods apply to this present case. Plaintiff's licensing structure is a strong proxy for calculating damages. Likewise to Judge Middlebrooks' finding in Patriot Fine Foods, and given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of ***$71,928.00*** ($35,964.00 x 2) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law. Plaintiff requests the Court to apply the same multiplier Judge Middlebrooks applied in Patriot Fine Foods, wherein his honor doubled the actual damages (the one annual period of use) to account for Plaintiff's inability to conduct discovery and to deter future violations.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

### B. Count II – Vicarious Copyright Infringement

#### 1. Elements of Copyright Infringement

Count II of the Second Amended Complaint asserts a claim against Jaber for vicarious copyright infringement. "A defendant can be held vicariously liable for copyright infringement where he: (1) profits directly from the infringement, and (2) has a right and ability to supervise the direct infringer." <u>Bertam Music Co. v. P & C Enters., Inc.</u>, No. 09-CV-2253, 2011 U.S. Dist. LEXIS 71967, at *25 (C.D. Ill. July 5, 2011). "It is well settled that vicarious liability can be imposed even if the defendant initially lacks knowledge of the infringement. Liability for copyright infringement may be imposed on individuals who 'have the right and ability to supervise the infringing activity and have a financial interest in the exploitation of copyrighted materials." <u>Id.</u> (quoting internal quotation marks and citations omitted).

Jaber is unequivocally liable here for vicarious copyright infringement. Per his own testimony, Jaber is the sole owner of Nofal LLC and the person responsible for its operations. The infringement was posted by Food Town Mart's floor manager (Hamed), Jaber's son who directly reported to Jaber as his "boss."[36] Jaber himself testified that, other than himself, there is nobody else who has any control of Nofal LLC.[37] Thus, Jaber is equally responsible for any judgment of copyright infringement entered against Nofal LLC.

### C. Plaintiff is Entitled to Recover its Reasonable Attorneys' Fees and Costs

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing

---

[36]     <u>See</u> Hamed Tr., at 15:22 – 16:3; 27:13 – 27:16.

[37]     <u>See</u> Jaber Tr., at 8:16 – 8:18; 17:4 – 17:20.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendants' infringement and their actions in delaying this action through outright perjurious testimony/denials, an award of full costs and attorney's fees to Plaintiff is appropriate.  Accordingly, Plaintiff requests the Court to find that Plaintiff is entitled to recover its reasonable costs/attorneys' fees subject to a future motion/declaration setting forth the amount of such being sought.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court enter an Order: (a) granting final summary judgment in favor of Plaintiff; (b) awarding Plaintiff $71,928.00 in statutory damages; (c) alternatively (to the extent the Court does not find willfulness can be disposed of on summary judgment), awarding partial summary judgment in favor of Plaintiff on the matter of liability with respect to Counts I and II; and (d) for such further relief as the Court deems proper.

Respectfully submitted,

Dated: January 9, 2024.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com


By: /s/ Daniel DeSouza___
Daniel DeSouza, Esq.
Florida Bar No. 19291

## CERTIFICATE OF SERVICE

22

I hereby certify that on January 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/ Daniel DeSouza
Daniel DeSouza, Esq.