UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING & COMMUNICATIONS CO., INC.,

   Plaintiff,

v.                 Case No.: 22-CV-642

NOFAL, LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

   Defendants.

---

### DEFENDANTS, NOFAL LLC d/b/a FOOD TOWN MART AND SHARIF JABER'S MEMORANDUM IN RESPONSE AND OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

---

  The defendants, Nofal, LLC d/b/a Food Town Mart and Sharif Jaber, by their attorneys, Terschan, Steinle, Hodan & Ganzer, Ltd., by W. Timothy Steinle, as and for a Memorandum in Response and Opposition to Plaintiff's Motion for Final Summary Judgment state as follows:

### INTRODUCTION

  The plaintiff has filed this instant motion for Final Summary Judgment. Accompanying the Plaintiff's Motion is the Declaration of Rebecca Jones (Doc. 36-1). Plaintiff cites to the Declaration of Rebecca Jones in its Statement of Undisputed Facts and in its Argument in support of the Motion for Final Summary Judgment.

  It is defendants' position that it is difficult, if not impossible, to respond to the issues raised in this instant Motion for Final Summary Judgment without all of the documents specifically referenced in the Declaration of Rebecca Jones, and in the references themselves, made in the Declaration of Rebecca Jones without providing documentation.

Civil L. R. 56(b)(1)(C)(i) provides as follows:

**Additional Summary Judgment Procedures.**
… the statement shall consist of short numbered paragraphs, each containing a single material fact, including within each paragraph specific references to the affidavits, declarations, parts of the record, and other supporting materials relief upon to support the fact described in that paragraph;

In this particular case the plaintiff fails to provide "other supporting materials relied upon to support the fact described in that paragraph." Specifically the defendants point the Court to the following paragraphs in the Declaration of Rebecca Jones:

> 13. When Plaintiff's staff discovers an existing (i.e., published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of the discovery or within 1-2 days thereafter. The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringers' alleged use together with a website URL (if available) where the infringement is located. A true and correct copy of such infringement notice with respect to the work at issue in this lawsuit is attached hereto Exhibit "1."

In the review of the Motion and supporting paperwork the "true and correct copy of such infringement notice" with respect to the work at issue in this lawsuit is not attached hereto as Exhibit "1"

> 21. Following Plaintiff's discovery of Defendant's infringement, Plaintiff sent at least one infringement notice to Defendant to notify it of the impermissible use. Defendant's President and Founder responded to Plaintiff's infringement notice by seemingly wanting to resolve the matter. Multiple subsequent e-mails to Defendant to resolve were largely ignored.

The Declaration makes reference to "one infringement notice to the Defendant to notify it of the impermissible use." There was no infringement notice attached. Continuing, Rebecca Jones declares that "Defendant's President and Founder responded to Plaintiff's infringement notice." There was no response to the infringement notice attached. Rebecca Jones further declares in paragraph 21 that "multiple subsequent e-mails to Defendant to resolve were largely ignored." There were no attached e-mails.

22. Ultimately, Plaintiff was forced to retain counsel to pursue this matter (who itself sent a demand letter/infringement notice via e-mail and Federal Express to Defendants).

The Declaration of Rebecca Jones in paragraph 22 makes reference to "a demand letter/infringement notice via e-mail and Federal Express to Defendants." This was reportedly sent by counsel. The reference letter/infringement notice was not attached to the Declaration.

In that this evidence goes to the heart of the issues raised in this instant Motion for Final Summary Judgment and although references were made to these documents, pursuant to Civil L. R. 56(b)(1)(C)(iii) the failure to submit said documents constitutes grounds for denial of the motion. These responding defendants would so move.

Out of an abundance of caution, should this Court, in its discretion wish to address the merits of this Motion for Final Summary Judgment, without the documents, the defendants respond to the Motion as follows:

The defendants, Nofal, LLC d/b/a Food Town Mart and Sharif Jaber, by their attorneys, Terschan, Steinle, Hodan & Ganzer, Ltd., by W. Timothy Steinle, hereby submit their response to the Plaintiff's Statement of Undisputed Facts in Support of their Motion for Final Summary Judgment pursuant to Civil L.R. 56(b)(2)(B)(i).

