IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

      Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

      Defendants.

_____

## PLAINTIFF'S MOTION FOR NEW TRIAL AND/OR TO AMEND JUDGMENT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") hereby files this motion, pursuant to Fed. R. Civ. P. 59(a) and (e), for a new trial and/or to amend the November 7, 2024 Judgment [D.E. 54] entered in this case.

## INTRODUCTION

A jury verdict should not ordinarily be disturbed. But the jury's verdict in this case was against the manifest facts and law. As set forth herein, there was no rational/reasonable basis for the jury's $200.00 actual damages award. The only evidence presented throughout trial was that Plaintiff's actual damages were $23,976.00, representing 2x annual license periods predicated on Plaintiff's $999.00/month license. Defendants Nofal LLC d/b/a Food Town Mart ("Nofal LLC") and Sharif Jaber ("Jaber") (collectively, the "Defendants") presented no evidence whatsoever on damages and did not challenge Plaintiff's testimony, yet the jury disregarded Plaintiff's evidence and instead awarded an arbitrary amount not based on anything actually presented in court.

Beyond this, the jury erred in not finding Jaber liable for vicarious infringement as he clearly had a direct financial interest in the subject infringement, and Plaintiff was precluded from presenting multiple pieces of highly-relevant evidence to demonstrate Defendants' lies throughout this lawsuit. For all of these reasons, the Court should either amend the Judgment or grant Plaintiff a new trial.

## BACKGROUND

1. On February 6, 2023, Plaintiff filed its Second Amended Complaint [D.E. 19][1] in this action against Defendants.

2. Generally, the Second Amended Complaint alleges that Plaintiff is the owner/creator of a photograph of pork chops titled "RawPorkChopCCBnls005_ADL.jpg" (the "Work") which was displayed on Nofal LLC's Facebook page (at https://www.facebook.com/villardfoodtown/?ref=page_internal) (the "Facebook Page") without Plaintiff's permission.

3. On February 20, 2023, Defendants filed their Answer [D.E. 21] to the Second Amended Complaint. In their Answer, Defendants deny that Nofal LLC committed infringement and further deny that the Facebook Page was Nofal LLC's Facebook page.

4. Defendants likewise denied any knowledge or ownership of the Facebook Page in

---

[1] The original Complaint in this lawsuit was filed against Villard Foodtown LLC whose counsel informed undersigned counsel that Villard Foodtown LLC owned the physical building where Food Town Mart operated but that Jaber (individually) was the owner/operator of the store itself/responsible for the alleged infringement. As reflected by Plaintiff's unopposed motion for leave to file the Second Amended Complaint [D.E. 18], it was later revealed (by Defendants' current counsel) that Nofal LLC was the actual owner of the store and that Jaber was owner of Nofal.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

their sworn interrogatory responses[2] and responses to Plaintiff's requests for admissions.[3]

5.        Subsequent thereto, Plaintiff served a Notice of Taking 30(b)(6) Deposition on Nofal LLC.[4]  Included amongst the topics identified therein was:

1.        The identity of the person purportedly responsible for uploading the Work to the Facebook Page and/or Website.

2.        The relationship (if any) between Defendants and the person purportedly responsible for uploading the Work to the Facebook Page and/or the Website.

7.        The factual circumstances by which the Work came to be published on the Facebook Page and/or the Website.

10.        The factual basis for Defendants' contention, set forth in their Second Affirmative Defense, that "The acts and/or allegations contained within the Second Amended Complaint were caused by those other than these answering defendants."

