IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

    Defendants.

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT
## OF MOTION FOR NEW TRIAL AND/OR TO AMEND JUDGMENT

Plaintiff[1] hereby files this reply memorandum in further support of its Motion for New Trial and/or to Amend Judgment (the "Motion") [D.E. 56].

## INTRODUCTION

Defendants' Response in Opposition to Plaintiff's Motion for a New Trial and/or to Amend the Judgment (the "Opposition Memorandum") [D.E. 59] does its best to distract from the actual issues before the Court – namely, whether there was *any* support for the jury's $200.00 actual damages award, whether the Court's evidentiary rulings were proper, and whether Jaber should have been found liable for vicarious infringement. But in doing so, the Opposition Memorandum fails to set forth any rational argument as to how the jury could have reached its conclusions… whether based in evidence or the law. For the reasons set forth herein and in the Motion, the Court

---

[1]     Terms not defined herein shall have the meaning ascribed to them in the Motion.

should either amend the judgment or grant Plaintiff a new trial.

## ARGUMENT

**I.       Defendants Misrepresent the Evidence and Law Regarding Damages**

According to the Opposition Memorandum, the jury was free to disregard Ms. Jones' testimony concerning damages (or any other matter) due to a handful of errors in her summary judgment declaration… none of which concerned damages.  Here, Defendants assert (with emphasis):

> The plaintiff asserts that the ***only*** witness who testified concerning ***any*** actual damages was Rebecca Jones and they continue to argue that the jury was ***not*** free to discard that testimony. They argue that by doing so resulted in a manifest injustice.[2]

But Defendants miss the point… twice.  First, Ms. Jones ***was*** the only witness to present ***any*** evidence concerning damages.  Defendants cannot dispute that point.  Defendants did not introduce any exhibits concerning damages/value of the Work, and neither of their witnesses (Sharif Jaber and Amjad Hamed) testified in any respect about damages/value of the Work.  Only Ms. Jones testified about Plaintiff's damages and provided ***unequivocal/unrebutted*** testimony that, not only does Plaintiff license its entire library at $999.00/month, but that multiple subscribers pay such amount to Plaintiff to license the library.  Ms. Jones likewise testified that the use of a single photo was the same as the use of dozens/hundreds of photos – a user was still required to pay the annual subscription price.  This testimony was not even challenged by Defendants, let alone rebutted by them.

"In calculating the fair market value of an unauthorized use, courts will attempt to determine the price to which a willing buyer and a willing seller would have agreed had they

---

[2]    See Opposition Memorandum, at p. 4.

engaged in an ex-ante 'hypothetical negotiation' for the specific type of unlicensed use at issue." Epic Sys. Corp. v. Attachmate Corp., No. 15-cv-179-bbc, 2016 U.S. Dist. LEXIS 88572 (W.D. Wis. July 8, 2016); see also McRoberts Software, Inc., 329 F.3d at 566; Jarvis v. K2 Inc., 486 F.3d 526, 533-34 (9th Cir. 2007) ("[I]n situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work."); Gaylord v. United States, 777 F.3d 1363, 1368 (Fed. Cir. 2015) ("To calculate fair market value, a court deciding a copyright case may use a tool familiar from patent law, without necessarily following every aspect of patent law's use of that tool. It may hypothesize a negotiation between the parties before the infringement occurred and determine the reasonable license fee on which a willing buyer and willing seller would have agreed for the use taken by the infringer.") (internal quotations and citations omitted)). "Determining the fair market value of a product is a 'fact-dependent inquiry' and 'the trial court must consider all evidence relevant to a hypothetical negotiation[.]'" Epic Sys. Corp., 2016 U.S. Dist. LEXIS 88572, at *5 (quoting Gaylord v. United States, 678 F.3d 1339, 1344 (Fed. Cir. 2012)). "Some of the factors commonly considered by the courts include past arms-length licensing practices by the copyright owner or the infringer for similar uses and 'benchmark' licenses by others in the industry may be useful." Id.

      The problem with the jury's verdict – which the Opposition Memorandum conveniently fails to address – is that there is no rational, evidentiary basis for the award. Even assuming the jury was able to completely ignore Ms. Jones' testimony (it was not), the point remains that $200.00 is a number that is based on ***nothing*** in the record. Defendants certainly could have sought to introduce evidence of other stock photo agency licensing prices, hired an expert to testify on

damages, etc., but they did *none* of those things. If Ms. Jones was somehow completely discredited due to an error in the date she discovered the infringement or the number of photos at issue (the 'credibility' issues relied upon by Defendants), the jury then had nothing in the record from which to base its $200.00 award. It is a completely irrational award that is, at best, based on the "fevered imaginings or personal vendettas" of the jury. As the Seventh Circuit stated in Adams v. City of Chi., 798 F.3d 539, 543 (7th Cir. 2015):

> In deciding whether a damages award is excessive, three factors guide our analysis: "whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." *G.G. v. Grindle*, 665 F.3d 795, 798 (7th Cir. 2011) (citation omitted).
>
> A monstrously excessive verdict is one that is "a product of passion and prejudice." *Fleming v. Cnty. of Kane*, 898 F.2d 553, 561 (7th Cir. 1990) (quotation marks and citation omitted). We have observed that the "monstrously excessive" standard and the "rational connection" standard are really just two ways of describing the same inquiry: whether the jury verdict was irrational.

