UNITED STATES DISTRICT COURT
EASTER DISTRICT OF WISCONSIN

Case No. 22-cv-642-JPS

PREPARED FOOD PHOTOS, INC.,

    Plaintiff,

v.

SHARIF JABER and
NOFAL, LLC,
d/b/a Food Town Mart,

    Defendants.

## DECLARATION OF GRIFFIN C. KLEMA, ESQ.

I, Griffin C. Klema, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 of the following is true and correct:

1.    I submit this declaration in response to the assertions by plaintiff in its opposition memorandum, and in support of defendant Sharif Jaber's motion for extension of time *nunc pro tunc*. I have personal knowledge of the facts stated herein and if called upon and sworn as a witness I could testify competently to them.

2.    The vast majority of my clients have come from referrals and cold-calls, and includes civil litigation beyond copyright matters. Occasionally I have offered assistance to attorneys defending victims of copyright trolling, and sometimes provide brief pro bono assistance to the many calls from distressed recipients of threatening demand letters, helping them navigate a difficult and risky legal claim of copyright infringement.

3.    On April 8, 2025, a pro se defendant (opposing another of CopyCat Legal's client's claim of copyright infringement) sent me an email alerting me to the existence of this lawsuit. In

particular, he provided a link to the Court's April 7, 2025, order denying plaintiff's motion for new trial, available on the Court Listener website (https://www.courtlistener.com). It was his email that alerted me to the existence of the case. I ran a docket report on PACER and then purchased the trial transcripts, some of which I read on that same date (April 8). I thought the case noteworthy because it is one of only a handful of cases I am aware of that have been litigated through to a verdict respecting a claim of copyright infringement for the presence of a single photograph on a website or social media post.

4. After the pro se defendant alerted me to this case, I added it to the list of cases I track on Court Listener, but did not initially look deeply into the case or filings beyond the April 7, order.

5. I then saw plaintiff's motion for attorney's fees docketed on April 21, 2025, but did not read it or pay the PACER fees to obtain a copy of it, as the defendants were represented by existing counsel.

6. I then saw Mr. Steinle's motion to withdraw docketed on May 1, 2025. I contacted him by email that same day to offer the defendants pro bono representation limited to filing a memorandum in opposition to plaintiff's motion for attorney's fees. That was all I understood was remaining in the action for the defendants to do, and estimated that would not entail more work than about 16 hours—time that I was willing to provide pro bono.

7. My willingness to prepare and file the opposition memorandum pro bono was based on a number of factors. First, I am a Wisconsin native, having grown up in Racine. Second was that both Mr. Jaber and Nofal, LLC would benefit from avoiding a large attorney's fee award to a plaintiff like Prepared Food Photos when all it recovered from extensive effort was $200 in actual damages, and based on my experience with CopyCat Legal and plaintiff that it likely demanded

unfair amounts to settle. Because I was confident the plaintiff's demand was excessive, helping the defendants avoid possible fees liability appealed to me as the moral and just thing to do. Third, The Florida Bar encourages me, as one of its members, to provide some pro bono representation (20 hours per year), and requires me to report the number of hours I have provided the public each year.[1]

8. And so on May 6, 2025, I spoke to Mr. Steinle about his representation and pending motion to withdraw. I explained my willingness to help the defendants. He was receptive to it, but expressed some concern about possible ethical issues, even though I don't recall if he identified anything specific. I did not perceive any ethical concerns given the pro bono basis of the very limited representation as well as Mr. Steinle's withdrawal, leaving the defendants without counsel. I did not view it as solicitation because I spoke with the defendants' counsel, but who noted he had difficulty contacting them, and could not make the introduction himself.

9. Nevertheless, in an abundance of caution, on May 6, 2025, I called the Florida Bar Ethics Hotline[2] to discuss the propriety of my appearance in this action, and spoke with an ethics attorney for 21.4 minutes. She provided helpful guidance and citations to and summaries of various cases, which I reviewed. I then determined that my appearance in this matter would not be unethical, including because my motivation was not for my own pecuniary gain. Again, at that time I was under the impression that the scope of my assistance would be limited to drafting an opposition memorandum to the plaintiff's fees motion and helping possibly negotiate the plaintiff's bill of costs. There was no possibility of financial benefit to me from helping the defendants oppose plaintiff's fees motion when I initially offered my representation.

---

[1] See https://www.floridabar.org/member/probono/
[2] This is a free benefit provided to members of The Florida Bar. See https://www.floridabar.org/ethics/ethotline/.

10. With Mr. Steinle's consent, I then contacted Sharif Jaber by telephone on May 13, 2025, introduced myself, and explained the pro bono representation I was offering. He agreed, and engaged me on that basis. I then sought admission to this Court, again with the understanding that my effort was going to be limited and pro bono in nature.

11. Starting on June 11, 2025, I began collecting case documents and reviewing them to prepare the opposition memorandum. It was at that moment that I reviewed the jury verdict and the judgment. It appeared to me that Mr. Jaber was successful in his defense of the action, but had not filed a motion for attorney's fees. I then spoke again to Mr. Steinle about the judgment and whether he recognized that Jaber might be a prevailing party. He did not.

12. On June 12, 2025, I spoke with Mr. Jaber about pursuing his attorney's fees, and noted the procedural requirement of a court order providing for extension of time before the fees motion could be filed. I understood from him that he had not been advised by Mr. Steinle that he could seek his attorney's fees, and he then authorized me to proceed with a motion for extension of time, and a fees motion if the Court so allowed.

13. In response to Mr. DeSouza's assertions, I also disclose the following: Mr. Jaber agreed to enlarge the scope of my representation to include pursuing his attorney's fees after I had appeared. Given that broader scope and further effort for Mr. Jaber, I agreed to do so on a contingency, meaning he would not be obligated to pay any fee unless the Court awarded him his fees from the plaintiff. My time opposing plaintiff's fees motion and bill of costs on behalf of Nofal continues to be pro bono.

Dated: June 27, 2025

                                                                    /s/ Griffin Klema  
                                                                    Griffin C. Klema, Esq