**UNITED STATES DISTRICT COURT**
**EASTER DISTRICT OF WISCONSIN**

**Case No. 22-cv-642-JPS**

PREPARED FOOD PHOTOS, INC.,

      Plaintiff,

v.

SHARIF JABER and
NOFAL, LLC,
d/b/a Food Town Mart,

      Defendants.

---

## DEFENDANT NOFAL, LLC'S OPPOSITION TO PLAINTIFF PREPARED FOOD PHOTOS, INC.'S MOTION FOR ATTORNEY'S FEES, DE 64

Defendant Nofal, LLC, pursuant to Civil L. R. 7(b), files this, its memorandum in opposition to plaintiff Prepared Food Photos, Inc.'s motion for attorney's fees, DE 64.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 3

II.   FACTS AND PROCEDURAL HISTORY ......................................................... 4

    A.    The true value of stock photographs ........................................................ 4

    B.    Plaintiff's copyright enforcement business .............................................. 7

    C.    Plaintiff's threats to defendants and their counsel who do not accede to its extortionate demands ...................................................................... 10

    D.    Plaintiff's unreasonable settlement demands to Nofal ......................... 11

    E.    Plaintiff's abusive discovery and trial tactics ...................................... 11

III.  ARGUMENT ...................................................................................................... 12

    A.    Framework for fees under the Copyright Act ....................................... 12

    B.    The *Fogerty* factors .................................................................................. 12

        1.    *PFP's degree of success was marginal* ........................................ 13

        2.    *PFP's approach to copyright litigation is extortionate* ............... 14

        3.    *PFP and its counsel have improper motives, and does not seek relief for harm it actually suffers* ........................................... 15

        4.    *PFP's claim against Jaber was objectively unreasonable* ........... 18

    C.    Plaintiff's alternative basis for fees as discovery sanctions should also be rejected ....................................................................................... 18

    D.    Plaintiff's claimed fees should be reduced ............................................ 19

IV.   CONCLUSION ................................................................................................... 20

## I.     INTRODUCTION

Nofal, LLC is a small community store. Through the owner's son, Amjad Hamed, it made an honest mistake when he included a photo of pork chops in a Facebook post on an account that co-defendant Sharif Jaber never knew existed until this lawsuit. It generated a mere two likes and no comments. Mr. Hamed testified at his deposition that the Facebook account "wasn't making an impact on [Nofal's] sales." Despite that, Prepared Food Photos sought $30,000 and then filed suit when its demand was not met.

Seeking damages for willful infringement, it prayed for up to $150,000 in damages for its 1990's vintage stock photo. It recovered only $200 from one defendant where the jury did not find the infringement willful. Crucially, this was Prepared Food Photos' first jury verdict, despite having filed at least 285 copyright infringement suits since 2016, together with an untold number of pre-suit settlements.[1] The result it obtained is consistent with what the public (i.e. a jury) understands is the value of stock photography.

It now seeks $69,255 in attorney's fees under the Copyright Act, 17 U.S.C. § 505, as the party prevailing against defendant Nofal, LLC. This Court, however, ought to exercise its discretion and deny PFP its attorney's fees, just as a number of other courts have done where the plaintiff recovered a small sum for infringement of a single photograph on a website. The Copyright Act is not furthered by such an award, including because Prepared Food Photos abuses the law in furtherance of its pecuniary gain rather than recompense for actual harm it suffers.

---

[1] PFP, under its current and former name. See Affirmation of Paul A. Levy, DE 21-1 at ¶ 5 and Ex. C thereto,[1] Prepared Food Photos, Inc. v. Pool World, Inc., no. 2:23-cv-160 (E.D. Wash. Nov. 5, 2023), together with a untold number of pre-suit settlements from accused persons and businesses. Some of those demand letters are attached in support hereof. It appears to have morphed once again, now filing suits as "Rockefeller Photos, LLC" in which that entity claims that PFP is a "customer" that it "represent[s]." E.g., Compl. at ¶ 7, Rockefeller Photos, LLC v. Sussex Meat Packing Inc., no. 25-cv-188 (D.N.J. Jan. 8, 2025).[1]

