IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

    Defendants.

**PLAINTIFF'S RESPONSE TO NOFAL LLC'S OBJECTION TO BILL OF COSTS**

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") hereby files this response to defendant Nofal LLC d/b/a Food Town Mart's ("Nofal LLC") Objection and Supporting Memorandum in Opposition to Plaintiff Prepared Food Photos, Inc.'s Bill of Costs (the "Objection to Bill of Costs") [D.E. 79].

**I.    The Court Should Ignore Nofal LLC's 'Copyright Troll' Aspersions**

The Objection to Bill of Costs first asserts that the Court should deny costs on the basis that Plaintiff is a 'copyright troll' that has "filed more than 260 copyright infringement suits since 2016" and was previously represented (years prior to this lawsuit) by a now-disbarred attorney. This is the same 'serial litigant' argument raised by Jaber on his motion to extend time to file a motion for fees, and it is equally irrelevant, misplaced, and unfounded here.

As a threshold matter, there is zero evidence before the Court supporting Nofal LLC's assertions. Indeed, the only 'fact' pointed to by Nofal LLC is that Plaintiff has filed a large number

of lawsuits with respect to protecting its library of > 18,000 photographs. But, as adeptly discussed in Malibu Media, LLC v. Doe, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at *6–8 (N.D. Ill. June 9, 2014) (internal quotation marks and citation omitted):

> ***It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement.*** Courts in this district and elsewhere frequently get, for example, lawsuits by trademark owners against multiple websites that sell counterfeited products bearing the trademark owners' marks. By way of example, a review of the index of this district's filings reflects that Coach, Inc. which produces handbags, accessories, footwear, clothing, etc. bearing the company's trademarks, has filed 57 lawsuits in this district alone within the past four years, many of them naming dozens and indeed hundreds of entities as defendants. And a search of this district's index for suits naming "The Partnerships and Unincorporated Associations Identified on Schedule A," a term commonly used by trademark holders to sue multiple websites selling counterfeit products, reveals over 75 such lawsuits in the past year alone by various trademark holders.
>
> As best as the Court can determine, not one of these has led to criticism of the intellectual property right holder for misusing its trademark, let alone to dismissal of a case for that reason. Presumably the reason is that although cases involving the doctrine of copyright misuse refer to suing on a copyright hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect. That element is missing from Doe's affirmative defense. The Court is hard-pressed to see why Malibu Media's large-volume litigation should be treated differently from that of Coach or other intellectual property rights holders simply because Malibu's intellectual property rights involve pornographic films.[1]

---

[1] A search on PACER shows that Malibu Media, LLC had filed 2,221 lawsuits as of June 9, 2014.

That Plaintiff has pursued many claims for infringement is not somehow evidence of improper motivation or conduct. Indeed, with respect to Nofal LLC in particular, it is difficult to imagine a better motive for pursuit of this lawsuit than Nofal LLC's recalcitrance in refusing to discuss the matter pre-suit and outright denial that the subject Facebook page had anything to do with Nofal LLC. Plaintiff has the exclusive right under the Copyright Act to display the Work, and Plaintiff was left with little choice but to pursue this lawsuit to effectuate Nofal LLC's removal of such from its page.

It is frankly unclear what 'misconduct' Nofal LLC is accusing Plaintiff of here. That one of its former attorneys (from years ago) was dis-barred is a far cry from pointing to any purported misconduct by Plaintiff in this or any other case. And the fact that the jury awarded Plaintiff less than what was sought likewise does not indicate misconduct but rather the exercise of discretion as afforded by the Copyright Act. In short, Nofal LLC has not pointed to anything to overcome the "strong presumption" in favor of awarding costs under Rule 54(d) to a prevailing party. See, e.g. Weeks v. Samsung Heavy Indus. Co., 126 F.3d 926, 945 (7th Cir. 1997) ("We have consistently interpreted Rule 54(d) as providing a strong presumption that the prevailing party will recover costs, with the ultimate decision resting within the district court's discretion.").

## II.     $50.00 'Discrepancy'

The Objection to Bill of Costs next states there is a $50.00 discrepancy in the amount sought vs. the exhibits to the Bill of Costs. Nofal LLC's complaints here are unclear. The Bill of Costs seeks a total of $2,270.55 in taxable costs, equal to $402.00 in filing fees and $1,868.55 in transcript/service costs (all of which is properly taxable). The Bill of Costs attaches invoices thereto totaling $1,868.55 with none of the invoices duplicated. To undersigned counsel's

knowledge, there is no $50.00 discrepancy notwithstanding having re-reviewed the exhibits multiple times.

**III.     Necessity of Costs**

The Objection to Bill of Costs next complains that various of the costs sought by Plaintiff were not reasonably necessary.  First, Nofal LLC complains that Plaintiff paid for an expedited transcript of Sharif Jaber whereas it later ordered a regular service transcript for Amjad Hamed. Sharif Jaber's deposition was taken on September 28, 2023.  The dispositive motion deadline at the time was October 10, 2023, and Plaintiff needed the transcript with enough time to use such in connection with summary judgment.  Although consent was later obtained to file an unopposed motion to push back the deadline (with such motion being filed on October 2, 2023), the Court was not obligated to move the summary judgment deadline and therefore Plaintiff had to ensure it would receive the transcript in time.  Amjad Hamed's deposition was taken on December 18, 2023 which was weeks in advance of the new summary judgment deadline… as such, Plaintiff did not need an expedited transcript for Mr. Hamed.

Nofal LLC next asserts that costs should not be taxed with respect to a subpoena to Associated Wholesale Grocers, Inc. ("<u>AWG</u>") as the subpoena did not yield anything of value. Here, Nofal LLC ignores that Mr. Jaber testified in his deposition that his store used AWG to buy products and that AWG is the one that designed the store's ads.[2]  AWG was subpoenaed in connection with Mr. Jaber's testimony that the photos on the Facebook page (which included ads) were not for his store.  After service of the subpoena, AWG's in-house counsel telephoned

---

[2]     <u>See</u> Jaber Deposition Transcript (D.E. 64-1), at 46:8 – 47:16; 51:24 – 52:10.

4
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Case 2:22-cv-00642-JPS     Filed 07/07/25     Page 4 of 5     Document 82

undersigned counsel and represented that AWG did not have any files showing the creation or existence of the advertisements that were on Nofal LLC's Facebook page.

Finally, Nofal LLC asserts that Plaintiff was not diligent in subpoenaing witnesses for trial as it incurred a rush charge of $40.00 to subpoena Mr. Hamed. The subpoena was issued approximately 2 weeks prior to trial. The final pretrial conference in this matter was October 15, 2024. It is unclear when Nofal LLC believes the trial subpoena to Mr. Hamed should have been issued/served, but Plaintiff issued such in the ordinary course of trial planning and consistent with the developing schedule of the case.

Respectfully submitted,

Dated: July 7, 2025.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.
    Florida Bar No. 19291

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.

5
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Case 2:22-cv-00642-JPS   Filed 07/07/25   Page 5 of 5   Document 82