**UNITED STATES DISTRICT COURT**
**EASTER DISTRICT OF WISCONSIN**

**Case No. 22-cv-642-JPS**

PREPARED FOOD PHOTOS, INC.,

      Plaintiff,

v.

SHARIF JABER and
NOFAL, LLC,
d/b/a FoodTownMart,

      Defendants.

---

## DEFENDANT SHARIF JABER'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT

      Defendant Sharif Jaber, pursuant to Fed. R. Civ. P. 54, 17 U.S.C. § 505, and the Court's order extending the time for filing this motion, DE 81, files this motion for attorney's fees together with supporting memorandum of law. He separately files his bill of costs.

# TABLE OF CONTENTS

Page

INTRODUCTION....................................................................................................... 3

FACTS & PROCEDURAL HISTORY ....................................................................... 3

ARGUMENT ............................................................................................................... 7

I.     THE COPYRIGHT ACT, 17 U.S.C. § 505 PROVIDES FOR ATTORNEY'S FEES TO THE JABER AS A PREVAILING PARTY ................................... 7

    A.     Standard for attorney's fees under the Copyright Act to a prevailing defendant ......................................................................................... 7

       1.     *Entitlement to fees under the Copyright Act* ................................... 8

       2.     *Standard of review in an appellate court* ....................................... 8

    B.     Jaber is a prevailing party ................................................................... 9

       1.     *The Supreme Court has drawn a distinction between its prevailing plaintiff cases and prevailing defendant cases* ................................. 9

       2.     *Jaber prevailed against plaintiff's claim against him* .................. 10

    C.     The Copyright Act's purposes are served by awarding Jaber his attorney's fees .................................................................................. 11

       1.     *Frivolousness* ................................................................................ 12

       2.     *Motivation* ..................................................................................... 14

       3.     *Objective unreasonableness* ......................................................... 16

       4.     *Compensation and deterrence* ...................................................... 17

       5.     *Degree of success / Strength of Jaber's case* .............................. 19

       6.     *Amount of Damages* ..................................................................... 19

       7.     *Settlement offers* .......................................................................... 20

       8.     *Balancing the factors* ................................................................... 20

II.     JABER'S FEES ARE REASONABLE ................................................... 21

    A.     The lodestar calculation .................................................................... 21

    B.     Jaber's fees & taxable costs .............................................................. 22

       1.     *Reasonable hourly rates* .............................................................. 23

       2.     *The timekeepers' requested hours, and each task undertaken by the timekeeper during those hours* ................................................... 24

       3.     *The lodestar amount* .................................................................... 24

       4.     *Taxable costs* ............................................................................... 25

CONCLUSION ......................................................................................................... 25

## INTRODUCTION

Nofal, LLC is a small community grocery store owned by Sharif Jaber, and known as "FoodTown." The store became liable for copyright infringement when Amjad Hamed, an employee of FoodTown, made an honest mistake when he included a photo of pork chops in a Facebook post on an account that Jaber never knew existed until this lawsuit. But that post, and no other Facebook posts had any discernable effect on sales at FoodTown. Still, Prepared Food Photos pressed a theory of vicarious liability against Jaber. It did so in order to apply immense pressure for both Jaber and his business to jointly pay an unapportioned settlement far in excess of the harm actually caused by the fleeting use of the pork chops photo.

Discovery revealed that its claim against Jaber was unsustainable, where there was no evidence of a causal relationship between the one Facebook post and the earnings Jaber drew from operating his business. PFP maintained an unreasonable claim, using unreasonable litigation tactics, motivated by pecuniary gain rather than using the courts to see justice done. It obtained a nominal sum of $200 from FoodTown, and lost its claim against Jaber.

Jaber, as a prevailing defendant, now enjoys a strong presumption of entitlement to his attorney's fees, while Prepared Food Photos faces a steep uphill battle to overcome that presumption. On the facts of this case, and PFP's broader conduct as a serial copyright enforcer, it cannot. It would not be an abuse of discretion to award him his "full costs," as the Copyright Act provides.

## FACTS & PROCEDURAL HISTORY

This suit began like hundreds of other Prepared Food Photos suits: a settlement demand for $30,000 payable within 21 days. DE 80-5. The basis? A single Facebook post with a 1990's era stock photograph of fresh pork chops. Believing that FoodTown had obtained tens of thousands of dollars of value in that onetime use, it sued, seeking $150,000, the maximum statutory award under

the Copyright Act. Compl., DE 1 at 7. According to PFP, all "professional stock photography" is "not intended for public use" such that anyone using such an image should be "on notice" that they must have a license. Id. at ¶ 18; ¶ 28 (alleging everyone "clearly understands that professional photography … cannot simply be copied from the internet"). PFP subsequently learned Sharif Jaber was the owner of FoodTown, and filed an amended complaint against him individually on a theory that he was personally liable for direct infringement. Am. Compl., DE 9. Upon learning that FoodTown is the trade name of Nofal, LLC, it then named that entity as a defendant while changing its claim against Jaber from direct to indirect infringement. Second Am. Compl., DE 19. What was its theory? That Jaber is the sole owner of Nofal, and therefore had "the right and ability to control the infringing acts of NOFAL LLC." Id. at ¶ 40. Prepared Food Photos further alleged Jaber was liable because he "obtained a direct financial benefit from NOFAL LLC's infringing activities," but without any factual support other than its further allegation that Jaber "receives profit distributions" from FoodTown. Id. at ¶ 42. Despite its pleading, it never pursued evidence of that "direct financial benefit." Instead, its entire case against Jaber hinged exclusively on his status as the owner of Nofal, and little more.

