IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Case No. 2:22-cv-00642-JPS

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

    Plaintiff,

v.

NOFAL LLC d/b/a FOOD TOWN MART and
SHARIF JABER,

    Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JABER'S MOTION
FOR ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT**

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") hereby files this memorandum in opposition to defendant Sharif Jaber's ("Jaber") Motion for Attorney's Fees and Costs Under the Copyright Act (the "Motion f") [D.E. 83].

## INTRODUCTION

The Motion asserts that Jaber is entitled to recover $50,250.00 in attorneys' fees/costs as the prevailing party on Plaintiff's claim for vicarious liability. While Jaber did prevail at trial, the Court should exercise its discretion to deny any recovery of fees by Jaber. Alternatively, for the reasons set forth herein, the Court should substantially reduce any fees awarded to Jaber as he attempts to recover fees far beyond those actually incurred by his counsel and fails to allocate fees between himself and co-defendant Nofal LLC (who lost on Plaintiff's copyright infringement claim).

The Motion goes to great lengths to criticize Plaintiff for bringing this lawsuit (and others) and assumes (without reference to a scintilla of evidence) that Plaintiff's motivations in doing so were somehow suspect/evil. They were not. As the owner of an image library spanning approximately 18,000 photographs, Plaintiff has been confronted with mass infringement by grocery stores such as that owned by Nofal LLC and an abundance of others.[1] Although Plaintiff generally attempts to resolve such matters without court intervention, it will file lawsuits when, as happened here, infringers refuse to acknowledge liability or remove the subject image(s) from display.

This case is somewhat unique in that it took approximately two (2) years – until Jaber testified *at trial* – for Defendants to acknowledge their control of the subject Facebook page and/or that the dozens if not hundreds of photos depicted thereon were for their "Food Town Mart" store. For years, Defendants denied their display of the photograph (in their Answer, sworn interrogatory responses, responses to requests for admissions, and in their sworn deposition testimony). They even denied that photographs on the subject Facebook page depicting their store, its signs, its products, etc. absolutely did not depict the store. Jaber's testimony was, in a word, absurd. Even when confronted with a news interview where Jaber was clearly standing in front of the same sign depicted in one of the Facebook photographs, Jaber still denied that the Facebook photo was from his store. This ongoing refusal to acknowledge the Facebook page (even in the face of 30(b)(6) obligations to adequately prepare a witness) stymied Plaintiff from obtaining any evidence of profits associated with the Facebook post. Rather, Plaintiff was left to prepare for trial on the belief that Defendants were sticking to their nonsensical position (contrary to Jaber's own son's

---

[1] See Exhibit "A," a true and correct copy of the July 30, 2025 Declaration of Rebecca Jones.

testimony) that the Facebook page was not under their control and did not depict their store. Defendants then ambushed Plaintiff at trial, acknowledging for the first time that the Facebook page was controlled by Nofal LLC and that all the photographs thereon (including the subject infringement) were posted by Nofal LLC and depicted the store.

Having refused to amend any of his discovery responses and/or earlier denials (in his pleading and discovery), Jaber now boldly asserts that Plaintiff's vicarious liability claim was frivolous because Plaintiff did not adduce evidence of specific profits made by Jaber. But it was Jaber himself – through his perjurious testimony and denials – that stymied Plaintiff's efforts to obtain such discovery. Plaintiff was limited to the evidence available to it – evidence which Plaintiff believed conformed to the law of the Seventh Circuit that a direct financial interest is shown when the infringement acts as a draw to customers (which Amjad Hamed acknowledged in his deposition).

The Court should not reward a defendant who, through his own conduct, caused this lawsuit to be drawn out rather than resolved early on. Had Defendants simply acknowledged Nofal LLC's unauthorized display of the photograph and liability for infringement, this matter could have been resolved pre-suit and/or extraordinarily early in this lawsuit. Rather, they either lied throughout the lawsuit or failed to perform a modicum of diligence in asking either of Jaber's sons (the assistant managers of the store) whether the Facebook page was controlled by Nofal LLC.