## RESPONSE TO PLAINTIFF'S UNDISPUTED FACTS

1. Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

    **Response to Undisputed Fact 1:** Nofal LLC d/b/a Food Town Mart and Sharif Jaber (Nofal) does not object to this undisputed fact.

2. Plaintiff generally operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a monthly

fee of, at minimum, $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

**Response to Undisputed Fact 2:** Nofal does not object to this undisputed fact.

3. Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a license pays for one(1) month of access, downloads the entire library of 20,000_ photographs, and immediately terminates the license agreement.

**Response to Undisputed Fact 3:** Nofal does not object to this undisputed fact.

4. Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

**Response to Undisputed Fact 4:** Nofal does not object to this undisputed fact.

5. Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used)> Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

**Response to Undisputed Fact 5:** Nofal does not object to this undisputed fact.

6. In 1997, a professional photographer employed and/or contracted by Plaintiff creased a photograph titled "RawPorkChipCCBnls005_ADL.jpg" (the "Work"). A copy of the Work is displayed below.

**Response to Undisputed Fact 6:** Nofal does not object to this undisputed fact.

7. The Work is owned by Plaintiff for which Plaintiff serves as the licensing agent. The Work is available for license on the above-stated terms, and all were created through the same or substantially similar creative process as described above.

   **Response to Undisputed Fact 7:** Nofal does not object to this undisputed fact.

8. The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to the Plaintiff) with the Register of Copyrights on January 20, 2017 and was assigned Registration No. VA 2-027-172. A true and correct copy of the Certification of Registration pertaining tot eh Work is attached to the Second Amended Complaint as Exhibit "A" thereto.

   **Response to Undisputed Fact 8:** Nofal does not object to this undisputed fact.

9. Nofal LLC owns and operates a full-line grocery store located at 3217 W. Villard Avenue, Milwaukee, WI 53209 under the trade name "Food Town Mart" and/or "Foodtown Mart."

   **Response to Undisputed Fact 9:** Nofal does not object to this undisputed fact.

10. Jaber is the manager, sole member and person with exclusive control over the business activities of Nofal LLC.

    **Response to Undisputed Fact 10:** Nofal does not object to this undisputed fact.

11. Nofal LLC maintains a business Facebook page at https//www.facebook.com/villardfoodtown.

    **Response to Undisputed Fact 11:** Nofal objects to this proposed undisputed fact. Nofal does not maintain a business Facebook page. The Facebook page is for an account. There is no Villard FoodTown. Additionally, the above referenced Facebook page is entitled Villard Foodtown as the Facebook page. (Doc. 36-5).

12. On September 28, 2020 (after Plaintiff's above-referenced copyright registration of the Work), Nofal LLC published the Work on its business Facebook page (at https://www.facebook.com/villardfoodtown/?ref=page_internal).

**Response to Undisputed Fact 12:** Nofal objects to this proposed undisputed fact. Nofal does not maintain a business Facebook page. The account is identified as Villard FoodTown and the Facebook page is entitled Villard FoodTown. (Doc. 36-5).

13. Defendants are not and have never been licensed to use or display the Work.

**Response to Undisputed Fact 13:** Nofal does not object to this undisputed fact.

## THE DEFENDANTS, NOFAL LLC d/b/a FOOD TOWN MART AND SHARIFF JABER'S STATEMENT OF ADDITIONAL PROPOSED FACTS

The defendants, Nofal LLC d/b/a Food Town Mart and Sharif Jaber, by their attorneys, Terschan, Steinle, Hodan & Ganzer, Ltd., by W Timothy Steinle, pursuant to Civil L.R.56(b)(2)(B)(ii) submit their proposed additional undisputed facts in opposition to the Plaintiff's Motion for Final Summary Judgment.

1. This instant action was initially commenced by the filing of a Summons and Complaint on May 31, 2022 under Case No.: 2:22-cv-00642-JPS. This Complaint was entitled Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communication Co., Inc., plaintiff, vs. Villard FoodTown, LLC, d/b/a FoodTown Mart, defendant. The Complaint identifies the agent for service of process as Faraj Jaber. (Doc. 1)

2. The First Amended Complaint this matter was filed on August 23, 2022 and it was entitled Prepared Foods, Inc. f/k/a Adlife Marketing & Communication Co., Inc., plaintiff, vs. Sharif Jaber d/b/a Food Town Mart, defendant. The first Amended Complaint was filed August 23, 2022. (Doc. 9).