6.        As the Court knows, Nofal LLC was then required to prepare witness(es) to testify as to each of the topics (as no objections were served/motion for protective order filed).  See, e.g. Tierney v. BNSF Ry. Co., No. 23-cv-477-wmc, 2024 U.S. Dist. LEXIS 135872, at *10 (W.D. Wis. July 31, 2024) ("The responding organization then has an obligation to prepare the designated person on those topics to testify about information known or reasonably available to the

---

[2]        See Nofal LLC's Responses to Plaintiff's First Set of Interrogatories (Plaintiff's Trial Ex. 8), a true and correct copy of which is attached hereto as Exhibit "A" and Jaber's Responses to Plaintiff's First Set of Interrogatories (Plaintiff's Trial. Ex. 9), a true and correct copy of which is attached hereto as Exhibit "B," at Interrogatory Nos. 3, 9.
[3]        See Defendants' Responses to Plaintiff's First Request for Admissions (Plaintiff's Trial Ex. 7), true and correct copies of which are attached hereto as Exhibit "C," at Nos. 8, 9, 10, 11, 15, 16.
[4]        A true and correct copy of the Notice of Taking 30(b)(6) Deposition (Plaintiff's Trial Ex. 27) is attached hereto as Exhibit "D."

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

organization."); <u>Alloc, Inc. v. Unilin Decor N.V.</u>, No. 02-C-1266, 2006 U.S. Dist. LEXIS 65889, at *4 (E.D. Wis. Aug. 29, 2006) ("A party need only designate, with reasonable particularity, the topics for examination. The corporation must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give completely knowledgeable and binding answers on behalf of the corporation.") (internal citation omitted).

7.     On September 26, 2023, Jaber appeared for a deposition in this action – both individually and as Nofal LLC's 30(b)(6) designee.[5]

8.     During the deposition, Jaber testified *repeatedly* that Food Town Mart has never had a Facebook page and that he had no idea who was responsible for the Facebook Page:[6]

> 19     Q.  What about social media?  Has Villard Food Town
> 20     or Food Town Mart ever had a Facebook page?
> 21     A.  No.

***

> 2      Q.  Okay.  So you have no idea who has this Facebook
> 3      account, correct?
> 4      A.  No, sir.  I don't have.

***

> 17     Q.  Sir, do you have any idea who owns this Facebook
> 18     account?
> 19     A.  No.

9.     Jaber did not only deny knowledge of the Facebook Page – he likewise denied (for hours of the deposition) that the *hundreds* of photographs posted thereto (which included shelves

---

[5]     A true and correct copy of the Deposition Transcript of Sharif Jaber, dated September 26, 2023 (the "<u>Jaber Tr.</u>") (Plaintiff's Trial Ex. 28), is attached hereto as Exhibit "E."
[6]     <u>See</u> Jaber Tr., at 14:19 – 14:21; 23:2; 26:17 – 26:19.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

in the store, signs in the store, and products being sold in the store) were part of the Food Town Mart store or ever sold therein.

10. On December 18, 2023, Plaintiff took the deposition of Amjad Hamed (Jaber's son who is employed by Nofal LLC as its floor manager).[7]

11. During his deposition, Amjad Hamed readily admitted that the Facebook Page is the official Facebook page for Food Town Mart, that he has been running the page for years (with his older brother running the page before him), that the various photos of shelves, signs, products, etc. on the Facebook Page are absolutely of the Food Town Mart store itself, and that his father was at all times aware of the Facebook Page:[8]

```
23        Q.  What about social media?  Things like Facebook or
24    Twitter?  Instagram?  Any of that?
25        A.  I know we have a Facebook.
```

```
1        Q.  It has a Facebook?
2        A.  Yup.
3        Q.  What's the Facebook for Food Town Mart?
4        A.  I believe it's called Food Town Mart.
```

***

```
18        Q.  Was your father aware that you were running the
19    Facebook account for the store?
20        A.  Yes, sir.
```

12. Despite Amjad Hamed's testimony/admissions, Defendants never sought (at any

---

[7]      A true and correct copy of the Deposition Transcript of Amjad Hamed, dated December 18, 2023 (the "Hamed Tr.") (Plaintiff's Trial Ex. 29) is attached hereto as Exhibit "F."
[8]      See Hamed Tr., at 10:23 – 114; 45:18 – 45:20.