Defendants have not offered *any* evidentiary explanation of the jury's $200.00 actual damages award as none exists. Simply put, the actual damages award was not within the scope of the evidence presented at trial and was thus improper. See Entm't USA, Inc. v. Moorehead Communs., Inc., 897 F.3d 786, 793 (7th Cir. 2018) ("An award of damages must be within the scope of the evidence that was presented at trial" and cannot stray beyond that scope.").

## II. Vicarious Infringement

The Opposition Memorandum likewise misses the mark in arguing that the jury's verdict on the vicarious judgment claim against Jaber was proper. Here, the Opposition Memorandum argues that, just because Food Town Mart sold pork chops every week and Amjad Hamed testified

that the advertisement of pork chops acted as a draw for customers, vicarious infringement was not proven. As set forth in the Motion, Defendants are incorrect. See, e.g. Major Bob Music v. Heiman, No. 09-cv-341-bbc, 2010 U.S. Dist. LEXIS 46125 (W.D. Wis. May 10, 2010) (finding owner of dance hall liable for vicarious infringement and stating "defendant encouraged infringement of plaintiffs' copyrighted songs by allowing karaoke at Gene'os, presumably to attract customers. Thus, it is appropriate to hold defendant vicariously liable because he is the owner and operator of Gene'os and derives financial benefit from it."); Broad. Music, Inc. v. Hartmarx Corp., No. 88 C 2856, 1988 U.S. Dist. LEXIS 13298 (N.D. Ill. Nov. 17, 1988) ("The subsidiaries undoubtedly play music in their stores in order to create a more attractive environment for customers. The more customers a store attracts, the greater its profit are likely to be. Hartmarx owns 100% of the stock of Jaymar-Ruby, and 92% of that of Country Miss. The more profitable are it subsidiaries (the store owners), the greater is the value of Hartmarx. Thus, we find as a matter of law that Hartmarx has an obvious and direct interest in the alleged exploitation of copyrighted materials.").

The Opposition Memorandum fails to even respond to Amjad Hamed's testimony that the Facebook advertisement was designed to act as a draw for customers or that Jaber plainly testified that every pork chop, chicken leg, speaker, etc. sold at the store ultimately benefits him as the sole owner of the store. As set forth in the Motion, this evidence was more than sufficient to establish vicarious liability under the Copyright Act. See, e.g. In re Aimster Copyright Litig., 252 F. Supp. 2d 634 (N.D. Ill. 2002) ("The financial benefit element is also satisfied where; as here, the existence of infringing activities act as a draw for potential customers."); Dish Network LLC v. Datacamp Ltd., No. 22-cv-00993, 2023 U.S. Dist. LEXIS 121363 (N.D. Ill. July 14, 2023) ("The

financial benefit requirement is satisfied where there is evidence of a direct financial gain or that the 'availability of infringing material acts as a draw for customers.") (internal quotation marks omitted).

### III. Motion for New Trial

The Opposition Memorandum argues that, because Plaintiff won and was awarded $1,000.00 in statutory damages, the Court's evidentiary rulings and the jury's unsupportable actual damages award are immaterial. Again, Defendants are wrong. As set forth in the Motion, a plaintiff's actual damages/losses is one of the very few factors a jury must consider in awarding statutory damages. Further, with respect to the Court's evidentiary rulings, it is strange that the Motion points out the jury did not find Food Town Mart's conduct to be willful.[3] That is precisely the point. The Court prevented the jury from hearing any evidence that would have shown Defendants to have *lied* throughout this lawsuit – from its very beginning until the start of trial when they finally decided to tell the truth. Defendants lied throughout the pleadings stage, their sworn answers to interrogatories, and their sworn deposition. For example, Jaber – who works at the store 5 – 7 days/week for 8 hours/day, apparently could not recognize his own store signs or products that he sells on a daily basis. Conduct of the parties, deterrence, remorse, etc. are all items that a jury may consider in making a willfulness determination, yet the Court prevented Plaintiff from presenting any of that evidence to the jury. This absolutely prejudiced Plaintiff as did the jury's unsupportable actual damages award.

---

[3] See Opposition Memorandum, at p. 8.

6
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Case 2:22-cv-00642-JPS   Filed 12/18/24   Page 6 of 7   Document 60

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court enter an Order: (a) granting this Motion; (b) amending the Judgment to award $23,976.00 in actual damages; (b) amending the Judgment to reflect that Jaber is liable for vicarious infringement; (c) alternatively, granting Plaintiff a new trial; and (d) for such further relief as the Court deems proper.

Respectfully submitted,

Dated: December 18, 2024.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com


By: /s/ Daniel DeSouza\_\_\_
    Daniel DeSouza, Esq.
    Florida Bar No. 19291

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/ Daniel DeSouza\_\_\_
    Daniel DeSouza, Esq.

7
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Case 2:22-cv-00642-JPS    Filed 12/18/24    Page 7 of 7    Document 60