## II.    FACTS AND PROCEDURAL HISTORY

Prepared Food Photos filed this lawsuit on May 31, 2022, DE 1, after its demand for $30,000 went unanswered, Exhibit 1. It had discovered that one of three photos on a single Facebook post was its own. Id., see also Am. Compl., DE 19 at ¶ 18. Its demand letter is consistent with many other demands made by PFP to alleged infringers, nearly all of which seek the same amount, payable within days. It previously licensed its images through iStock Photo, but nine years ago it pivoted to its current business model of revenue-through-enforcement. It uses the risk of a defendant's potential liability for PFP's attorney's fees together with the cost of defense to support its outlandish settlement demands, supported by default judgments predicated on false representations that it only licenses 20,000 photos on a per month basis for $999 and twelve-month minimum subscription. But in all likelihood, Prepared Food Photos doesn't actually license its content on that basis. Instead, it is what many courts have recognized as copyright trolling.

### A.  The true value of stock photographs

Contrary to Prepared Food Photos' incredible assertions about its "licensing" model, the reality is that few, if any, businesses would see value in paying $12,000 per year for 1990's vintage images when newer, better, and less expensive alternatives exist. The actual market value of stock images for online use is well-established. Most businesses seeking marketing collateral to visually enhance their digital presence as well as print materials can acquire perpetual, worldwide, fully paid up, royalty-free, nonexclusive licenses to myriad images for nominal sums.

For example, one of the leading vendors of stock images, iStock Photo, offers "[m]illions of project-ready photos and illustrations" for $2.90 per download when users pay on a periodic basis. See https://www.istockphoto.com/plans-and-pricing (providing ten downloads per month

for $29). Alternatively, for users who do not need ongoing downloads, a 3-credit plan can be had for $33, which provides users with "3 images or 1 Signature image." Id.



These images are licensed pursuant to iStock's "standard license" that allows customers to "use the file for any personal, business or commercial purposes that aren't otherwise restricted by the license." See https://www.istockphoto.com/help/licenses. It makes clear that such use includes, like the Facebook post here, "in advertising, marketing, apps, websites, social media, TV and film, presentations, newspapers, magazines and books, and product packaging, among hundreds of other uses." Id.

The Court may take judicial notice of these facts. Federal Rule of Evidence 201 provides that a court "must" take judicial notice "if a party requests it and the court is supplied with the necessary information" of facts that are "not subject to reasonable dispute because" it is a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (c)(2). The Court may take judicial notice of the fact of the market for stock photographs as reflected in public offers of licenses to content and pricing for same. LaBella Winnetka, Inc. v. Village of Winnetka, 628 F.3d 937, 944 n.3 (7th Cir. 2010) (taking "judicial notice of the contents of the [defendant's] website"); see also Chesapeake Life Ins. Co. v. Parker, no. 18-cv-643, 2018 WL 4188469, at *3 (E.D. Wis. Aug. 31, 2018) (taking judicial notice of Indian tribe's website). Merely because the merits phase has ended does not preclude the Court from taking judicial notice in these post-judgment proceedings. Fed. R. Evid. 201(d) (a "court may take judicial notice at any stage of the proceeding"). The facts respecting the competitive market for stock images cannot reasonably be disputed.

Important to the Court's analysis now, Prepared Food Photos has actual knowledge of this market because it previously licensed its images through iStock. See Affirmation of Paul A. Levy,

DE 21-1 at ¶ 7,[2] <u>Prepared Food Photos, Inc. v. Pool World, Inc.</u>, no. 2:23-cv-160 (E.D. Wash. Nov. 5, 2023). Yet in 2016, it removed its images from iStock, and began suing for alleged infringement wherever its photos were found online. PFP's "$999 per month" scheme then materialized at the same moment that it began seeking to enforce its copyrights. That is not a coincidence.