Rather than carefully pursue evidence probative of a direct causal nexus between the one Facebook post and money Jaber received, it spent considerable effort seeking to discredit Jaber. See generally Dep. Tr. of Amjad Hamed, DE 64-9 at 16-18, 30-45 (extensive questioning on hookahs).

After learning that the Facebook account was operated by Amjad Hamed, PFP deposed him. He testified that it was his "older brother" who "was the one in charge of" the Facebook page before him. Id. at 15:8. Indicative of Jaber's lack of knowledge, Hamed also testified that Jaber did not give him any instructions on how to "run[] the Facebook page." Id. at 23:14. Nor did Jaber

give his son "any instructions about how to find photographs for the Facebook page." Id. at 25:18. And no one else had access or control over the Facebook account other than Hamed and his brother. Id. at 26:3. Despite getting basic information about a sale that might be going on, Hamed took it upon himself to create the Facebook posts. Id. at 45:11.

Where Prepared Food Photos hung its hat was on a vague question about whether Jaber was "aware" that Hamed was "running the Facebook account for the store." Id. at 45:18. Notably absent from the question was any temporal component about *when* Jaber may have been aware of the Facebook account. Despite answering the generic question affirmatively, Hamed nevertheless said his father did not ask him to put any content on Facebook. Id. at 45:21. Nor did Hamed show his father any posts after they were made. Id. at 45:24 -46:2. And most critically, Hamed testified that the Facebook posts "wasn't making an impact while I was posting or advertising for people to see. It wasn't making an impact on our sales."

Despite his testimony, Prepared Food Photos continued to maintain its claim of vicarious liability against Jaber. It never sought discovery from either Nofal or Jaber to link the Facebook post to revenue earned. Instead, it improperly premised its entire case on the generic relationship that Jaber owned Nofal, LLC, and consequently that he had control over the store's operations. But its prima facie case of vicarious liability required it to also show that Jaber had a "direct financial interest in the singular Facebook post itself. See VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 746 (9th Cir. 2019) (to prevail on a vicarious liability claim, a plaintiff must prove that the defendant "has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity"); EMI Christian Music Grp., Inc. v. MP3Tunes, LLC, 844 F.3d 79, 99 (2d Cir. 2016) ("Vicarious liability for copyright infringement may arise only when the defendant had the 'right and ability to supervise [that] ); CoStar Group, Inc. v. LoopNet, Inc., 373

F.3d 544, 549 (4th Cir. 2004) (explaining in dicta that "extensions of liability" for copyright infringement "such as contributory or vicarious liability" "require a showing of additional elements such as knowledge coupled with inducement or **supervision coupled with a financial interest in the illegal copying**") (emphasis supplied).[1]

Notably absent from Hamed's deposition questions is anything relating to whether Jaber received money based on the sales generated from the one infringing post. Nor was any such question asked directly of Jaber during his deposition. PFP's claim failed just like the plaintiff in Softel v. Dragon Medical & Scientific Communications, Inc., where the Second Circuit affirmed dismissal of the claims against the company's president. 118 F.3d 955, 971-72. "The only evidence that [the plaintiff] adduced … was that Hoge was the president of Dragon and a shareholder. The evidence is too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials." Id. So too here. Prepared Food Photos' claim against Jaber became frivolous when it failed to pursue evidence of a direct nexus between the singular Facebook post and money received by Jaber through Nofal. And there was direct evidence from Hamed that the Facebook posts—all of them—"wasn't making an impact." Dep. Tr. of Hamed, DE 64-9 at 26:21.

Despite the lack of evidence, PFP proceeded to trial against Jaber as well as Nofal. At trial, Mr. Hamed clarified his testimony about the Facebook account, that Jaber "didn't know that he – we had this Facebook page. Tr., DE 57 at 136:1. PFP sought to impeach Hamed, but he made clear what was missing from the deposition question: "At that time [of the deposition], he did know." Id. at 137:6. It "was after he got a lawsuit for a Facebook page." Id. at 137:8.

---

[1] The Supreme Court has not ever addressed whether the Copyright Act provides for contributory or vicarious liability apart from liability for direct infringement. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 434 (1984) ("[t]he Copyright Act does not expressly render anyone liable for infringement committed by another" and "the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn").

In questioning Jaber at trial, PFP's questions remained at a high level of abstraction, generally asking whether he owned FoodTown, and the profit from Nofal's sales went to him. Id. at 145:8-145:16. Not once did PFP attempt to probe whether Jaber received profits that resulted from the Facebook post in particular, let alone whether he profited generally from the sales of pork chops.

Ultimately, it obtained a $200 judgment against FoodTown for non-willful infringement, and Jaber was found not liable for vicarious infringement. Despite that verdict, Prepared Food Photos still sought to hold Jaber liable, seeking modification of the judgment by arguing generally that Jaber "receives a profit from Food Town Mark's sale of its products." Mot. to Alter J., DE 56 at 12-13.

Jaber incorporates by reference the facts and evidence set forth in Nofal, LLC's memorandum in opposition to Prepared Food Photos' motion for attorney's fees, DE 80, including that the Court take judicial notice of the market for stock photography, PFP's copyright enforcement business, Joel Albrizio's statements respecting PFP's litigation and enforcement activities, PFP's settlement demands in this action, as well as the various cases and declarations by PFP personnel in other suits and those by Paul Alan Levy respecting documents and information produced by PFP in those cases.