## ARGUMENT

### I. Legal Standard

Under § 505, a court has discretion to award costs and attorneys' fees to the prevailing party in a copyright case. 17 U.S.C. § 505. "Four nonexclusive factors guide a district court's

3
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Case 2:22-cv-00642-JPS    Filed 07/30/25    Page 3 of 18    Document 87

decision whether to award a prevailing party its fees: (1) the frivolousness of the suit; (2) the losing party's motivation for bringing or defending against a suit; (3) the objective reasonableness of the claims advanced by the losing party; and (4) the need to advance considerations of compensation and deterrence." Live Face on Web, LLC v. Cremation Soc'y of Illinois, Inc., 77 F.4th 630, 631 (7th Cir. 2023) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). The Seventh Circuit has explained that this list of factors is not exclusive, nor is any one factor determinative. See Timothy B. O'Brien LLC v. Knott, 962 F.3d 348, 350-51 (7th Cir. 2020). Rather what matters is that the court be "sensitive to the facts before it," and the court may "consider any factor that advances the Copyright Act's purposes," as long as it applies those factors equally to plaintiffs and defendants alike. See Live Face, 77 F.4th at 631."

II. The Fogerty Factors Do Not Support an Award of Fees

    *A.    Frivolousness or Objective Unreasonableness*

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." Viva Video, Inc. v. Cabrera, 9 F. App'x. 77, 80 (2d Cir. 2001) (per curiam). "[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001). There is a difference between a suit that is "without merit" and one that is "patently frivolous." See Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 382 n.23 (5th Cir. 2004), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010). In Creations Unlimited, Inc. v. McCain, 112 F.3d 814 (5th Cir. 1997), for example, the Fifth Circuit upheld the district court's refusal to award attorneys' fees to the defendant despite

finding on summary judgment that the works in question "differed… in too many respects for a layman to conclude that the works were substantially similar." Id. at 816. The district court had concluded that the legal claim, "though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal undergirding." Creations Unlimited, Inc. v. McCain, 889 F. Supp. 952, 954 (S.D. Miss. 1995).

Here, Plaintiff's claim for vicarious liability was neither frivolous nor objectively unreasonable.[2] On this point, the Motion argues that Plaintiff had no evidence to impose vicarious liability on Jaber. "To prevail on a claim for vicarious copyright infringement, a plaintiff must establish that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." GC2 Inc. v. Int'l Game Tech. PLC, 255 F. Supp. 3d 812, 824 (N.D. Ill. 2017). "For purposes of a vicarious copyright infringement claim, a financial benefit exists where there is evidence of a direct financial gain or that the availability of infringing material acts as a draw for customers." Bell v. Chi. Cubs Baseball Club, LLC, No. 19-cv-2386, 2020 U.S. Dist. LEXIS 17527, at *15-16 (N.D. Ill. Feb. 4, 2020).

The Motion principally focuses on the second element of a vicarious liability claim (a direct financial interest), arguing that Plaintiff did not adduce direct evidence of Jaber profiting from Nofal LLC's infringement of the photograph at issue. But courts in the Seventh Circuit have

---

[2] The Motion asserts that Plaintiff's initial claim against Jaber (in the First Amended Complaint) was frivolous because Jaber "did not operate a sole proprietorship under a d/b/a, nor was he the individual that copied the pork chop photograph." See Motion, at p. 12. The Motion ignores, however, that the original Complaint was filed against Villard Foodtown LLC whose attorney (David Bangert, Esq.) specifically contacted undersigned counsel and informed him that Jaber was the owner/operator of the "Food Town Mart" business at issue and forwarded a printout from the City of Milwaukee showing Jaber (individually) as the licensee for the business. Mr. Bangert represented that Jaber was the proper party defendant, which is why the First Amended Complaint (against Jaber) was filed. See, e.g., D.E. 18. The First Amended Complaint was then amended to add Nofal LLC as a defendant upon the appearance of Mr. Steinle who further represented that it was Nofal LLC (not Jaber individually) who owned the "Food Town Mart" business.