6

3. The Second Amended Complaint in this matter entitled Prepared Food Photos, Inc. f/k/a Adlife Marketing and Communications Co., Inc., plaintiff, vs. Nofal LLC d/b/a Food Town Mart and Sharif Jaber, defendant, was filed on February 6, 2023. (Doc. 19).

4. Nofal, LLC was duly organized on January 8, 2017 as a Wisconsin Limited Liability Corporation, with the identified registered agent of Sharif A. Jaber. (WI DFI Corporate Record (Exhibit 1, attached).

5. Nofal, LLC purchased Villard Food Town in November 2017. (Doc. 36-2, 11:13 – 11:16)

6. Sharif Jaber as the registered agent of Nofal, LLC changed the d/b/a of Villard Food Town to Food Town Mart. (Doc. 36-2, 7:24-8:3)

7. There is a Facebook page with an account Villard Food Town with a registration date of September 12, 2010 and a user identified at Nofal Hamad. (Doc. 36-5)

8. The same Metaforms Business Record for villardfoodtown has a registration date of June 12, 2013 with the user identified as Amjad Hamad. (Doc. 36-5)

9. At the time of the posting to the villardfoodtown Facebook page, Amjad Hamad controlled the content to the Facebook page. (Doc. 36-3, 22:11 - 22:13)

10. At the time of the post on September 28, 2020 Amja Hamad was an employee of Nofal LLC. (Doc. 36-3, 22:19 – 22)

11. Sharif Jaber, the registered agent for Nofal LLC never gave instruction to Amjad Hamad on how to post material to the Facebook page. (Doc. 36-3, 25:14 – 23:17)

12. Sharif Jaber as the registered agent for Nofal LLC did not inform Amjad Hamad to post the registered photo to the Facebook page but, rather, Amjad Hamad, put it there himself. (Doc. 36-3, 45:18 – 45:23)

7

13. Amjad Hamad never showed Sharif Jaber, the registered agent for Nofal LLC the Facebook page with the posted registered work. (Doc. 36-3, 45:24 – 46:2)

14. Sharif Jaber, as the registered agent for Nofal LLC, never received any notice of any potential Copyright violation from the plaintiff prior to receiving a copy of the Summons and Complaint. (Doc. 36-2, 15:14 – 15:16)

## ARGUMENT

### I. LEGAL STANDARD

Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56(a). As held by the United States District Court for the Central District of Illinois and *Meeks v. Heuerman*, 2023 U.S. Dist. LEXIS 171490* 2023 WL 6276496:

> All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor." *Meeks* at *1 (citing *Ogden v. Atterholt* 606 F. 3d 355, 358 (7th Cir. 2010)) The party moving for summary judgment must show the lack of a genuine issue of material fact. *Id.* (citing *Celotex Cor. V. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Id.* at *2 (citing *Matsushita Elc. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Only disputes over facts that might affect the outcome of the suit under the government law will properly preclude the entry of summary judgment. *Id.* (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

Summary judgment "is the 'put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Schacht v. Wisconsin Dept. of Corr.*, 175 F. 3d 497, 504, 1999 U.S. App. LEXIS 7418 (7th Cir. 1999).

## II. THE PLAINTIFF IS NOT ENTITLED TO FINAL SUMMARY JUDGMENT.

### A. Count One: Copyright Infringement

#### 1. Elements of Copyright Infringement.

The plaintiff has accurately stated the elements of a copyright infringement under Copyright Act 17 U.S.C. Sec. 501 (A) and the elements that constitute the copyright infringement: (1) ownership of a valid copyright and (2) copying of constitute elements of the work that are original.

#### a. Ownership of a Valid Copyright.

It appears that there is a Certificate of Registration for the copyrighted photograph which is the subject matter of this lawsuit and correctly cites to 17 U.S. Sec. 401 (10)(C) that the "evidentiary weight to be accorded a certificate of registration is made thereafter (the five years) shall be within the discretion of the Court.