5

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

time prior to trial) to amend their Answer, responses to Interrogatories, responses to the Requests for Admissions, or otherwise alter their position that they had nothing to do with the Facebook Page.

13.     Trial in this case commenced on October 28, 2024.  The Court heard testimony from Rebecca Jones (Plaintiff's IP Director), Jaber, and Amjad Hamed.  The Court likewise received various of Plaintiff's trial exhibits, but excluded any exhibits pertaining to any photograph on the Facebook Page other than the Work (i.e., any photographs of hookahs/speakers which Jaber testified Food Town Mart had never sold but Amjad Hamed testified were products sold in the store or any photographs of the store itself which Jaber testified was not Food Town Mart but Amjad Hamed testified was the store).

14.     On October 29, 2024, the jury returned a verdict in favor of Plaintiff on its infringement claim against Nofal LLC, awarding $200.00 in actual damages or $1,000.00 in statutory damages.[9]

15.     On November 1, 2024, Plaintiff filed a notice electing the award of actual damages.[10]

16.     On November 7, 2024, the Court entered the Judgment against Nofal LLC.[11]

## **ARGUMENT**

I.     **The Court Should Amend the Judgment to Conform with the Damages Evidence Presented at Trial**

   *A.     Legal Standard*

Federal Rule of Civil Procedure 59(e) allows a court to alter or amend a judgment if the

---

[9]     See D.E. 50.
[10]    See D.E. 52.
[11]    See D.E. 54.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

party seeking relief files the motion "no later than 28 days after the entry of judgement." Fed. R. Civ. P. 59(e). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995) (citing Charles v. Daley, 799 F.2d 343, 348 (7th Cir. 1986)). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006) (citing Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000)). A party moving to alter or amend a judgment under Rule 59(e) must "clearly establish" one of those two grounds for relief. Id. (citing Romo v. Gulf Stream Coach, Inc., 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)).

### B.     Actual Damages

Here, the jury's award of $200.00 in actual damages is the result of a manifest error of law or fact. At trial, the *only* witness who proffered *any* testimony with respect to Plaintiff's damages in this action was Rebecca Jones (Plaintiff's IP Director). Ms. Jones testified extensively that Plaintiff does not license individual photographs, that the use of a single photograph (as Nofal LLC did here) requires a subscription to the entire library of photographs, that Nofal LLC's use of the Work would have been subject to the $999.00/month license offered by Plaintiff, that the length of time Nofal LLC displayed the Work would have required payment of 2 annual licenses (i.e., payment of $23,976.00), and that Plaintiff has numerous subscribers paying the $999.00/month if not more for their annual licenses.

This testimony was *not* rebutted in any way. Defendants did not offer any expert testimony concerning the value of a single photograph or the entirety of Plaintiff's library, nor did they

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

present any evidence contrary to Ms. Jones' testimony. Indeed, the sole proffer by Defendant's counsel (on cross-examination) was to ask Ms. Jones what $11,988.00 (the annual license) divided by 20,000 (the number of photographs purportedly in Plaintiff's image library)[12] was. That amounted to approximately $.60, though Ms. Jones rebuffed the question by stating that Plaintiff does not license individual photographs and again reiterated that Nofal LLC's use would have resulted in the $11,988.00 annual charge.

The jury was *not* free to disregard the *only* testimony/evidence with respect to Plaintiff's actual damages. Indeed, the jury instructions provided to the jury (§ 4.1 – Actual Damages) plainly states that: "Actual losses from copyright infringement might include, for example… What a willing buyer would reasonably have paid Prepared Food Photos, Inc. to obtain a license to display its copyrighted work." This is, of course, consistent with governing law in the Seventh Circuit. "In calculating the fair market value of an unauthorized use, courts will attempt to determine the price to which a willing buyer and a willing seller would have agreed had they engaged in an ex-ante 'hypothetical negotiation' for the specific type of unlicensed use at issue." Epic Sys. Corp. v. Attachmate Corp., No. 15-cv-179-bbc, 2016 U.S. Dist. LEXIS 88572, at *4 (W.D. Wis. July 8, 2016). "In situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.'" Id. at *4–5 (quoting McRoberts Software, Inc., 329 F.3d at 566).