## B. Plaintiff's copyright enforcement business

After concluding that what it was earning from licensing its content in the open marketplace was unsatisfactory, it then began to embark on its current revenue model: litigation. It engaged copyright trolling attorney, Richard Liebowitz, who, after filing hundreds of copyright infringement suits was eventually disbarred. <u>Adlife Marketing & Communications Co., Inc. v. Karns Prime and Fancy Food, Ltd.</u>, no. 21-2074, 2023 WL 179840 (3d Cir. Jan. 13, 2023).

PFP claims its "business model **relies on** its recurring monthly subscription service" Decl. of Rebecca Jones, DE 10-1 at ¶ 6, <u>Prepared Food Photos, Inc. v. 193 Corp.</u>, no. 22-cv-3832 (N.D. Ill. Sept. 14, 2022) (emphasis supplied), yet testified that it "did not begin its subscription model until early 2017," Decl. of Douglas Fleurant, DE 71-1 at ¶ 6, <u>Prepared Food Photos, Inc. v. Pool World, Inc.</u>, no. 23-cv-160 (E.D. Wash. Mar. 11, 2025).[3] And even then what it produced in <u>Pool World</u> showed that it had only one subscriber in most of the months from 2017 to 2020, no subscribers in 2021 and 2022, and "several" subscribers in 2023 and 2024. Fifth Affirmation of Paul Alan Levy, DE 69-1 at ¶ 17, <u>Prepared Food Photos, Inc. v. Pool World, Inc.</u>, no. 23-cv-160

---

[2] Available at
<u>https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.21.1.pdf</u>.
[3] Available at
<u>https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.71.1.pdf</u>

(E.D. Wash. Feb. 25, 2025).[4] and even from among those subscribers, the amounts arranged from $99 to $750. Id. Based on the information Pool World obtained from PFP (after the defendant obtained an order requiring PFP to disclose the documents), the affidavits submitted by PFP in support of various of its default judgments appear to have been false. Id. at ¶ 19.

The reality is that PFP simply elected to stop competing in the open market in favor of revenue derived through enforcement. Its CEO, Joel Albrizio, admitted that his company had previously "done very well licensing images" but "with the advent of desktop publishing" and the "copy and paste environment" PFP's "subscription licensing was dissipating." Exhibit 1, Joel Albrizio, Public Citizen Toxic Behavior, AttorneyRunAmuck.blog, June 13, 2024.[5] While he attributes his company's declining revenue to "theft" rather than competitive market forces and proliferation of digital photography, he later admitted that PFP was "forced to bid for creative work against competitors" and that "[w]ithout a shift in our business model we would have been forced to close the food image business entirely." Id.

And so, PFP was "advised to put all of [its] images under copyright, then defend our intellectual property rights." Id. That timing coincided with Richard Liebowitz, PFP's former counsel, starting to file thousands of infringement suits in 2016.[6] Stated differently, Prepared Food Photos chose to pursue a business model by which it would earn money from litigation and settlements rather than continuing to compete in a market facing downward pricing pressure. It

---

[4] Available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.69.1.pdf
[5] This website appears to have been created by Mr. Albrizio as a direct consequence of the defensive efforts of Public Citizen and Paul Alan Levy, and included a number of posts attacking him before being taken down.
[6] The earliest known copyright infringement case by Liebowitz was filed on January 23, 2016. Chevrestt v. CBS Broadcasting Inc., no. 16-cv-522 (S.D.N.Y.).

has difficulty understanding how anyone could tell PFP "what to charge or that [its] intellectual property is essentially worthless." Id. But that is the nature of the market: Willing buyers decide the value of a good or service, not the proprietor.

With a view that its works command premium licensing according to its unilateral pricing model, it repeatedly rejects efforts by others to offer "between $200 to $750," based on the open market, and instead pressures accused infringers to pay $20,000. E.g., Affirmation of Justin Nygard, DE 55-12 at 20-20, ¶¶ 2-7, Prepared Food Photos, Inc. v. Pool World, Inc., no. 23-cv-160 (E.D. Wash. Aug. 30, 2024).[7]

PFP seems to fully understand the cost of defense, with Mr. Albrizio attacking a non-profit, Public Citizen, and its attorney, Paul Levy, as a result of their efforts to investigate and expose PFP. Exhibit 1, Joel Albrizio, Paul Alan Levy… His Personal Vendettas Financed by Public Citizen? AttorneyRunAmuck.blog, Jul. 9, 2024 ("[h]ow likely is it they will be willing to pay for [our] attorney fees and costs when they lose"). So too do its attorneys. Exhibit 2 ("If your client wants to spend the resources to see how a judge/jury would rule, my client has no issue.").