## ARGUMENT

### I. THE COPYRIGHT ACT, 17 U.S.C. § 505 PROVIDES FOR ATTORNEY'S FEES TO THE JABER AS A PREVAILING PARTY

#### A. Standard for attorney's fees under the Copyright Act to a prevailing defendant

A legal basis for an award must exist, such as by statute or contract that would vary the American rule that each party bear its own attorney's fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Here, Prepared Food Photos pursued claims under

the Copyright Act, which allows for "the recovery of full costs" as well as "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

*1. Entitlement to fees under the Copyright Act*

The threshold determination is whether a defendant is considered "prevailing" in "the first part of the fee-shifting inquiry." CRST Van Expedited, Inc. v. EEOC, 578 U.S. 419 (2016).

At the second step, a number of non-exclusive factors "inform a court's fee-shifting decisions" under 17 U.S.C. § 505, including 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016) (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)). Each of those factors is "relevant but none determinative." Assessment Techs. of WI, LLC v. Wiredata, Inc., 361 F.3d 434, 436 (7th Cir. 2004). In the Seventh Circuit, "[t]he two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." Id.

As concerns "prevailing defendants in copyright cases [they] are presumptively entitled (and strongly so) to recover attorney fees" because there is an "asymmetric recover[y]" between plaintiffs and defendants. Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630, 632 (7th Cir. 2023); see also UIRC-GSA Holdings, LLC v. William Blair & Co., 90 F.4th 908, 918 (7th Cir. 2024) (quoting Live Face). In contrast to a plaintiff that stands to gain compensation for alleged infringement (in addition to its attorney fees), "[t]he best [a defendant] can hope for is to break even—to recover his attorney's fees" as sunk costs of a lawsuit that it did not choose to initiate. Id.

*2. Standard of review in an appellate court*

A district court's decision on an application for attorney's fees is reviewed for abuse of discretion, DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 625 (7th Cir. 2013), which receives "significan[t] deference" and "wide latitude." Siddiqui v. Nat'l Ass'n of Broad. Emp. & Technicians-Commc'ns Workers of Am., 132 F.4th 530, 533 (7th Cir. 2025) (quoting Pickett v. Sheridan Health Care Center, 664 F.3d 632, 639 (7th Cir. 2011)). That is "because (1) the district court possesses superior understanding of the litigation and there exists a desirability of avoiding frequent appellate review of what essentially are factual matters; (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding a second major litigation strictly over attorneys' fees is high." Id. (cleaned up). However, if a court denies "a prevailing copyright defendant his attorney's fees, a district court's discretion is very narrow." Live Face, 77 F.4th at 632.

## B. Jaber is a prevailing party

### 1. The Supreme Court has drawn a distinction between its prevailing plaintiff cases and prevailing defendant cases

As a threshold matter, the Supreme Court's recent decision in Lackey v. Stinnie, 145 S. Ct. 659 (2025) delineates what decisions guide a district court's analysis of whether a defendant has prevailed.[2] It clarified that a "different body of caselaw" exists which "addresses when a *defendant*

---

[2] After the Court had granted certiorari in Lackey and while it was pending on the merits, the undersigned was counsel of record in a separate petition for writ of certiorari that raised the question of whether a copyright infringement defendant was considered the prevailing party where the plaintiff had obtained a Rule 41(a)(2) dismissal *without* prejudice. See Abdelsayed v. Affordable Aerial Photography, Inc., no. 24-267, available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/24-267.html. In that petition, the defendants repeatedly warned the Court that Lackey had a significant potential to be misunderstood, as the Court's Buckhannon decision has been, and urged the Court to provide litigants with "[m]ore precise guidance" to reduce "the drift away from historic, commonsense understanding of what it means for a defendant to prevail." Pet. at 2-3 (citing CRST). Petitioners also cautioned that "a decision in Lackey could easily be misread and misapplied by courts if not thoughtfully counterbalanced by an explicitly defendant-framed

is a 'prevailing party' for the purposes of [] fee-shifting statutes." Id. at 669, n.* (emphasis in original). That footnote instructs lower courts that the Supreme Court's prevailing *plaintiff* jurisprudence is separate from its prevailing *defendant* jurisprudence—particularly given the emphasis it placed on the distinction between the parties. Cf. id. In support, it cited one case: CRST. Id. CRST is the only decision in which the high Court addressed what it means for a defendant to prevail in the first part of the analysis. The Court signaled that CRST stood apart from the Court's prevailing plaintiff jurisprudence when it said it "has not articulated a precise test for when a defendant is a prevailing party" and implying that lower courts should not conflate the two. CRST, 578 U.S. at 422. The recent footnote in Lackey now makes that point explicitly: CRST is a "different body of caselaw." Lackey, 145 S.Ct. at 669.

As it had done in CRST, it re-emphasized in Lackey that "[p]laintiffs and defendants come to court with different objectives," id. (quoting CRST), as the Seventh Circuit acknowledges respecting fee awards, e.g., Live Face, 77 F.4th at 632 (plaintiffs and defendants have "asymmetric recoveries"). "A *plaintiff* prevails … when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Lefemine v. Wideman, 568 U.S. 1, 4 (2012) (emphasis added). In contrast, "[a] defendant seeks to prevent this alteration." CRST, 578 U.S. at 431.

Here, Jaber is a prevailing defendant under CRST.

### 2. *Jaber prevailed against plaintiff's claim against him*

Sharif Jaber succeeded in this lawsuit by "rebuff[ing] the plaintiff's claim" of vicarious liability on the merits when the jury returned a verdict in his favor, DE 50, and which the Court

---

decision on preclusive judgments." Pet. at 30. The Lackey footnote is a direct product of the arguments advanced in the Abdelsayed petition, although the Court denied certiorari.

upheld against Prepared Food Photos' post-judgment attack, DE 61. See CRST, 578 U.S. at 431. That was the only claim between Prepared Food Photos and Jaber. Second Am. Compl., DE 19.