not required direct evidence of specific dollar amounts of profit flowing from an alleged infringement. Jaber testified at trial that Food Town Mart sold pork chops every week, including the week(s) that the Work was displayed on the Facebook Page. He likewise testified that he receives a profit from Food Town Mart's sale of its products, including pork chops. From this testimony, it was not unreasonable for Plaintiff to argue that Jaber had a direct financial interest in the infringement. Plaintiff did not need to prove a specific profit amount (as Plaintiff was not seeking disgorgement of profits) – only that Jaber profited generally. See, e.g. Major Bob Music v. Heiman, No. 09-cv-341-bbc, 2010 U.S. Dist. LEXIS 46125 (W.D. Wis. May 10, 2010) (finding owner of dance hall liable for vicarious infringement and stating "defendant encouraged infringement of plaintiffs' copyrighted songs by allowing karaoke at Gene'os, presumably to attract customers. Thus, it is appropriate to hold defendant vicariously liable because he is the owner and operator of Gene'os and derives financial benefit from it."); Broad. Music, Inc. v. Hartmarx Corp., No. 88 C 2856, 1988 U.S. Dist. LEXIS 13298 (N.D. Ill. Nov. 17, 1988) ("The subsidiaries undoubtedly play music in their stores in order to create a more attractive environment for customers. The more customers a store attracts, the greater its profit are likely to be. Hartmarx owns 100% of the stock of Jaymar-Ruby, and 92% of that of Country Miss. The more profitable are it subsidiaries (the store owners), the greater is the value of Hartmarx. Thus, we find as a matter of law that Hartmarx has an obvious and direct interest in the alleged exploitation of copyrighted materials.").

Notably, Amjad Hamed (Jaber's son) testified that the Facebook advertisement was designed to act as a draw for customers, while Jaber testified that every pork chop, chicken leg, speaker, etc. sold at the store ultimately benefits him as the sole owner of the store. Again, it was

not unreasonable for Plaintiff to argue that this evidence was sufficient to establish vicarious liability under the Copyright Act.  See, e.g. In re Aimster Copyright Litig., 252 F. Supp. 2d 634 (N.D. Ill. 2002) ("The financial benefit element is also satisfied where; as here, the existence of infringing activities act as a draw for potential customers."); Dish Network LLC v. Datacamp Ltd., No. 22-cv-00993, 2023 U.S. Dist. LEXIS 121363 (N.D. Ill. July 14, 2023) ("The financial benefit requirement is satisfied where there is evidence of a direct financial gain or that the 'availability of infringing material acts as a draw for customers.") (internal quotation marks omitted).

That Plaintiff did not ultimately succeed on its claim for vicarious liability or establish specific profits tied to the infringing Facebook post can likewise be traced to Defendants' position throughout the *entirety* of this lawsuit that the Facebook page in question, and all content thereon, was not their "Food Town Mart" store.  Plaintiff's efforts to prove its case were stymied by what can only be deemed perjury by Defendants in their deposition testimony (including a 30(b)(6) deposition that required Nofal LLC to educate itself on the issues) and written discovery responses.  It was not until trial – two years after this case was filed – that Jaber finally admitted Nofal LLC controlled the Facebook page and the content thereon.  Prior to such, Defendants denied the page was controlled by Nofal LLC, denied the photograph was used to promote the sale of pork chops by Nofal LLC, and scoffed at written discovery requests seeking the production of documents showing specific profits/sales generated from the infringing post.

In his deposition, Jaber testified that Nofal LLC does business as Food Town Mart, that he is the sole owner of Food Town Mart, and that the address for Food Town Mart is 3217 W. Villard

Avenue, Milwaukee, WI 53209.[3] Despite being the owner of Nofal LLC since 2017,[4] Jaber repeatedly testified in his deposition that Nofal LLC/Food Town Mart *does not* have a Facebook page, that the Facebook Page is *not* controlled by Nofal LLC, that the photographs thereon depicting the store were apparently some other location he was not familiar with, and that the assortment of products displayed thereon (such as hookahs and speakers) were *never* sold in the store.[5] Jaber testified that he is at the Food Town Mart store at least 5 days per week consistently since 2017 and knows what is happening at and inside the store.[6]

Following the deposition, Plaintiff sent a Subpoena to Produce Documents, Information, or Objects (the "Subpoena") to Meta Platforms, Inc. (Facebook) for production of documents identifying the subscriber information/owner of the Facebook Page. On November 13, 2023, Meta Platforms, Inc. responded to the Subpoena by producing thirteen (13) pages of documents that identify "Amjad Hamed" as the owner of the Facebook Page.

Plaintiff took Amjad Hamed's deposition on December 18, 2023. Hamed lives with his parents, one of which is Jaber.[7] Hamed had worked for Food Town Mart for the last 3 years.[8] He is employed as Food Town Mart's "floor manager," meaning that he is in charge of ordering, in charge of opening the store, closing the store, and making sure everything is in order.[9]

---

[3] See Deposition Transcript of Sharif Jaber (the "Jaber Tr."), a true and correct copy of which is attached hereto as Exhibit "B," at 7:22 – 8:21.