The fact that Section 410 (3) confers discretion on the Court on how to treat a certificate obtained five years after publication indicates that although there may be a presumption, the Court still has discretion as to how to treat the certificate.

In this particular case the photograph (The Work) which is the subject matter of this lawsuit was taken in 1997. There was no application for certificate until 2017, a period of 20 years. This period of time is four times the statutory mandated 5 year time frame for presumption of validity. The defendants would respectfully submit that this timeframe is so far outside the five year time frame to construe otherwise would give no meaning to the five year time frame. What would be the logical stopping point between the creation between copyrighted material and certification?

9

### b. Copying of Constitute Elements of The Work

The plaintiff argues at great length that Sharif Jaber's testimony on the Facebook not being "associated' with the store amounts to perjury. The undisputed facts concerning whether or not the Facebook is "associated" with the store are:

1. Facebook account is identified as "villardfoodtown"
2. The Facebook page was created years before Sharif Jaber/Nofal, LLC purchased the store.
3. The identifying Facebook page is called "Villard FoodTown"
4. When Sharif Jaber/Nofal, LLC purchased the food store they began doing business as FoodTown Mart.

Therefore, Mr. Jaber's testimony about not owning a Facebook page is factually accurate. This is not "doubling down" but, rather it is supported by the undisputed facts.

Additionally, the arguments in the plaintiff's brief concerning hookahs and speakers are complete red herrings in this case. This case does not involve what was sold or what was not sold at Mr. Jaber's store. The issue before this Court is whether or not Mr. Jaber violated or infringed upon the copyrighted material. Credibility is not to be decided on summary judgment. *See Runkel v. City of Springfield*, 51F.4th 736, 742, 2022 U.S. App LEXIS 28872, 2022 WL10357359. There are reasonable inferences these defendants did not "copy" The Work.

### 2. There is no evidence that the defendants' infringement was willful.

As indicated above, the plaintiff's failure to provide the attachments and documents referenced in the Declaration of Rebecca Jones goes to the heart of this issue. In fact, plaintiff argues extensively that the "failure to remove the subject work from its website/social media, despite having received notice supports a finding of willfulness." (Plaintiff's Brief, p. 13.).

10

Although Rebecca Jones makes reference to the conduct of "the defendant" after having received notice, there is no evidence of this refusal. The failure of the plaintiff to provide evidence of willful infringement creates the material issue of fact. This Court must deny the Motion for Final Summary Judgment of the Motion for Summary Judgment on the issue of Willfulness. There is no evidence to support Summary Judgment.

### 3. Damages

#### a. Actual Damages

The plaintiff does correctly state both the statutory and common law as it relates to the measure of actual damages in a copyright infringement case. The measure of damages is what a "willing buyer and a willing seller would agree that engaged in an ex-ante hypothetical negotiation for a specific type of unlicensed use at issue." *Epic System Corporation v. Attachmate Corp*, 216 U.S. Dist. LEXIS 88572, *4 (W.D. Wis. July 8, 2016) (outside citations omitted). The plaintiff then calculates what **they** believe to be their actual damages. They calculated their actual damages to be $35,964.00. They arrive at that figure from the Rebecca Jones Declaration that a subscription basis for its library is $999.00/month and arrived at a figure of $11,988 for access to this library of photographs annually. They then multiplied that figure times three for the period of time that the copyrighted photograph was on display on the Facebook page.

The plaintiff's calculation is flawed for a number of reasons. Again, we are talking about one photograph that was created in 1997, registered in 2017 and used in 2020. This was a one-time use. There is nothing in this record to support use of a library or the subscription fee. There are material issues of fact as to what should be actual damages.

### b. Statutory Damages.

As to the claim for statutory damages, again, it is impossible to make an award of potential statutory damages on this instant Motion for Final Summary Judgment when the issue of willfulness cannot be addressed. The issue of willfulness may be an element that may or may not come into play in the calculation of statutory damages. There is a material issue of fact as to whether or not willfulness is an element in order for this Court to award summary judgment on statutory damages.