That is precisely the testimony that Plaintiff provided – that numerous willing buyers are willing to pay Plaintiff $999.00/month for use of a single or up to 18,000 of its photographs.

---

[12]    Ms. Jones testified that Plaintiff has approximately 18,000 images in its library.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Although the jury is afforded some discretion in determining statutory damages, that discretion does not exist with respect to actual damages. The jury was limited to the evidence before it on damages, and the only evidence it received was unequivocal testimony that Nofal LLC should have paid $999.00/month for its use of the Work which should have amounted to $23,976.00. Even if Defendants' counsel's division question amounted to evidence (it did not), that would have resulted in a $.60 verdict for Plaintiff. There is simply no rational basis for the jury's award of $200.00 in actual damages when no evidence presented at trial supports such an award.

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, Plaintiff's $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's actual damages.

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022). The same analysis was adopted by a multitude of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before those courts. See, e.g. Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

single photo; <u>Prepared Food Photos, Inc. v. Miami Beach 411 Corp.</u>, No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); <u>Prepared Food Photos, Inc. v. Fat Daddy Co.</u>, No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.</u>, No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc.</u>, No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc.</u>, Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); <u>Prepared Food Photos, Inc. v. Exec. Dining Club, Inc.</u>, No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Shadowbrook Farm LLC</u>, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food</u>

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Photos, Inc. v. WaDaYaNeed, LLC, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto).

Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc., No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024) is particularly relevant here. In that case, the magistrate issued a report & recommendation to award Plaintiff a total of $1,000.00 in statutory damages, essentially rejecting Plaintiff's damages theory predicated on its annual license amount. In rejecting the report & recommendation, the district judge held:

> The court accepts and finds persuasive the attestation of Rebecca Jones (ECF No. 11-1) that PFP's subscribers pay at least $999 per month for subscriptions of at least 12 months in duration, which subscriptions entitle a subscriber to the entirety of PFP's approximately 18,000-photo library with no monthly download cap. That Defendant may not have availed itself of that license structure had it opted to license (*i.e.*, use lawfully) a photographic work for its commercial use is of no moment, as these figures represent PFP's actual loss in connection with the Work. That Defendant effectively stole a copyright protected work for its commercial use and benefit that it would not have agreed to pay for in an open market will not inure to the benefit of Defendant once it is caught.
>
> The court finds that the Copyright's Act's objectives of encouraging

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

artistic works and deterring acts of infringement (by protecting authors and those who own rights in creative works) are not met by awarding damages using the above-described actual loss approach. In view of the foregoing, the court agrees to award PFP more than the statutory minimum based on Defendant's willful infringement, the deterrent and punitive mechanism that is key to ensuring protection, and encouragement of, creative works, and in view of the many months' long and expensive hassle PFP endured to prevail. The court finds an award of Plaintiff's actual damages with a multiplier of two restrained and appropriate.

Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc., No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023, at *4-5 (D. Md. Mar. 25, 2024). While this Court is not required to accept the findings in New Kianis Pizza & Subs, Inc., Patriot Fine Foods LLC, or any of the other above-referenced cases, the point remains that Plaintiff proffered unrebutted testimony/evidence of its damages that the jury completely ignored in awarding an arbitrary amount of actual damages. The Court should just exercise its discretion to amend/alter the amount of actual damages to $23,976.00.