Mr. Albrizio also admits that his other company, Bad-Adz digital "could not survive without Prepared Food Photos," id., because it seems that entity too does not make sufficient money in the open market competing against others for digital media creation, see Decl. of Douglas Fleurant, DE 71-1 at ¶¶ 13-15, Prepared Food Photos, Inc. v. Pool World, Inc., no. 23-cv-160 (E.D. Wash. Mar. 11, 2025) (explaining redactions of records produced in discovery, including "monies

---

[7] Available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.55.12.pdf

from copyright infringement settlements" and "intracompany transfers" between PFP and Bad-Adz).[8]

Plainly, Prepared Food Photos is in the business of litigation—and not just any litigation, *abusive* litigation seeking settlements far beyond what it would normally obtain either in the open market or upon a jury verdict, as this case shows.

### C. Plaintiff's threats to defendants and their counsel who do not accede to its extortionate demands

Consistent with its new post-2016 litigation business model, Prepared Food Photos has likely sent thousands of demand letters over the years. Attached hereto as Composite Exhibit 3 are fourteen demand letters sent by Prepared Food Photos' counsel, constituting just a smattering of what it has sent. Previously, PFP sent demands itself, seeking $8,000 for alleged infringement. Composite Exhibit 4. Through CopyCat Legal, its first settlement demands have consistently been $30,000. Mr. Albrizio fully understands the risk that an accused faces while simultaneously recognizing the true value of its works: "If in the end the judge were to say in an imaginary world the image was worth $1.00, you would still be responsible for tens of thousands in costs and attorney's fees." Ex. 1, Joel Albrizio, Prepared Food Photos To Unsuspecting Paul Alan Levy Clients, AttorneyRunAmuck.blog, January 1, 2024. He also urges recipients of his company's demand letters to "review … the awards given by so many federal courts to Prepared Food photos." Id. What is clear from Mr. Albrizio's public comments is that he feels no restraint to belittle and intimidate anyone that has actually fought PFP's trolling scheme, including cartoon caricatures of Mr. Levy in addition to his personal attacks of defense counsel.

---

[8] Available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.71.1.pdf

### D. Plaintiff's unreasonable settlement demands to Nofal

Through its boilerplate letter, Prepared Food Photos demanded $30,000 for the presence of a photograph of pork chops on a single Facebook post. Ex. 5. Upon filing suit, it demanded the statutory maximum for willful infringement. Compl., DE 1 at 7. It maintained that demand throughout its pleadings, seeking it from each of the two defendants. Second Am. Compl., DE 19 at 8-9. On November 30, 2023, it then demanded $22,000 in settlement. Ex. 6. After the close of discovery and just prior to trial it demanded $90,000. Ex. 7.

### E. Plaintiff's abusive discovery and trial tactics

As part of its efforts to put the defendants to considerable effort and expense, Prepared Food Photos sought discovery of myriad irrelevant documents and information. It asked Nofal (and Jaber separately) to document each and every license to any "photograph published and/or displayed on any page of" its website, Facebook page, or any other social media, including identifying each licensor, and the amount of each license. DE 77-2 at 19 (Interrogatory No. 6). So too with any media that was removed. Id. at 20 (Interrogatory No. 7). It also sought inadmissible evidence of subsequent remedial measures. Id. at 33 (seeking production of documents after its demand letter was sent regarding "whether any of the photographs published or displayed on the Website, the Facebook Page, and/or any other social media page controlled by Defendants were properly licensed and/or purchased"). But that information was entirely irrelevant and inadmissible under Rule 407. At trial, the Court repeatedly sustained objections to PFP's effort to elicit such irrelevant information. E.g., Trial Tr. at 101-102, 119.