PFP, in its opposition to Jaber's motion for extension of time *nunc pro tunc*, conceded that Jaber is a prevailing party, even though it prevailed against co-defendant Nofal, LLC: "the Court's November 7, 2024 Order, the Judgment, and the proceedings on Plaintiff's Motion for New Trial were all unequivocally clear that Jaber had prevailed on Plaintiff's claim for vicarious liability." Plf.'s Opp'n, DE 77 at 8 (docket citations omitted). There is no doubt Jaber is a prevailing party at step one of the fee-shifting inquiry.

An analysis of the factors at step two reveals that he should be awarded his attorney's fees.

### C. The Copyright Act's purposes are served by awarding Jaber his attorney's fees

The Seventh Circuit "strongly" favors awards to prevailing copyright defendants. E.g., Live Face, 77 F.4th at 632. It has repeatedly instructed district courts that there is a presumption of a fee award to a prevailing defendant due to the "asymmetric recoveries" between defendants and plaintiffs. Id.; see also CRST, 578 U.S. at 431 ("Plaintiffs and defendants come to court with different objectives."). Thus, where "the prevailing party obtained no relief at all, the case for awarding him attorneys' fees is compelling." Assessment Techs., 361 F.3d at 436-37. Consistent with the observation of the Seventh Circuit that some copyright plaintiffs engage in "[i]ntellectual [p]roperty [s]hakedown[s]," Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1096 (7th Cir. 2017), and employ "settlement-extraction scheme[s]," Design Basics, LLC v. Kerstiens Homes and Designs Inc., 1 F.4th 502, 503 (7th Cir. 2021), other district courts outside the Seventh Circuit have similarly concluded "[d]enying a fee" award to a successful copyright defendant "might encourage plaintiffs … to impose costs [on] defendants or to try to force them to pay settlement fees." Eclipse Sportswire v. The Sports Mall, LLC, no. 8:22-cv-1433, 2025 WL 341711

at *2 (M.D. Fla. Jan. 30, 2025) (quoting the magistrate judge's R&R).[3] Doing so "would be an improper use of the court system." Id.; see also Assessment Techs., 361 F.3d at 437 (it can "be a form of copyright misuse" to use an infringement suit "hoping to force a settlement" on "an opponent that may lack the resources" to fight back). Simultaneously, if a plaintiff is "forced to risk paying a defendant's attorney's fee, future plaintiffs will scrutinize their [case] before brining suit." Id.

Here, there is no doubt that Prepared Food Photos is a copyright troll. Its CEO's blog posts attacking defendants and their counsel for resisting its scheme makes that explicit, in addition to the facts of its litigiousness and lack of arms-length licensing. It has admitted that it "sent presuit demand letters to each of" "approximately 1,800 different alleged infringers of [PFP's] photographs." Plf.'s Opp'n to Def.'s Mot. to Compel, DE 24 at 5, Prepared Food Photos, Inc. v. Pool World, Inc., no. 2:23-cv-160 (E.D. Wash. Apr. 12, 2024). That aggressive enforcement seeking sums far in excess of market-supported damages plays a role in all four of the Fogerty factors. The additional factors the Seventh Circuit relies on also show that an award to Jaber of the fees he incurred in his defense is appropriate.

### 1. Frivolousness

Prepared Food Photos' initial claim against Sharif Jaber for direct infringement, Am. Compl., DE 9, was frivolous because Jaber did not operate a sole proprietorship under a d/b/a, nor was he the individual that copied the pork chop photograph. PFP quickly realized that truth, and commendably eliminated its theory of direct infringement against Jaber, instead naming Nofal,

---

[3] In that action, plaintiff's counsel was accused of malpractice by its (now former) client after the plaintiff was found liable for the defendant's attorney's fees. See Mot. to Withdraw, DE 85 at ¶ 14-15, available at https://storage.courtlistener.com/recap/gov.uscourts.flmd.402934/gov.uscourts.flmd.402934.85.0.pdf

LLC as the party liable for direct infringement. But PFP also kept Jaber as a party-defendant, under a new theory of vicarious liability. That was not reasonable because it predicated its claim on the sole fact that Jaber owned Nofal. Second Am. Compl., DE 19. It also understood that it needed to prove Jaber had "a direct financial benefit" from the infringing activity, not just generally from his ownership of Nofal. Id. at ¶ 42.

During discovery, it obtained evidence that *refuted* its vicarious theory, including the deposition testimony of Amjad Hamed. Irrespective of whether Jaber had the right and ability to supervise his son in the broad sense as Nofal's owner, or specifically concerning a Facebook account about which he was totally unaware, PFP's claim by that time, December 18, 2023, was undeniably frivolous. That was because the Facebook posts weren't "making an impact on [Nofal's] sales." Dep. Tr. of Hamed, DE 64-9 at 26:21.

It also had no evidence showing Nofal's sales of pork chops apart from its general revenue. Def.'s Responses to Plf.'s Request for Production, DE 77-2 at 41 (question 10 to Jaber); at 59 (question 10 to Nofal). Without citing any authority, it claimed in its post-trial motion it should have prevailed by showing "that Jaber profited generally." Id. at 13. The Second Circuit concluded otherwise on essentially the same evidence. Softel, 118 F.3d at 971 ("that Hodge was the president of [the co-defendant company] and a shareholder" was "too attenuated to establish a sufficiently 'direct' financial interest"). Even the "purpose" of vicarious liability is not satisfied here, where Nofal is not an "undercapitalized 'dummy' operation[]." See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1150 (7th Cir. 1992) (discussing vicarious liability in the context of copyright and trademark).