[4] Id. at 11:8 – 11:10.

[5] Id. at 14:19 – 14:21; 15:1 – 15:2; 19:20 – 19:25; 22:20 – 23:4; 25:24 – 26:19; 30:14 – 31:2; 31:18 – 31:22; 31:23 – 32:8; 32:21 – 32:3; 33:22 – 34:7; 34:19 – 34:25.

[6] Id. at 45:21 – 46:7.

[7] See Deposition Transcript of Amjad Hamed (the "Hamed Tr."), a true and correct copy of which is attached hereto as Exhibit "C," at 6:13 – 6:14.

[8] Id. at 7:22 – 8:11.

[9] Id. at 9:24 – 10:4.

Interestingly, Jaber was asked during his deposition to identify each of the employees of Food Town Mart[10] and whether he could think of any person who could be running the Facebook Page.[11] Although Jaber listed himself and others as the employees of Food Town Mart, he neglected to mention that his son, Hamed, was also an employee of the store.

Contrary to his father's testimony, Hamed testified that Food Town Mart *does* have a Facebook page and that he is the person in charge thereof, with his brother (Nofal) running the Facebook Page prior to Hamed taking over.[12] Hamed testified that he was the person who created the subject September 28, 2020 posting on the Facebook Page which utilized the Work to advertise the sale of pork chops.[13] Hamed likewise testified (again contrary to Jaber's testimony) that Food Town Mart does sell hookahs and that the photographs of such on the Facebook Page were hookahs being sold in the store.[14] Hamed likewise testified that (again contrary to Jaber's testimony) that Food Town Mart does sell speakers and that the photographs of such on the Facebook Page were speakers being sold in the store.[15] Indeed, Hamed confirmed that *all* of the postings on the Facebook Page depict or relate to items for sale at the Food Town Mart store or were otherwise promoting the store.[16] Perhaps most importantly, Hamed testified that Jaber was aware that Hamed was running Food Town Mart's Facebook Page:

> Q. Was your father aware that you were running the Facebook account for the store?

---

[10] Id. at 26:20 – 28:18.

[11] Id. at 33:4 – 33:7.

[12] Id. at 10:23 – 11:23; 15:1 – 15:16; 19:10 – 19:20.

[13] Id. at 21: 19 – 22:21.

[14] Id. at 31:19 – 32:8; 34:2 – 34:13; 36:23 – 38:1; 38:4 – 38:18.

[15] Id. at 41:16 – 42:4.

[16] Id. at 42:19 – 45:4.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

A. Yes, sir.[17]

As noted above, Defendants pushed their 'we don't control the Facebook page' position in their responses to Plaintiff's written discovery as well. All of their responses to Plaintiff's document requests, interrogatories, and requests for admissions denied the existence of any documents or information due to Defendants purportedly not controlling the Facebook page. Indeed, even though both Jaber and Amjad Hamed testified at trial that pork chops were sold each week by Food Town Mart, Defendants claimed no documents existed in response to a request for production seeking documents showing revenue/income from the sale of pork chops at the time the photograph was displayed on the Facebook page:

> 10. Documents sufficient to identify all revenue and/or income generated from NOFAL LLC's sale of pork chops for all times that the Work was published on its website.
>
> RESPONSE NO. 10: There are no documents in the custody and control of these defendants which satisfy Request No. 10.

At best, Defendants stonewalled Plaintiff throughout the course of this lawsuit by refusing to acknowledge control of the Facebook page until trial had commenced. That Defendants refused to participate in discovery and repeatedly perjured themselves in their testimony/discovery responses does not somehow make Plaintiff's vicarious liability claim untenable/frivolous. The jury decided this matter based on the evidence before it, yet Defendants were directly responsible for hiding material evidence (i.e., their sales numbers) from Plaintiff by maintaining the lie that they did not control the Facebook page.

---

[17] Id. at 45:18 – 45:20.