#### i. Count II – Vicarious Copyright Infringement

In order for the Court to find vicarious lability, this Court must make a finding that Sharif Jaber and Nofal (1) profited directly from the infringement and, (2) had a right and ability to supervise the direct infringer. *Bertram Music Company vs. PA Enters. Inc.* 311 U.S. District LEXIS 71967 (C.D. Ill. July 5, 2021. There is no evidence on this record that even if this Court were to make a finding that there was a violation of the copyright infringement statute, that even Nofal or Sharif Jaber "profited directly from the infringement." This is a material issue of fact. For this reason, the Court cannot grant Summary Judgment on the issue of vicarious liability.

#### ii. Plaintiff is not entitled to recover its reasonable attorneys' fees and costs at this stage of the proceedings.

Attorneys' fees and costs may be awarded to the prevailing party "upon the entry of a final judgment" and because there are material issues of fact, summary judgment should be denied. However, even if plaintiff is successful in obtaining summary judgment, it will not be a *final judgment,* so an award of actual attorneys' fees and costs is inappropriate at this stage of the proceedings.

## III. SUMMARY JUDGMENT SHOULD BE DENIED IN ITS ENTIRETY BY VIRTUE OF THE DEFENSE OF THE FAIR USE DOCTRINE.

The defendants have asserted the Doctrine of "Fair Use" as an affirmative defense. The Doctrine of Fair Use was extensively discussed in *FameFlynet, Inc. v. Jasimine Enters*, 344 F. Supp. 3d 906, 2018 U.S. Dis. LEXIS 163576, 2018 WL 4590002. The Court discussed Fair Use and indicated:

> Fair use is a mixed question of law and fact, which means that it may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusions – but not otherwise. The burden of proof is on the [defendant] because fair use is an affirmative defense, meaning that the defendant must present evidence sufficient to withstand summary judgment.

*FameFlynet* at 911. (outside citations omitted)

The Court went on to identify the four factors for the Court to consider when evaluating the defense of fair use. They are:

1. Purpose and character of the use, including whether such use is of a commercial nature or is non-profit educational purposes; *Id.*

2. The nature of the copyrighted work; *Id.* at 912.

3. The amount insubstantiality of the portion use in relation to the copyrighted work as a whole; *Id.* at 913, and

4. The effect of the use upon the potential market for or value of the copyrighted work. Citing to 17 U.S. C Section 107. *Id.*

The Court further indicated that the four factors are not exhaustive and do not constitute an algorithm and enables decisions to be ground out mechanically. *Id.* at 911. Applying the four-factor test to this instant case, the first factor is inapplicable. It is conceded this was commercial use.

13

The second factor is the nature of the copyrighted work. In this particular case the Court described the second factor as a "recognition that some works (like fiction) are closer to the core of intended copyright protection than others (like news broadcasts or factual compilations), with the consequences that there use is more difficult to establish in the form of works are copied. *Id.* at 912-13 (outside citations omitted)

In this particular case, The Work which is the subject matter of this lawsuit is one photograph of raw porkchops. Clearly one photograph of raw porkchops is far removed from "core of intended copyright protection." Additionally, the photograph is from 1997. Again, well removed from the "core" of the intended copyright protection.

Thus, there is a material issue of fact as to whether the second factor is applicable in this particular case. If the finder of fact where to find that the second factor was applicable the defense of fair use would be available to the defendants in this particular case.

The third factor is amount and sustainability of the portion used. This third factor recognizes that the more of the copyrighted work that is taken, the less likely the use is to be fair and that even a less substantial taking may be unfair if it captures the essence of a copyrighted work. The material that was allegedly taken was one 20 plus year old photograph as part of the library of 20,000 photographs. This undisputed fact creates a material issue of fact as to whether fair use doctrine is applicable in this case and for that reason summary judgment must be denied.

The fourth factor is the effect of use on the potential market. This fourth factor requires the Court to consider not only the extent of the market harm caused by the particular actions of the alleged infringement, but also whether unrestricted and widespread conduct of this sort engaged by the defendant will result in a substantially adverse impact on the potential market for the infringement. As the Court stated, the Seventh Circuit has said that this factor is "usually" the

most important. *FameFlynet* at 913 (citing *Kienitz v. Sconnie Nation, LLC,* 766 F.3d 756 (7th Cir. 2014)).