### C.      Vicarious Infringement

The jury's verdict with respect to Plaintiff's vicarious infringement claim against Jaber was likewise unsupported. "To prevail on a claim for vicarious copyright infringement, a plaintiff must establish that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." GC2 Inc. v. Int'l Game Tech. PLC, 255 F. Supp. 3d 812, 824 (N.D. Ill. 2017). "For purposes of a vicarious copyright infringement claim, a financial benefit exists where there is evidence of a direct financial gain or that the availability of infringing material acts as a draw for customers." Bell v. Chi. Cubs Baseball Club, LLC, No. 19-cv-2386, 2020 U.S. Dist. LEXIS 17527, at *15-16 (N.D. Ill. Feb. 4, 2020). Here, Jaber clearly testified that Food Town Mart sold pork chops every week, including the week(s)

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

that the Work was displayed on the Facebook Page. He likewise testified that he receives a profit from Food Town Mart's sale of its products, including pork chops. There is no question that he had a direct financial interest in the infringement. Defendants, however, confused the issue by arguing (in closing) that there was no evidence of a specific dollar amount of profit received by Jaber with respect to the sale of pork chops. But that is not the law on vicarious liability – Plaintiff does not need to prove a specific profit amount (as Plaintiff was not seeking disgorgement of profits) – only that Jaber profited generally. He clearly did, and thus the jury's verdict was against the weight of evidence.

## II.     The Court Grant a New Trial

### A.     Legal Standard

"A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." Venson v. Altamirano, 749 F.3d 641, 656 (7th Cir. 2014). "When considering whether the jury's verdict goes against the manifest weight of the evidence, a court analyzes the general sense of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." Willis v. Lepine, 687 F.3d 826, 836-37 (7th Cir. 2012)

### B.     The Manifest Weight of the Evidence Supports a New Trial

Alternatively, if the Court is not inclined to amend the Judgment, the Court should instead grant a new trial. Plaintiff was severely prejudiced by the Court's evidentiary rulings excluding any of Plaintiff's evidence pertaining to photographs on the Facebook Page other than the Work. As explained herein (and at trial), Defendants took the position throughout this lawsuit that the Facebook Page was not theirs and that the shelves, signs, and products displayed thereon were not their store. Even in the face of contrary testimony from Amjad Hamed (Jaber's son), Defendants

13

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

did not waiver from continuing the lie until they appeared at trial flipped the switch to suddenly admit that the Facebook Page was theirs. This, coupled with the fact that no reasonable jury could have reached a $200.00 actual damages award, casts serious doubt on the jury's statutory damages award as well. Further, as shown above, the jury should have found Jaber vicariously liable for Nofal LLC's infringement.

The jury is afforded certain discretion in fashioning a statutory damages award. The instructions provided to the jury (§ 4.2 – Statutory Damages) contain multiple factors the jury may consider in awarding statutory damages. Those include (among other things): (a) the revenues that Plaintiff lost because of the infringement; (b) the circumstances of the infringement, and (c) deterrence of future infringement. Here, the jury's $200.00 actual damages award most likely affected the jury's consideration of at least the first factor identified above. But the Court's exclusion of Plaintiff's evidence – which was proffered to show Defendant's unapologetic conduct and lies throughout this lawsuit – certainly had a material effect on the second and third factors. The jury never heard that Jaber – who works 6 – 7 days per week at Food Town Mart – apparently does not know his own store signs and/or products. The jury should have received such evidence and been afforded the opportunity to determine whether Defendants infringed willfully or whether a higher statutory damages award would have a deterrent effect on their conduct. But even if the Court does not agree that such evidence was relevant, the point remains that an unsupported, $200.00 actual damages award likewise casts doubt on any statutory damages award.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court enter an Order: (a) granting this Motion; (b) amending the Judgment to award $23,976.00 in actual damages; (b) amending the Judgment to reflect that Jaber is liable for vicarious infringement; (c) alternatively, granting Plaintiff a new trial; and (d) for such further relief as the Court deems proper.

Respectfully submitted,

Dated: November 20, 2024.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com


By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.
    Florida Bar No. 19291


## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228