### III.   ARGUMENT

#### A.  Framework for fees under the Copyright Act

A number of non-exclusive factors "inform a court's fee-shifting decisions" in copyright cases, including 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)). Each of those factors is "relevant but none determinative." Assessment Techs. of WI, LLC v. Wiredata, Inc., 361 F.3d 434, 436 (7th Cir. 2004). In the Seventh Circuit, "[t]he two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." Id.

In the end, the Court has discretion to deny plaintiff its attorney's fees, as the statute's language is permissive. 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee to the prevailing party").

The Court's decision on plaintiff's application for attorney's fees is reviewed for abuse of discretion. DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 625 (7th Cir. 2013). Here, the court would not abuse its discretion in denying Prepared Food Photos its fees from defendant Nofal, LLC. But if it does award such fees, they should be reduced.

#### B.  The Fogerty factors

Plaintiff's motion reads more as a discovery dispute than it does a hard-fought win vindicating its case valuation supported by the Fogerty factors. A review of them shows that Prepared Food Photos should not be awarded any attorney's fees because its approach to copyright enforcement does not further the purposes of the Copyright Act. Plaintiffs like PFP do not need

attorney's fees when their expectations about the harm they allegedly suffered are unrealistic and wholly disconnected from the objective market for stock photography. In fact, awarding fees to a copyright troll that recovers a minimal damages award after a full trial would *dis*serve the Copyright Act for the same reasons that a prevailing defendant should be awarded its fees: it is "a disreputable business practice—a form of extortion." Live Face on Web v. Cremation Soc'y of Ill., 77 F.4th 630, 634 (7th Cir. 2023).

### 1. PFP's degree of success was marginal

In this lawsuit, Prepared Food Photos recovered the small sum of $200 from only one of two defendants (Nofal, LLC). Despite demanding an injunction, DE 19 at 8-9, it obtained no equitable relief whatsoever. And it lost a full half of its case, failing on its claim of vicarious copyright infringement against co-defendant Sharif Jaber.

On better facts, courts have denied successful copyright infringement plaintiffs their attorney's fees. See McDermott v. Kalita Mukul Creative Inc., 757 F.Supp.3d 301, 322-27 (E.D.N.Y. 2024) (denying both costs and attorney's fees to the plaintiff after it obtained a $970 statutory damages judgment); Golden v. Michael Grecco Prods., Inc., 524 F. Supp. 3d 52, 59, 67 (E.D.N.Y. 2021) (denying costs because "a statutory damages award in [the plaintiff's] favor [of $750] is more than sufficient to advance the purposes of the Copyright Act" where the plaintiff had demanded $25,000 in settlement pre-suit even though the court found the defendant was "not an innocent infringer").

Where a copyright owner pushes a case through to a jury verdict, dislikes the 3-figure award, and requests a do-over—all the while demanding a settlement more than 450 times (times!) what it actually obtained in the end—denying the litigant its attorney's fees is more than equitable.

Plaintiff seeks to skirt the diminutive amount of its judgment, citing the Ninth Circuit's decision in Glacier Films (USA), Inc. v. Turchin, 896 F.3d 1033, 1038 (9th Cir. 2018), and claiming that the amount of its award is "not relevant." Mot. at 13. That is directly contrary to instructions from the Seventh Circuit: one of the two "most important" factors in deciding whether a prevailing party should be awarded fees under the Copyright Act is "the amount of damages" that party obtained. Assessment Techs., 361 F.3d at 436. Plaintiff's lack of citing controlling law and citing an out of circuit to the contrary should give the Court pause.