Despite the lack of evidence and testimony directly refuting its vicarious liability claim, it pressed that claim against Jaber through a jury trial to an unsurprising verdict. It never questioned

any witnesses to make any connection between the Facebook post and money received by Jaber flowing from it. It adamantly argued that Jaber was liable based on the evidence of only the first prong of vicarious liability while wholly ignoring that there was no evidence of the "direct financial benefit" of the singular Facebook post flowing to Jaber personally. Plf.'s Mot. to Alter J., DE 56 at 12-13 (arguing that because "Food Town sold pork chops every week" and Jaber generally "receives a profit from Food Town Mart" "[t]here is no question that [Jaber] had a direct financial interest in the infringement"). But "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a **causal relationship** between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." Ellison v. Robertson, 357 F.3d 1072, 1079 (9th Cir. 2004) (emphasis supplied). Here, the infringement did not cause a financial benefit to accrue because, as Hamed testified at his deposition, and which subsequently was heard by the jury at trial, is that the Facebook posts had no impact on sales. Dep. Tr. of Hamed, DE 64-9 at 26:21; Trial Tr. DE 57 at 212:4-213:9.

Awarding fees can "serve as a deterrent against maintaining litigation after a party's position has become untenable." Design Basics, LLC v. Kerstiens Homes and Designs, Inc., no. 1:16-cv-726, 2021 WL 4749916, at *6 (S.D. Ind. Sept. 30, 2019), aff'd, Design Basics, 1 F.4th 502. And the losing party's "conduct need not be 'sanctionable' for the winner to be entitled to fees under § 505." Mostly Memories, Inc. v. For Your Ease Only, Inc., 526 F.3d 1093, 1099 (7th Cir. 2008) (citing Riviera Distribs., Inc. v. Jones, 517 F.3d 926, 928 (7th Cir. 2008)). Here, PFP's claim might have originally been non-frivolous at the outset, but discovery revealed it should have been withdrawn. It didn't, and doubled down on Jaber having personal liability through trial and afterwards. The first Fogerty factor (frivolousness) favors fees for Jaber.

2. *Motivation*

As was more fully articulated in Nofal's opposition to plaintiff's motion for fees and costs, Prepared Food Photos' motivation in this case (and others) was purely financial, seeking wildly disproportionate settlements in comparison to the damage it suffered, as reflected by the undeniable market value for dated stock photography. Despite that market, PFP asserts that it licenses its whole library on a $999 per month fee. Its targets for infringement claims generally are one-off (single photograph) cases, as here, where the accused would never pay the fee demanded by PFP for its dated stock photographs when next best non-infringing alternatives abound for nominal sums of less than $50.

It also spent considerable time on irrelevant matters attempting to attack the credibility of Jaber, question witnesses about other Facebook posts and photos, and improperly tried to introduce subsequent remedial measures as evidence of misconduct. Both PFP's written discovery, deposition question, as well as is trial tactics show how it lost sight of the elements of its claims, taking Jaber, the Court, and the jury on sidetracks not necessary to adjudicate whether a photo was improperly used on social media and the resulting harm that caused it.

PFP's representations to this Court are also worthy of close scrutiny. Ms. Rebecca Jones declared that Prepared Food Photos' 'primary business is the creation of new photo/video content and licensing such content." Decl. of Rebecca Jones, DE 36-1 at ¶ 19. Yet PFP has never applied for any copyright registrations, and under its former name it ceased applying for certificates of registration in 2017—the same timeframe when it embarked on its current litigation business model. Douglas Fleurant, PFP's Executive Vice President and Chief Financial Officer, has testified that PFP's "library is in place" such that the costs associated with its licensing are "minimal," Dep. Tr. of Fleurant, at 8:24-25:2 Prepared Food Photos, Inc. v. WeNeedAVacation.com, LLC, (D.

Mass. Feb. 21, 2024),[4] thus suggesting that PFP has not created new content for its library, which is consistent with the lack of any registrations since 2017.

More transparently, Mr. Fleurant has testified that "the rest of [PFP's] employees … primarily run the IP enforcement section." Id. at 8:24-25:2. PFP acknowledges that its enforcement results in "a financial benefit," id. at 9:3-9:6, while he also admitted it has never been "too expensive to pursue infringers," id. at 9:10-9:12. Enforcement, he further admitted, "is a large" contributing factor that sustains its business. Id. at 11:13-11:18.

Prepared Food Photos' motivations in general, and in this case in particular, are not commensurate with the purposes of the Copyright Act, where it doesn't appear to engage in any new content creation, and refuses licenses to one-off photos. Dep. Tr. of Jones, Jan. 4, 2024, at 58:20-61:18, Prepared Food Photos, Inc. v. WeNeedAVacation, no. 1:23-cv-11085 (D. Mass.) ("We don't entertain" a party's request for a license to one photo).[5] Its conduct constitutes misuse. Assessment Techs., 361 F.3d at 437. This factor too favors a fee award to Jaber.