B. *Motivation*

Here, the Motion speculates that Plaintiff is not in the business of creating photographs but rather "purely financial" and/or "seeking wildly disproportionate settlements." As a threshold matter, there is zero evidence before the Court supporting Jaber's assertions. It is certainly true that Plaintiff has filed a large number of lawsuits with respect to protecting its library of > 18,000 photographs. But, as adeptly discussed in Malibu Media, LLC v. Doe, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at *6–8 (N.D. Ill. June 9, 2014) (internal quotation marks and citation omitted):

> ***It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement.*** Courts in this district and elsewhere frequently get, for example, lawsuits by trademark owners against multiple websites that sell counterfeited products bearing the trademark owners' marks. By way of example, a review of the index of this district's filings reflects that Coach, Inc. which produces handbags, accessories, footwear, clothing, etc. bearing the company's trademarks, has filed 57 lawsuits in this district alone within the past four years, many of them naming dozens and indeed hundreds of entities as defendants. And a search of this district's index for suits naming "The Partnerships and Unincorporated Associations Identified on Schedule A," a term commonly used by trademark holders to sue multiple websites selling counterfeit products, reveals over 75 such lawsuits in the past year alone by various trademark holders.
>
> As best as the Court can determine, not one of these has led to criticism of the intellectual property right holder for misusing its trademark, let alone to dismissal of a case for that reason. Presumably the reason is that although cases involving the doctrine of copyright misuse refer to suing on a copyright hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect. That element is missing from Doe's affirmative defense.

> The Court is hard-pressed to see why Malibu Media's large-volume litigation should be treated differently from that of Coach or other intellectual property rights holders simply because Malibu's intellectual property rights involve pornographic films.

That Plaintiff has pursued many claims for infringement is not somehow evidence of improper motivation. Indeed, with respect to Defendants in particular, it is difficult to imagine a better motive for pursuit of this lawsuit than Jaber's recalcitrance in refusing to discuss the matter pre-suit, refusing to remove the Work from the Facebook page notwithstanding multiple demands for such, and continued denials throughout this lawsuit that the Facebook page was controlled by Food Town Mart. Plaintiff has the exclusive right under the Copyright Act to display the Work, and Plaintiff was left with little choice but to pursue this lawsuit to effectuate Defendants' removal of such from the Facebook page and obtain some acknowledgment (at trial) that infringement occurred.

As discussed above, Plaintiff did not spend "considerable time on irrelevant matters" as asserted by the Motion. Plaintiff was *forced* to spend time/energy proving that the Facebook page was controlled by Defendants as they denied such in their Answer, denied such in their sworn responses to Plaintiff's interrogatories, denied such in their responses to Plaintiff's requests for admissions, and denied such in their sworn 30(b)(6) deposition. As noted in Plaintiff's Motion for Attorneys' Fees [D.E. 64], Defendants' attorney (Mr. Steinle) himself acknowledged the absurdity and perjurious nature of Defendants' deposition testimony, yet Defendants never amended any of their discovery responses or testimony until they showed up for trial and suddenly acknowledged control of the Facebook page. Even following Amjad Hamed's deposition testimony, Defendants never backed away from their denials. As such, Plaintiff had to spend a considerable amount of

time preparing for trial on the basis of proving a connection between Defendants and the Facebook page.

"To evaluate a plaintiff's motivation, courts consider the manner in which the plaintiff conducted the litigation." Harrington v. Dugar, No. 2:22-cv-08230-HDV-E, 2024 U.S. Dist. LEXIS 155470, at *8 (C.D. Cal. Aug. 27, 2024). Here, Jaber has not pointed to any litigation conduct by Plaintiff that would somehow infer an improper motive. Plaintiff timely amended its pleadings each and every time a new counsel appeared to identify the 'proper' defendant to sue, sought relevant discovery, and took depositions of only those persons who were reasonably required to prove Plaintiff's claims. Plaintiff did not file unnecessary motions or otherwise act in a way to unnecessarily increase Defendants' costs in defending this action. Had Defendants acknowledged their control of the Facebook page (at ***any*** time prior to trial), this case never would have proceeded to trial. See, e.g., Acosta v. Mega Media Holdings, Inc., No. 15-21837-Civ-COOKE/TORRES, 2017 U.S. Dist. LEXIS 30472, at *28–29 (S.D. Fla. Mar. 2, 2017) ("After considering the parties' arguments, the Court concludes that Plaintiff's suit was motivated, at least in part, by a sincere belief that Defendants committed copyright infringement and that Defendants were liable as a result of their conduct. While Defendants argue that Plaintiff's claims always lacked a legitimate basis, this was clearly not the case as evidenced at the summary judgment stage. And although Defendants focus heavily on Plaintiff's refusal to accept their settlement demand, there are no facts in the record to suggest that Plaintiff did not have a good faith reason for doing so.").