The conduct of the defendants in this particular case was to do a Google search, find a photograph of a raw porkchop, copy and paste that photograph and use it for a Facebook post. The defendants respectfully submit that this conduct would have essentially no adverse effect on the potential market for the original photograph. The standard is that conduct must result in a "substantially adverse impact." Again, a 20 plus year-old photograph from a library of 20,000 would not have any substantially adverse impact on the potential market for the original photograph of the porkchop. For this reason, the Fair Use Doctrine is applicable as an affirmative defense or at least a material issue of fact exists as to whether or not Fair Use applies in this case. For that reason, summary judgment should be denied.

## CONCLUSION

For the reasons stated, it is respectfully submitted:

1. That the Court deny the Motion for Final Summary Judgment for failure to comply with Civil L.R. 56;

2. If the Court were to deny the Motion for Dismissal for a Violation of Civil L.R. 56, for an Order denying the Motion for Summary Judgment in its entirety because there do exist material issues of fact as to both liability and damages;

3. That the Court deny the Motion for Final Summary Judgment on the grounds that the affirmative defense of Fair Use may be available to these defendants;

4. In the event the Court were to deem summary judgment appropriate on the liability aspects of the case, for the reasons stated, deny the motion for summary judgment as to the issues of willfulness and damages and costs.

Dated at Milwaukee, Wisconsin this 8th day of February, 2024.

        TERSCHAN, STEINLE, HODAN & GANZER, LTD.
        Attorneys for the Defendants, Nofal LLC d/b/a
        Food Town Mart and Sharif Jaber

        *Electronically signed by W. Timothy Steinle*
        State Bar No.: 1003777

P.O. ADDRESS:
309 North Water Street, Suite 215
Milwaukee, WI 53202
T: (414) 258-1010
F: (414) 258-8080
timothy.steinle@tshglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 8th 2024, I electronically filed the foregoing document with the Clerk of Court using the ECF system. The ECF system will send notification of the filing to all attorneys of record.

# Wisconsin Department of Financial Institutions
## Strengthening Wisconsin's Financial Future

Search for: nofal,llc

[Search Records]  Search / Advanced Search / Name Availability

**Corporate Records**  Result of lookup for **N047271** (at 2/5/2024 4:01 PM)

# NOFAL LLC

You can: File an Annual Report - Request a Certificate of Status - File a Registered Agent/Office Update Form

## Vital Statistics

| | |
|---|---|
| **Entity ID** | N047271 |
| **Registered Effective Date** | 06/08/2017 |
| **Period of Existence** | PER |
| **Status** | Organized   Request a Certificate of Status |
| **Status Date** | 06/08/2017 |
| **Entity Type** | Domestic Limited Liability Company |
| **Annual Report Requirements** | Limited Liability Companies are required to file an Annual Report under s. 183.0212, WI Statutes. |

## Addresses

**Registered Agent Office**
SHARIF A JABER
2041 E DREXEL AVE
OAK CREEK, WI 53154-2518

File a Registered Agent/Office Update Form

**Principal Office**
2041 E DREXEL AVE
OAK CREEK, WI 53154-2518

## Historical Information

**Annual Reports**

| Year | Reel | Image | Filed By | Stored On |
|------|------|-------|----------|-----------|
| 2022 | 000 | 0000 | online | database |
| 2021 | 000 | 0000 | online | database |
| 2020 | 000 | 0000 | online | database |
| 2019 | 000 | 0000 | online | database |
| 2018 | 000 | 0000 | online | database |

File an Annual Report - Order a Document Copy

**Certificates of Newly-elected**  None

**EXHIBIT 1**

**Officers/Directors**

**Old Names** None

**Chronology**

| Effective Date | Transaction | Processed Date | Description |
|---|---|---|---|
| 06/08/2017 | Organized | 06/08/2017 | E-Form |
| 07/27/2018 | Change of Registered Agent | 07/27/2018 | OnlineForm 5 |

Order a Document Copy