While Gonzales v. Transfer Technologies, Inc., 301 F.3d at 610 (7th Cir. 2002) suggests a presumptive entitlement to attorney's fees when the monetary stakes are small, here, that presumption is rebutted by the facts of Prepared Food Photos' conduct and motivations, as well as its frivolous claim against defendant Jaber. PFP does not need to recover fees it never paid to its contingency fee lawyers in order "to enable [it] … to press it[s claim] to a successful conclusion." Assessment Techs., 361 F.3d at 437. Plaintiff copyright firms abound, ready to offer their services on pure contingency to copyright owners, including its lead counsel here. Rarely, if ever, are defendants in the same position. Even where a plaintiff's claim is not frivolous (just "marginal") "us[ing] an infringement suit" and "hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively could be a form of copyright misuse." Id. Here, it is "an appropriate sanction" to deny fees to PFP despite its status as a successful copyright plaintiff because it engages in misuse. Cf. id.

## 2. PFP's approach to copyright litigation is extortionate

Plaintiff's approach to enforcing its copyrights is more than unfair, it's extortionate. Plaintiff's CEO, Joel Albrizio, fully understands not only the real-world costs on defendants to oppose claims of copyright infringement, he uses the defendant's risk of having to pay PFP's

attorney's fees in order to demand sums far in excess of the fair market value of the copyrighted works. In no uncertain terms, PFP pursues litigation that may only yield a $1.00 damages judgment with the full expectation that a court will award the attorneys fees for doing so, irrespective of PFP's tactics or settlement demands.

Here, PFP demanded $30,000 based on little more than it knew a Facebook page named "Villard Food Town" had a single post with one of its photos on it. Unlike a pirated movie, the image wasn't being sold, but rather there merely to provide marginal visual enhancement to the accompanying text. It pressed its claim, urging the Court to award it $71,928 in statutory damages by motion, and privately demanded $90,000 in settlement before trial. To Nofal's knowledge, in no contested dispute has a jury or court awarded anything remotely close on similar facts.

It also does not settle its cases by separating its damages from its attorney's fees.[9] By doing so, PFP directly profits from the risk of the defendant's attorney's fee exposure, rather than being made whole for a few dollars' worth of digital media. Declining to award it attorney's fees would further the goals of the Copyright Act by ensuring copyright owners fairly value their cases at the front end of the dispute. If "[t]he primary objective of the Copyright Act is to encourage the production of original" works "for the good of the public," Fogerty, 510 U.S. at 524, then economic incentives for creation should outweigh those for litigation. Every day, stock food photographs are created, licensed, and used. Both authors and the public benefit. But not Prepared Food Photos. It long ago abandoned creating new works in favor of its current business model of litigation.[10]

### 3. PFP and its counsel have improper motives, and does not seek relief for harm it actually suffers

---

[9] At least to Nofal's and its counsel's knowledge.

[10] It has not registered any copyrights with the U.S. Copyright Office since 2017, shortly after it embarked on its current litigation business model.

PFP claims the Court cannot "question Plaintiff's motivation." Mot. at 16. But the evidence of its conduct is unmistakable and readily apparent. The various blog posts from Joel Albrizio well-illustrate the motives underlying this case and the hundreds of others Prepared Food / Bad-Adz / Rockefeller has filed. So too do the attacks against defense counsel, here and elsewhere. Not only are PFP's allegations unprofessional, they're simply untrue. They only serve to highlight its improper motives.

PFP also improperly ascribed excessive weight to default judgments it had obtained in order to bootstrap its unrealistic licensing scheme. The Court recognized as much when it denied plaintiff's Rule 59 motion to alter the judgment. Order, DE 61 at 15-16 (rejecting PFP's argument "that the damages award should be in line with awards in similar cases" because "Plaintiff fails to acknowledge that all of its cited cases were decided on default judgment" which were outcomes in which the courts had "rel[ied] only on Plaintiff's declarations"). It also faulted plaintiff for "conveniently omit[ting] reference to another case it had in this Court" where its proposed damage award was rejected because it hadn't explained why its business was "structured to disallow licensing of individual photographs" which the Court noted was "the single most accurate measure of its damages." Id. (citing Prepared Food Photos, Inc. v. Hometown Publ'ns II Inc., no. 22-cv-652, 2023 WL 3439535, at *4 (E.D. Wis. May 12, 2023)). Similarly, Judge Pepper rejected plaintiff's same $999 per month argument, finding that if the non-appearing defendant had engaged in the hypothetical arms-length negotiation, it would not "have settled on $11,988 as the price for that use." Prepared Food Photos, Inc. v. Currie & Sons LLC, no. 22-cv-1141 (E.D. Wis. Mar. 31, 2024).[11] In more direct terms, that "court [was] not persuaded that $11,988 accurately