### 3. Objective unreasonableness

On the third factor, Prepared Food Photos' vicarious claim against Jaber was objectively unreasonable, even if it were initially reasonable. Design Basics, 2021 WL 4749916 at *6 (awarding the defendant's fees because even more than "a cursory investigation into the facts is warranted before subjecting an opponent to the time and expense of a costly copyright infringement lawsuit"). This Court, having "ruled on the merits of a copyright case can easily

---

[4] The relevant portion of which is available at
https://storage.courtlistener.com/recap/gov.uscourts.waed.103244/gov.uscourts.waed.103244.55.15.pdf
[5] Available at
https://storage.courtlistener.com/recap/gov.uscourts.lawd.204715/gov.uscourts.lawd.204715.15.2_1.pdf, DE 15-2 at 33.

assess whether [Prepared Food Photos] advanced an unreasonable claim." <u>Kirtsaeng</u>, 579 U.S. at 207. While a claim for copyright infringement of an outdated stock photograph is a legitimate theory of recovery (putting aside the value of such a case), pursuing such a claim against an individual predicated solely on that person's ownership of the business in which an employee made a mistake unbeknownst to that defendant is not, and objectively so. PFP's investigation into Jaber's potential personal liability was superficial, never having looked closely at whether the Facebook page caused Jaber to personally obtain a benefit. It turned a blind eye to Amjad Hamed's testimony that the Facebook posts just didn't do anything for Food Town. That was objectively unreasonable.

### 4. Compensation and deterrence

Under the fourth <u>Fogerty</u> factor, the Copyright Act is furthered by an award of fees to defendant Jaber to deter plaintiffs, like Prepared Food Photos, from pursuing individuals on dubious theories seeking the maximum possible damages without factual support, and engaging in unreasonable litigation tactics. "If [a] district court purports to deter others from behaving [as the losing party] did, then it must explain what [that party] did that led to its award of attorney's fees." <u>Susan Wakeen Doll Co. v. Ashton Drake Galleries</u>, 272 F.3d 441, 457 (7th Cir. 2001).

Here, the Court should explain that PFP (and others like it) ought to be deterred from attempting to pressure a business owner to settle on behalf of his company by making unrealistic settlement demands unapportioned between proprietor and entity. Stated differently, it should be deterred from continuing its "Intellectual Property Shakedown." <u>Design Basics, LLC v. Lexington Homes, Inc.</u>, 858 F.3d 1093 (7th Cir. 2017) (describing the "unsavory" practice of copyright holders "trawling the Internet for intellectual property" violations "in the hope of arranging prompt settlements with defendants who" all too often prefer the painful and significant cost of an unfair settlement "rather than be tied up in expensive litigation"). It is the very "costs and risks of

litigation" that PFP has used to prop up its racket, under the guise of an illegitimate licensing scheme that the market simply does not bear. It well knows what it is doing, and it does so deliberately, as the multiple online blog rants of Mr. Albrizio make plain, and deposition testimony of Douglas Fleurant and Rebecca Jones reinforces.

Also, continuing to pursue a legal theory without factual support should not be encouraged, but rather *dis*couraged, so that only reasonable claims and factual disputes are tried. Plaintiffs should be deterred from viewing copyright litigation as a risk-free endeavor (which apparently PFP does, as Mr. Fleurant testified), because ensuring that defendants are awarded their fees "injects risk into the [troll's] business model." Live Face, 77 F.3d at 634 (quoting Klinger v. Conan Doyle Est., Ltd., 761 F.3d 789, 792 (7th Cir. 2014)). An award to the defendants would signal to plaintiffs that if they bring an unreasonable claim, are unreasonable in their litigation tactics, are motivated not for redress of harm but rather financial gain, and are ultimately unsuccessful against a chosen target, then they will bear a risk of paying that defendant's attorney's fees. That outcome strikes the proper balance while also ensuring the risk analysis is suitably timed for a plaintiff: prior to bringing a defendant into court. "[F]ees are proper for the defendant who rebels against" an unreasonable copyright claim, because they are, in effect, "a private attorney general, combating a disreputable business practice—a form of extortion—and" the defendant seeks fees "not to obtain a reward but merely to avoid a loss." Live Face, 77 F.4th at 634. The proper allocation of a defendant's efforts is upon the unsuccessful plaintiff to pay the defendant's attorney's fees when they incautiously or carelessly invoke the judicial machinery for financial *gain* as opposed to redress for actual *harm*.

Prepared Food Photos also does not apparently pay, on an hourly basis, for any legal fees in its infringement suits, having engaged its counsel on a 60-40 split contingency fee basis. See

Decl. of Fleurant. But Jaber has not been so lucky. His successful and complete defense in this action came at considerable cost to him, which PFP should instead bear. The Copyright Act's purpose "of enriching the general public through access to creative works" is fulfilled by awarding a defendant, like Jaber, his fees because doing so "promote[s] the Copyright Act's purposes, by enhancing the probably that … defendants[] will enjoy the substantive rights the statute provides." Kirtsaeng, 579 U.S. at 205. Disallowing fees to prevailing defendants discourages them from "stand[ing] on their rights" in resistance to improper infringement claims. Id. Allowing risk-free litigation for a plaintiff like Prepared Food Photos disserves the Copyright Act's purposes.

5. *Degree of success / Strength of Jaber's case*

Jaber's success against Prepared Food Photos was total and enduring. The strength of his defense respecting Count II on PFP's theory of tagging him personally with liability for the infringement of an employee of his company is reflected in PFP's failure to adequately understand the elements of proof, and its corresponding failure to adduce sufficient evidence prior to and during trial. The evidence was actually against PFP's claim, and so entering trial Jaber's case was very strong.

6. *Amount of Damages*

"When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." Assessment Techs., 361 F.3d at 437. Here, Jaber, as the defendant, received no award. His relief was being found not liable on Prepared Food Photos' claim of vicarious liability. Consequently, this factor weighs "very strong[ly]" for an award to him. Even accounting for PFP's $200 judgment against co-defendant Nofal, LLC, it still favors an award to him when the jury found the infringement not willful. Verdict, DE 50 at 3.