Awarding a party attorney's fees must advance the purposes of the Copyright Act, primarily to "encourage the production of original literary, artistic, and musical expression for the

good of the public." Fogerty, 510 U.S. at 524. This purpose is not promoted by awarding attorney's fees to a prevailing defendant "when the plaintiff has advanced a reasonable, yet unsuccessful claim." Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 628 (6th Cir. 2004) (citing Matthew Bender & Co., 240 F.3d at 122). Awarding Jaber fees here does not advance the purposes of the Copyright Act.

    C.    *Compensation and Deterrence*

Considerations of compensation and deterrence do not weigh in favor of a fee award here. None of the other Fogerty factors weighs in favor of awarding fees, and Plaintiff brought this lawsuit with the good faith belief that its copyright rights had been violated and were ongoing. See, e.g. Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 2017 U.S. Dist. LEXIS 124082, at *5 (S.D.N.Y. Aug. 4, 2017) ("[A]s already noted, Plaintiff's conduct in this litigation was not objectively unreasonable, frivolous, or driven by an improper motive, and thus does not warrant the deterrent effect of fees."). Here, neither Plaintiff nor those similarly situated should be 'deterred' from pursuing claims against infringers who thumb their noses against a copyright owner's rights (i.e., refuse to remove a copyrighted work from display despite repeated demands for such). Here, Jaber seeks to punish Plaintiff for filing copyright lawsuits, yet Jaber does ***nothing*** to analyze the facts of those cases, the legitimacy of Plaintiff's claims, or the reason(s) for the filing of any such claim (including this one). It is far easier for Jaber to take a simplistic approach of blaming Plaintiff (the victim of copyright theft) for filing lawsuits than for Jaber to acknowledge his own conduct in ignoring Plaintiff's pre-suit correspondence and either lying about the Facebook page or failing for 2 years to ask his sons (the managers of the store) about such.

### III. Unreasonableness of Jaber's Fees and Costs

Finally, *if* the Court chooses to award fees, there are several issues mandating a significant reduction in the fees sought and a distinct lack of evidence that Jaber incurred and/or paid for *any* of such fees.

#### A. *Reasonable Hourly Rates*

As a threshold matter, the Motion acknowledges that Jaber's original counsel (Mr. Jaber) agreed to represent Defendants in this matter at a discounted rate of $250 per hour, yet the Motion seeks to recover fees at a rate of $400 per hour. Here, the Motion acknowledges that the Seventh Circuit itself has held that "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him." See Assessment Techs. of WI, LLC v. Wire Data, Inc., 361 F.3d 434, 438 (7th Cir. 2004). But the Motion goes on to argue (without any case supporting such) that a district court is not limited to the fees contracted between lawyer and client and can instead award *more* than the lawyer billed on an hourly basis. Jaber seemingly seizes upon language in Assessment Techs. of WI, LLC that the contracted fees "should be" the ceiling, arguing that the Seventh Circuit did not use the word "must." Id. at 439 (7th Cir. 2004) ("[T]he negotiated fees should be the ceiling.). Jaber ignores, of course, that the Seventh Circuit re-visited the same issue in 2016, plainly holding (ironically in a case where the lawyer contracted to provide services at $250 per hour yet sought reimbursement at approximately $400 per hour as Jaber does here):

> In Assessment Techs. of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 438-39 (7th Cir. 2004), we held that in a copyright case "the best value of the lawyer's services is what the client agrees to pay him," and therefore agreed with the Third Circuit in Lieb v. Topstone Industries, 788 F.2d 151, 156 (3d Cir.1986), that the contract between a party and his lawyer *places a ceiling* on what a court can award the lawyer in such cases.

Bell v. Lantz, 825 F.3d 849, 854 (7th Cir. 2016) (emphasis added). That Mr. Steinle had a longstanding relationship with the Jaber family and agreed to a discounted rate does not somehow give the Court discretion to award a higher rate and therefore a windfall to Jaber. The Motion does not cite a *single* case from within the Seventh Circuit that would allow an award of fees higher than what was contracted for between a lawyer and his client. As a result, *at most* the Court can award $31,150.00 in fees to Jaber with respect to Mr. Steinle and Ms. Herda's 124.6 hours of time.