_____

[11] The decision is unreported, but available at
https://storage.courtlistener.com/recap/gov.uscourts.wied.100746/gov.uscourts.wied.100746.8.0.
pdf.

captures the plaintiff's actual damages or should be the starting point for calculating the plaintiff's statutory damages." Id. PFP also omitted any mention of Currie & Sons from its Rule 59 memorandum as well as its motion for summary judgment. Plf.'s Mot. for Final Summary J., DE 36 at 16-18 (seeking $35,964 in actual damages and string-citing its default judgments). It sought even more on a statutory award. Id. at 20 (proffering that $71,928 "is appropriate to compensate the plaintiff for the damages suffered").

Prepared Food Photos should not be rewarded with fast and loose citations to decisions of which it and its counsel are aware that cut against its repeated arguments it is entitled to a five-figure award for a single stock image on a website or social media.

Further illustrating the improper motives is PFP's focus on possible insurance coverage. As a consequence of large default judgments, copyright plaintiffs have become accustomed to very substantial settlement offers from insurance carriers, given their risk aversion. Albrizio, AttorneyRunAmuck.blog, Jul. 9, 2024 (defendants "are profitable corporations that are likely fully insured for these events"); Joel Albrizio, Hakeem Jeffries VS. Paul Alan Levy… Public Citizen? AttorneyRunAmuck.blog, Jul. 22, 2024 (complaining that a defense attorney would spend time and effort "represent[ing] a client rather than have the client report his or her error to their insurer and potentially allow the claim to be settled"); see also Tr. of Proceedings, DE 28 at 9:21-10:4, McDermott v. Kalita Mukul Creative Inc., no. 23-cv-01274 (E.D.N.Y. Sept. 1, 2023) (plaintiff rejected an offer of $2,500 because "insurance is at play in this matter that would be liable for any judgment").[12]

---

[12] Available at
https://storage.courtlistener.com/recap/gov.uscourts.nyed.492904/gov.uscourts.nyed.492904.28.0.pdf

The second <u>Fogerty</u> factor, motivation, weighs against awarding Prepared Food Photos its attorney's fees.

### 4. PFP's claim against Jaber was objectively unreasonable

Next, PFP's claim against co-defendant Sharif Jaber was objectively unreasonable. The Supreme Court has stated that "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability." <u>Meyer v. Holley</u>, 537 U.S. 280, 286 (2003). While Jaber agreed to jury instructions that allowed the jurors to determine whether he "profited from the infringement" that may have been an erroneous jury instruction under Meyer. Nevertheless, the jury found in Jaber's favor on PFP's claim. The testimony by his son, Amjad Hamed, also showed that Jaber was unaware of the existence of the Facebook account when the infringement occurred. Trial Tr., DE 57 at 136-138 ("My father doesn't even know that we have – well, he didn't know that he – we had this Facebook page."). Nevertheless Amjad Hamed testified that he did make the posts for Nofal. <u>Id.</u> at 150. And so the jury's verdict was consistent with that evidence: Nofal was liable for non-willful direct infringement, while Sharif Jaber was not vicariously liable for his son's Facebook activity.

Given the objective unreasonableness of PFP pursuing a claim of vicarious liability against Nofal's sole owner, it should not be awarded its fees in pursuing its action against Nofal. Or at a minimum, its fee award should be considerably reduced.

### C. Plaintiff's alternative basis for fees as discovery sanctions should also be rejected

Apart from seeking fees under the Copyright Act, plaintiff's effort to seek fees under Rule 37 is similarly misplaced. There is good reason not to award fees to a copyright troll where it engaged in abusive discovery irrelevant to what it repeatedly refers to as a "simple" lawsuit.