## 7. *Settlement offers*

Besides the <u>Fogerty</u> factors, in determining an award of reasonable attorney's fees, "settlement offers should be considered as a factor." <u>Moriarty v. Svec</u>, 233 F.3d 955, 967 (7th Cir. 2000). Jaber made no settlement offer to PFP, and did not accept any of PFP's various unapportioned demands for tens of thousands of dollars in "damages" made jointly to both him and Nofal, LLC. His negotiating position was effectively offering PFP $0—an amount equal to the complete defense judgment he obtained. His refusal to settle, therefore, was a "substantial" settlement position that the "district court should evaluate in making an attorney's fee award." <u>Id.</u>[6]

Furthermore, that Jaber did not make any settlement offer reinforces the validity of his position when he prevailed completely. "[A]ny litigant is entitled to insist that its case be adjudicated" and that is not a reason to "penalize" a defendant, like Jaber, from "abandoning an attempt at mediation." <u>Riviera Distribs., Inc. v. Jones</u>, 517 F.3d 926, 929 (7th Cir. 2008).[7]

In contrast, PFP's settlement demands were aggregate sums, not apportioned between Jaber and Nofal, and which did not distinguish between damages and attorney's fees. DE 80-7 (demanding $90,000 just prior to trial, *after* when PFP's claim against Jaber became frivolous). That Prepared Food Photos routinely seeks round figures without any basis for them reinforces the improper motivations it has in these suits, seeking to capitalize on a defendant's potential fees liability, not on the harm it suffered.

## 8. *Balancing the factors*

In the end, the Fogerty factors and the additional factors identified by the Seventh Circuit weigh in favor of awarding Sharif Jaber his attorney's fees. Prepared Food Photos cannot surmount

---

[6] So too with respect to the disparity between PFP's recovery of $200 against co-defendant Nofal, which it articulated in its opposition to PFP's motion for fees.

[7] The same rationale applies to Nofal, LLC's opposition to plaintiff's motion for fees.

the "steep, uphill battle to rebut our very strong presumption in favor of awarding [Jaber his] fees." Live Face, 77 F.4th at 633. The Court would not abuse its discretion to find entitlement, nor would it abuse its discretion to award fees approaching the same amount requested by Prepared Food Photos.

## II.     JABER'S FEES ARE REASONABLE

### A.  The lodestar calculation

Once a party is entitled to attorney's fees, a district court uses the lodestar method to calculate the fee award. "When a prevailing party is entitled to 'a reasonable attorney's fee … the district court must make that assessment, at least initially, based on a calculation of the 'lodestar'— the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else." See Johnson v. GDF, Inc., 668 F.3d 927, 929 (7th Cir. 2012) (citing 42 U.S.C. § 1988 as an example of when a party may be entitled to a fee award, and applying that principle under 29 U.S.C. § 216(b)); see also Pickett 664 F.3d at 642 (a "court is to consult the [] market when determining a reasonable hourly rate for contingent fee cases and non-contingent fee cases" when calculating the lodestar) (citing City of Burlington v. Dague, 505 U.S. 557, 564 (1992)); but see Assessment Techs., 361 F.3d at 438-39 (following the Third Circuit and concluding the "best evidence of the value of the lawyer's services is what the client agreed to pay him" and "the negotiated fees should be the ceiling"). The lodestar fee amount is presumed reasonable, but a court may adjust the amount "to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." Cooper v. Retrieval-Masters Creditors Bureau, Inc., 42 F.4th 675, 682 (7th Cir. 2022) (quotation marks and citation omitted).

Further, Assessment Technologies did not hold that a district court is strictly limited to the

fees contracted between lawyer and client, only that in the usual circumstance that those fees "should be" the limit, and that the negotiated rate is the "best evidence of the **value** of the lawyer's services." <u>Assessment Techs.</u>, 361 F.3d at 439 (emphasis supplied). This is not a typical case, where Steinle's firm had a longstanding relationship with Jaber and his family, and, but for that fact, would have otherwise charged the prevailing market rates. Decl. of Steinle, ¶ 9. Where the negotiated fees charged were below the market rate, a district court does not abuse its discretion in using a prevailing market rate. <u>See</u> <u>Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.</u>, 253 F.3d 1332, 1337 (11th Cir. 2001). As the Tenth Circuit has observed, the purpose behind a fee-shifting provision may be "thwarted if a party could escape" the consequences intended by the law. <u>Centennial Archaeology, Inc. v. AECOM, Inc.</u>, 688 F.3d 673, 680-82 (10th Cir. 2012) (characterizing <u>Assessment Techs.</u> as an "unusual case" and instructing "courts should look to their statutory purpose rather than focusing on" what fees a party actually "incurred"). Section 505 of the Copyright Act considers "deterrence" in a fee award, <u>Kirtsaeng</u>, 579 U.S. at 202, and that purpose would be undermined where, as here, Jaber's former defense counsel provided discounted rates to a loyal client, only for a serial copyright enforcer like Prepared Food Photos to escape from a fees judgment that would otherwise have a more significant deterrent effect. The prevailing market rate is appropriate in the lodestar calculation, not limited by what Jaber agreed to pay his attorneys. The Copyright Act expressly provides that a party, like Jaber, may recover his "full costs" which includes a reasonable attorney's fee. 17 U.S.C. § 505.