### B. *The Motion Does Not Apportion Fees Between Jaber and Nofal LLC*

The Motion argues that Jaber is entitled to recover the *entirety* of the amounts billed by Mr. Steinle's firm in defending this lawsuit on behalf of *both* Jaber *and* Nofal LLC. There are two (2) problems with the Motion's logic here. First, Jaber has not presented any evidence that he (rather than Nofal LLC) paid any of Mr. Steinle's fees or is obligated to do so. To the extent Nofal LLC paid any of the fees, Jaber is not entitled to reimbursement for such as those fees were paid by a non-prevailing party that is clearly not entitled to recover its fees. Second, and derived from the first point, is that the Motion does not identify any fees incurred that would not otherwise have been incurred in defending Nofal LLC against Plaintiff's claim for copyright infringement. Only Jaber prevailed against Plaintiff. Nofal LLC did not.

"Only prevailing plaintiffs are entitled to recover their fees. Thus, where an attorney represents multiple parties and not all prevail, the court should exercise discretion to reduce the fee to reflect a reasonable amount of time spent on the prevailing party's case." Dong Yuan v. Hair Lounge Inc., No. 18-CV-11905 (AT) (BCM), 2023 U.S. Dist. LEXIS 111963, at *8-9 (S.D.N.Y. June 28, 2023); see also Ottaway v. Rev Rec. Grp., Inc., No. 1:16cv162, 2020 U.S. Dist. LEXIS 266797, at *11 (N.D. Ind. Oct. 16, 2020) ("Where there are multiple defendants in a

litigation, it is within the discretion of the trial court to apportion an award of attorneys' fees amongst them."). Substantially all of Mr. Steinle's fees – whether for attending trial, attending depositions, and/or responding to written discovery requests – would have been incurred regardless of whether Jaber was a defendant in this lawsuit or not. Indeed, the only time conceivably incurred on behalf of Jaber alone would be time spent responding to Plaintiff's discovery requests which were served on each of Jaber and Nofal LLC on the same date. But Mr. Steinle's time records make no effort to separate out time spent in reviewing or responding to such discovery requests, describing such as review of "discovery requests" or response to "discovery requests" generally.

| Date | | Description | Rate | HOURS |
|---|---|---|---|---|
| 06/28/2023 | WTS | Review Plaintiff's First Discovery Requests. Draft correspondence to Mr. Jaber. | 250.00 | 0.80 |
| 08/16/2023 | WTS | Conference with Mr. Jaber regarding Request to Admit. Draft responses to Request to Admit. Draft correspondence to Attorney Cruz with responses. | 250.00 | 1.20 |
| 08/17/2023 | WTS | Conference with Mr. Jaber. Draft responses to Interrogatories and Request for Production of Documents. Review correspondence from plaintiff's counsel regarding deposition dates. | 250.00 | 2.10 |
| | | LEGAL SERVICES | | 4.10 |

Thus, if the Court does award fees, and assuming the Court agrees that Jaber is limited to the $250 per hour he contracted for, then he should be entitled to no more than 50% of the fees billed by Mr. Steinle's firm, i.e., no more than $15,575.00. But given that substantially all of the fees by Mr. Steinle's firm would have been incurred regardless of Jaber's involvement, and because Jaber has not produced any evidence of his payment of $1.00 in fees, Plaintiff's position is that fees should be apportioned (if at all) 90% to Nofal LLC and 10% to Jaber. This would result in, at most, an award of fees in the amount of $3,115.00 to Jaber. While Plaintiff does not believe any

fees should be awarded (as described above), the Court should (if awarding fees) reduce it accordingly by apportioning between Jaber and Nofal LLC.[18]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion; (b) alternatively, if granting the Motion, reducing the fees awarded in accordance with the arguments proffered herein; and (c) for such further relief as the Court deems proper.

Respectfully submitted,

Dated: July 30, 2025.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com


By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.
    Florida Bar No. 19291

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/ Daniel DeSouza
    Daniel DeSouza, Esq.

---

[18] Plaintiff does not otherwise object to the reasonableness of the amount of time spent by Mr. Steinle's firm or challenge individual billing entries as excessive.

18
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Case 2:22-cv-00642-JPS   Filed 07/30/25   Page 18 of 18   Document 87