### D. Plaintiff's claimed fees should be reduced

Finally, Prepared Food Photos' claimed attorney time should be reduced if not altogether disallowed. The time entries provided by its counsel do not adequately describe the nature or extent of the work performed. Each line on Exhibit 1 represents what plaintiff calls "an aggregate of the contemporaneous daily time records." Mot., DE 64 at 22. These entries, however, include time not reasonably expended in this action.

For example, its counsel spent time fishing "for other photographs" on the Facebook account (0.3), and its boilerplate pleading, nearly identical in all material respects to myriad other lawsuits by PFP and its counsel, billed at 2.6 hours. Even then, its boilerplate shows that it merely replaces a few key facts from one document to the next, occasionally leading to an oversight, as here, where it inadvertently included another (perhaps not actually sued) accused infringer: Little Pine. Second Am. Compl., DE 19 at ¶ 16.

As is typical of discovery requests by copyright plaintiffs represented by CopyCat Legal, PFP sought extensive irrelevant information. It sought to have Nofal (and Jaber separately) catalog each and every license to any "photograph published and/or displayed on any page of" its website, Facebook page, or any other social media, including identifying each licensor, and the amount of each license. DE 77-2 at 19 (Interrogatory No. 6). So too with any media that was removed. Id. at 20 (Interrogatory No. 7). It also sought inadmissible evidence of subsequent remedial measures. Id. at 33 (seeking production of documents after its demand letter was sent regarding "whether any of the photographs published or displayed on the Website, the Facebook Page, and/or any other social media page controlled by Defendants were properly licensed and/or purchased"). Such information is not admissible. Fed. R. Evid. 407. The Court properly and repeatedly sustained objections by defense counsel respecting PFP's efforts to elicit such irrelevant information at the trial. E.g., Trial Tr. at 101-102, 119. And so the time spent (5.5 hours) supposedly preparing the

boilerplate discovery requests, which its counsel utilizes in its other copyright cases, is not reasonable. So too with respect to the time spent at trial for the same irrelevant questioning.

Other time expended by plaintiff's counsel did not yield anything in this matter. It spent time preparing (and block billing for) subpoenas to Meta Platforms and Associated Wholesale Grocers totaling 2.5 hours. While the Meta subpoena may have identified Amjad Hamed as the owner of the Facebook account, its frolic and detour to Associated Wholesale Grocers went nowhere.

Separately, its motion for summary judgment, totaling 15.9 hours was not reasonable when it relied on cut-and-paste arguments from other of CopyCat Legal's court filings predicating a damages award on default judgments.

That said, PFP commendably eliminated its costs for local counsel, but its request for $69,225 in this case remains excessive based on the limited discovery, limited pre-trial motion practice, and recycled, boilerplate filings. The Court should correspondingly reduce PFP's attorney time.

As concerns PFP's counsel's hourly rates, this Court has knowledge of the prevailing market for plaintiff's civil litigation. PFP admits that its lawyers charge rates corresponding to the South Florida market. Mot. at 20. That may not be the same rates in Southeast Wisconsin.

In the end, any lodestar award should account for boilerplate documents and the local prevailing market rate for plaintiff attorneys.

## IV.   <u>CONCLUSION</u>

Plaintiff prepared Food photos is a quintessential copyright troll. It should not enjoy a presumption that it is entitled to its attorneys fees for pursuing a local small business that would not give into its outrageous settlement demands. It obtained very little from its effort, and it will

stand to gain substantially in the form of a large fees judgment to further perpetuate its *in terrorem* citation to court outcomes on low value stock photography. The Copyright Act is not furthered by such an award, and the court would not abuse its discretion in outright denying plaintiff's attorney's fees. But if it does award them, those fees should be reduced.

    ___/s/ Griffin Klema_____
    Griffin C. Klema, Esq.
    Fla. Bar No. 100279
    Attorney for Defendants
    **KLEMA LAW, P.L.**
    420 W. Kennedy Boulevard
    Tampa, FL 33606
    Telephone: 202-713-5292
    E-mail: Griffin@KlemaLaw.com