### B. Jaber's fees & taxable costs

Jaber engaged his original counsel on an hourly fee basis at a discounted rate of $250 per hour, based on his prior engagement of the Terschan, Steinle, Hodan & Ganzer, Ltd. firm, as well as Attorney Steinle's willingness to discount his fee from a normal hourly rate of $400. Decl. of

W. Timothy Steinle, Exhibit 1.

When a plaintiff's claims "involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, … the district court should focus on the significance of the overall relief obtained by the [prevailing party] in relation to the hours reasonably expended on the litigation.'" Divane v. Krull Elec. Co., 319 F.3d 307, 315 (7th Cir. 2003) (quoting Ustrak v. Fairman, 851 F.2d 983, 988 (7th Cir. 1988), in turn quoting Hensley v. Eckerhart, 461 U.S. 424, 437 & n.12 (1983)). Here, the defense of Nofal, LLC was essentially the same as the defense of Jaber individually, and therefore defense counsel's time defending Jaber's was inextricably intertwined with the time defending Nofal. Indeed, PFP likewise seeks all of its fees in prosecution of its case against Nofal, irrespective of its failed claim against Jaber.

The declaration of Steinle shows that the time he and one other partner and a single paralegal spent on this case was eminently reasonable, and less than the time claimed by plaintiff's counsel. The time spent by Jaber's new counsel in pursuing this motion is also reasonable.

*1. Reasonable hourly rates*

While on the high side for intellectual property counsel in the Midwest, and Milwaukee in particular, Prepared Food Photos' counsel, with less experience than Attorney Steinle, seeks a rate of "between $450 - $500 per hour." Decl. of DeSouza, DE 64-2 at ¶ 25. It thus necessarily concedes that defense counsel's rates are reasonable when its own rate for comparably less experienced attorneys exceeds defense counsel's normal rate. Decl. of Steinle, Exhibit 1 at ¶ 9. Steinle's and Ms. Herda's normal rates of $400 are within the range reflected in the 2023 American Intellectual Property Law Association (AIPLA) Report of the Economic Survey for "Central Other" equity

partners, $341 to $513 (representing the 25th and 75th quartiles), and less than the average of $441. Decl. of Steinle, ¶ 25. Therefore, the reasonable hourly rate for Jaber's prior counsel of $400 per hour and paralegal time at $100 per hour is reasonable.

2. *The timekeepers' requested hours, and each task undertaken by the timekeeper during those hours*

Attorneys Steinle and Herda billed their time in one-tenth hour (6-minute) increments, consistent with industry practice. So too with respect to Ms. Kranz. The total hours billed, for which a fee award is requested, are reflected in the invoices attached to the Steinle declaration. The specific work undertaken during those hours is also reflected in the invoices attached thereto.

In comparison to Prepared Food Photos' claim for attorney's fees, Jaber's is nearly the same. It is not surprising that Jaber's counsel expended roughly the same amount of time (128.7) as plaintiff's counsel (142.25), Plf.'s Mot., DE 64-0 at 22, as one further benchmark of the reasonableness of Jaber's lodestar calculation.

3. *The lodestar amount*

The following table summarizes the Jaber's attorneys' rates and hours:

| Timekeeper | Hourly Rate | Hours worked | Lodestar |
|------------|-------------|--------------|----------|
| W. Timothy Steinle | $400 | 119.6 | $47,840.00 |
| Amber Herda | $400 | 5.0 | $2,000.00 |
| Sue Kranz | $100 | 4.1 | $410.00 |

The total lodestar award requested by Jaber is therefore $50,250.00, as supported by the declaration of Steinle.

Not reflected in these hours is time that might be spent respecting any subsequent fees litigation, such as a reply memorandum, or hearing. The defendants would be entitled to further

fees respecting the fees litigation. <u>Ustrak v. Fairman</u>, 851 F.2d 983, 990 (7th Cir. 1988) (the prevailing party "is entitled to reimbursement of fees reasonably … incurred in proving those fees"); <u>accord</u> <u>Norelus v. Denny's Inc.</u>, 628 F.3d 1270, 1301 (11th Cir. 2010) (a party may "recover the cost of establishing their right to, and the amount of attorneys' fees—the right to fees-on-fees"); <u>Trimper v. City of Norfolk, Va.</u>, 58 F.3d 68, 77 (4th Cir. 1995) ("it is well settled that the time spent defending entitlement to attorney's fees is properly compensable").

   *4.  Taxable costs*

   Finally, Jaber incurred $416.25 in taxable costs in the form of deposition transcripts for both himself and Amjad Hamed. The invoices are attached to the Declaration of Steinle, and a separate bill of costs on the Court's form is submitted separately.

**CONCLUSION**

   The Copyright Act is furthered by awarding fees to a successful defendant who completely resists a plaintiff's efforts to obtain any relief, notwithstanding the plaintiff's marginal success against a co-defendant. Jaber succeeded, is a prevailing party, and the strong presumption of an award of his attorney's fees cannot be overcome by plaintiff. The amount of his fees is also reasonable.


   **WHEREFORE**, defendant Sharif Jaber respectfully request the Court:

   a)  grant this motion;

   b)  conclude he is a prevailing party for having fully resisted plaintiff's efforts to obtain any relief whatsoever from him;

   c)  conclude that awarding him his attorney's fees furthers the goals of the Copyright Act;

   d)  hold that he is entitled to a reasonable attorney's fee pursuant to § 505 of the Copyright

Act calculated according to the lodestar method and prevailing market rates;

e) find that the amount of their attorney's fees is reasonable;

f) enter an order awarding Jaber his attorney's fees in the amount of $50,250.00;

g) enter a fees judgment awarding Jaber the above fees, plus a supplemental amount to be determined respecting the time spent on the instant motion and post-judgment fees proceedings; and

h) for such further relief as the Court deems just and proper.

    __/s/ Griffin Klema_____
    Griffin C. Klema, Esq.
    Fla. Bar No. 100279
    Attorney for Defendants
    **KLEMA LAW, P.L.**
    420 W. Kennedy Boulevard
    Tampa, FL 33606
    Telephone: 202-713-5292
    E-mail: Griffin@KlemaLaw.com