PREPARED FOOD PHOTOS, INC.,

    Plaintiff,

v.

SHARIF JABER and
NOFAL, LLC,
d/b/a Food Town Mart,

    Defendants.

## DEFENDANT SHARIF JABER'S REPLY IN SUPPORT OF HIS MOTION FOR ATTORNEY'S FEES [DE 83]

Defendant Sharif Jaber, pursuant to Civil L. R. 7(c) responds to plaintiff Prepared Food Photos, Inc.'s ("PFP") opposition memorandum, [DE 87], and the supporting declaration of Rebecca Jones [DE 87-1].

**TABLE OF CONTENTS**

Page

**REPLY** ................................................................................................................... 2
1.   PFP still does not justify its unreasonable settlement positions here and elsewhere, and its opposition reveals a further motivation of personal animus ... 2
2.   PFP's arguments respecting the evidence of Jaber's fees is a non-starter ............ 5
3.   *Bell v. Lantz* does not limit the Court's discretion to award a prevailing market rate in the lodestar calculation .................................................................. 6
4.   The Court need not apportion fees between Jaber and Nofal, just as Prepared Food Photos seeks its full, unapportioned fees ....................................... 10
**CONCLUSION** ................................................................................................... 12

**REPLY**

Prepared Food Photos' opposition to defendant Jaber's motion for attorney's fees advances a number of illogical arguments, and is entirely silent with respect to its pattern of abusive copyright enforcement. Contrary to its assertion, it absolutely did have a choice in selecting what claims to pursue, against what defendants, and how. Those choices, however, were unreasonable. Jaber, like many other defendants are not "thumb[ing] their noses against the copyright owner's rights" Opp'n [DE 87 at 14], but rather doing what the Copyright Act encourages them to do: "stand on their rights" when faced with grossly excessive settlement demands like those sought by PFP and opposing claims without merit.

Jaber makes four points in reply to Prepared Food Photos' opposition: (1) PFP admits that it was motivated by personal animus in against Jaber and it cannot justify its various unreasonable settlement demands here and elsewhere; (2) Jaber has met his evidentiary burden and need not show he personally paid the invoices, while PFP has not rebutted the evidence of either time spent or a reasonable hourly rate; (3) PFP misreads Bell v. Lantz, and the Court has discretion to employ a market rate in the lodestar calculation; and (4) PFP's apportionment argument is illogical, but the Court should be consistent in disposing of PFP's fee motion, if it awards PFP any fees.

1. **PFP still does not justify its unreasonable settlement positions here and elsewhere, and its opposition reveals a further motivation of personal animus**

Entirely absent from Prepared Food Photos' opposition is any justification for its unreasonable settlement position throughout this case, as well as how it approaches resolving its claims in other cases. It is a pattern of conduct not isolated to this case because it has not been deterred by a significant award of fees to a prevailing defendant. It also says it was left with "little choice" to pursue Jaber personally as a consequence of what it viewed as Jaber's "misrepresentation" regarding the Facebook post. That perceived sleight does not justify suing

Jaber personally.

Not once does PFP lay out a reasoned position for why $90,000 was an appropriate measure of damages resulting from a singular social media post. Glaringly absent from PFP's opposition is the fact that the *amount* demanded by a plaintiff like PFP is what drives cases like this. E.g., Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630, 632-33 (7th Cir. 2023) (plaintiff had licensed its software for $328 but "sued the defendants for copyright infringement and sought at least $483,000 in damages [in what is] just one of Live Face's roughly 200 copyright suits"); Budget Cinema, Inc. v. Watertower Assoc., 81 F.3d 729, 733 (7th Cir. 1996) (finding the plaintiff's copyright infringement suit "objectively unreasonable" where it demanded remedies unavailable to it, including punitive damages and statutory remedies under 17 U.S.C. § 412); Harris Custom Builders, Inc. v. Hoffmeyer, 140 F.3d 728, 730-31 (7th Cir. 1998) ("the district judge … [may] determine whether [the prevailing party's] rejection of the [non-prevailing party's] offer was reasonable and whether that rejection should play into the analysis of the fee issue").

The declaration of Rebecca Jones continues the seemingly[1] false narrative that PFP is "in the business of licensing" old stock images and that they are "high-end." Decl. [DE 87-1 at ¶ 3]. While she mentions PFP's "pre-suit demand letter [that it sent] to the store," id. at ¶ 6, she entirely glosses over the *amount* PFP sought ($30,000). Its demand was not based on any objective market value of the lone image—which it knows based on its prior licensing of images one-off through iStock Photo—but rather bottomed on default judgments. [DE 80-5 at 3-5]. The letter also threatened that "courts generally require an infringer to pay a multiple (anywhere from 3x – 6x) of [a plaintiff's purported] license fee." Id. at 5. Similarly, Ms. Jones omits any discussion of why PFP demanded an arbitrary $90,000 just prior to trial, and that it actually "didn't want to demand

---

[1] See Mot. [DE at 83 at 15-16].

anything" because it "prefer[ed] the trial path at [that] point." [DE 80-7]. Nor does PFP explain now how that figure was determined, or why that amount was not (or could not be) apportioned between Jaber and Nofal.

Prepared Food Photos also sued Jaber and Nofal because it bristled at what it believed was a "misrepresentation by Mr. Jaber." [DE 87-1 at ¶ 7]. But personal animus is not a good faith basis to file a lawsuit. Ms. Jones's declaration *supports* rather than undermines the second <u>Fogerty</u> factor (motivation).

PFP argues that had Jaber simply "acknowledged their control of the Facebook page [then] this case never would have proceeded to trial." Opp'n [DE 87 at 13 ]. It strains credulity to think that merely admitting the Facebook page was Nofal's would have in any way led PFP to drop its case entirely, let alone its claim for vicarious infringement against Jaber, as its outsized settlement demands illustrate. Again, nowhere is there any disclosure about PFP's efforts to avoid litigation by finding possible common ground on an objective, market-based measure of its harm. Because there wasn't. That approach was unreasonable, even when it may have had a legitimate claim of infringement.

In contrast to Ms. Jones's statement that Prepared Food Photos "was left with little choice but to pursue this lawsuit or drop the matter altogether," [DE 87-1 at ¶ 9], she ignores that PFP had the means to potentially avoid litigation by being reasonable in its pre-suit settlement discussions. Yet it wasn't reasonable. Instead, it simply viewed Jaber and Nofal as a singular target, not caring which of them paid the demanded tens of thousands of dollars. It could have pursued only Nofal, but it chose to pursue Jaber additionally for reasons Ms. Jones does not explain.

To paint itself as a reasonable litigant, PFP continues to claim in the face of mounting evidence to the contrary that its entire business depends on licensing 18,000 photographs on a

monthly basis, ostensibly in order to protect some undisclosed number of "paying customers" from having the same images appear in advertisements by competing grocers in the same geographic market. But Ms. Jones's assertions about what PFP's supposed customers might believe is rank hearsay and entirely unsupported.[2]

Ms. Jones also asserts that PFP "is motivated by the need to protect its intellectual property" but again offers no explanation for why licensing a singular image after 2016 suddenly became inconsistent with that goal. Nor does she explain how settling a dispute over a social media post with a view towards market realities would in any way affect the scope of protection provided by its copyrights. It might rightly enforce them, but when it does so disconnected from an objective measure of harm, that crosses the line from reasonable to unreasonable. It is impossible to reconcile the fact that PFP previously licensed singular images through iStock Photo, but after 2016, claims it cannot do so. The truth is self-evident: it behaves as copyright trolls do.

Prepared Food Photos wrongly maintains that it can demand any arbitrary sum in a copyright infringement dispute without risk and force a successful defendant like Jaber to incur the whole of his expense in fully resisting an unreasonable claim.

2. **PFP's arguments respecting the evidence of Jaber's fees is a non-starter**

Next, Prepared Food Photos takes issue with the evidence supporting a fee award to Jaber.

It argues that Jaber should recover no fees at all because there is "a distinct lack of evidence that Jaber incurred and/or paid for *any* of such fees," Opp'n, [DE 87 at 15], even when, for its part, Prepared Food Photos did not pay any attorney fees itself.[3] Regardless, Attorney Steinle's invoices

---

[2] To Jaber's knowledge, PFP has never identified any customer in particular that has expressed such a concern. For the reasons articulated by Pool World, Jaber has reason to believe there are either no such customers, or they don't actually hold the asserted competitive concern as PFP claims.

[3] With the exception of local counsel, which PFP apparently forfeited in its own fees motion.

clearly identify Sharif Jaber as the recipient and list his personal address. Composite Ex. A to Decl. of Steinle, [DE 83-1 at 8-27]. The invoices do not identify Nofal, LLC, nor do they identify the business's address. It is bordering on frivolous in the face of that evidence for Prepared Food Photos to argue that Jaber not be awarded *any* fees without evidence that they were actually paid (or paid by him and him alone) because the legal framework for a prevailing party fee award does not depend on such evidence. See Section 3, *infra*. To the extent it argues separately that there is no evidence that Jaber *personally* paid those fees or even incurred the obligation to do so apart from Nofal is of no moment; the Copyright Act provides successful defendants like him with a fee award, just as a successful plaintiff need not show that it paid its attorneys anything for their contingency fee representation. The core of the analysis is whether the fee award is "faithful to the purposes of the Copyright Act," Fogerty, 510 U.S. at 534 n.19, not a penny-for-penny direct reimbursement of the successful party's actual fees paid.

3. **Bell v. Lantz does not limit the Court's discretion to award a prevailing market rate in the lodestar calculation**

Prepared Food Photos also argues that Assessment Technologies and Bell v. Lantz eliminate any court discretion respecting a reasonable hourly rate in the lodestar calculation, asserting that the actual rate charged is conclusive. Opp'n [DE 87 at 15]. It is wrong. This Court has discretion to determine what a reasonable hourly rate is, including discretion to employ a market rate. It is not inflexibly bound by the contracted rate between Jaber and Attorney Steinle because the Copyright Act is the polestar of the fees analysis, not the terms of engagement between lawyer and client.

Prepared Food Photos wrongly claims that Jaber did not cite any cases supporting his argument that the *market* rate should be used in the lodestar calculation. Id. He did, and even alerted the Court to some tension in Seventh Circuit decisions, citing both Pickett v. Sheridan

Health Care Center, 664 F.3d 632, 639 (7th Cir. 2011) and Assessment Technologies, while arguing Pickett, as the earlier decision controls over the permissive language ("should") in Assessment Technologies. Mot. [DE 83 at 21]. It is also disingenuous for PFP to argue *it* is entitled to a market rate of $450 in its own lodestar calculation, but not Jaber, fortuitously benefitting from his special preexisting relationship with Steinle. The Copyright Act, however, requires that plaintiffs and defendants be treated evenhandedly, Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 207 (2016), and using a market rate to determine Jaber's fees does just that—especially when plaintiffs like PFP are often represented on contingency while defendants routinely must "shop" for the most cost-effective out-of-pocket (cash) representation.

To the extent there were any tension between the Copyright Act's plain text under § 505 ("recovery of full costs" but an "award" of a reasonable attorney's fees) and Assessment Technologies, the statute controls. In no uncertain terms, Jaber argued in his fees motion the rationale employed by the Supreme Court concerning Section 505's purpose governs: "deterrence" *in addition to* "compensation." Fees Mot., [DE 83 at 21]; see also Design Basics, LLC v. Kerstiens Homes and Designs, Inc., no. 1:16-cv-726, 2021 WL 4749916, at *6 (S.D. Ind. Sept. 30, 2019) (fees can "serve as a deterrent against maintaining litigation"). Consistent with fulfilling the Copyright Act's deterrent goals, Hensley instructs not that "the" hourly rate (definite article) be used in the lodestar calculation but rather "*a* reasonable hourly rate" (indefinite article). Id. at 433 (emphasis supplied). In contrast to the indefinite article "a" is the Court's description of "*the* number of hours" (definite article) reasonably expended in the other half of the lodestar. Id. (emphasis supplied). Further showing the market rate prevails is the Court's holding that the prevailing party must provide evidence not only of the "hours worked" but also the "rates **claimed**." Id. (emphasis supplied). "Claiming" a rate is not equivalent to simply proving an

"agreed" rate. Cf. id. And the statute's contrasting choice of words—"recovery" of full costs, but an "award" of fees—further drives home the flexibility courts have in their equitable discretion.

The Seventh Circuit provides district courts with discretion on both halves of the lodestar calculation, not only with respect to the time spent. It has "defined a reasonable hourly rate as one that is 'derived from the market rate for the services rendered.'" Pickett v. Sheridan Heath Care Ctr., 664 F. 3d 632, 640 (7th Cir. 2010) (quoting Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003)). Consistent with that definition, the overwhelming authority is that a district court has discretion to determine what the reasonable (including market) rate is. Id. ("If a fee applicant does not satisfy its burden, the district court has the authority to make its own determination of a reasonable rate."); accord Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 554-57 (7th Cir. 1999) ("The determination of an attorney's 'reasonably hourly rate' is to be based on the 'market rate' for the services rendered."); Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407 (7th Cir. 1999) ("when calculating attorney's fees, a district court will determine a 'lodestar amount by multiplying the reasonable number of hours worked by the market rate'") (quoting Bankston v. Illinois, 60 F.3d 1249, 1255 (7th Cir. 1995)); Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014) ("A reasonable hourly rate is based on the local market rate for the attorney's services….. [t]he judge did not abuse her discretion by giving little weight to [the fee applicants' agreements] as evidence of market hourly rates for the attorney's services."); Moriarty v. Svec, 233 F.3d 955, 966 (7th Cir. 2000) ("discretion in determining what is a reasonable attorney's fee applies to its determination of what constitutes a market").[4] And so while an "attorney's actual billing rate for comparable

---

[4] There is no principled reason to provide a different definition of or limit to "reasonable attorney's fee" under § 505 of the Copyright Act from identical text existing in other fee-shifting statutes, such as Title VII actions ("a reasonable attorney's fee" 42 U.S.C. § 200e-5(k)) or civil rights actions ("a reasonable attorney's fee, 42 U.S.C. § 1988(b)).

work is 'presumptively appropriate' to use as the market rate," Denius, 330 F.3d at 930, this Court is not limited, as PFP urges, to use *only* the rate actually charged to Jaber to the exclusion of all other evidence or reasons why that rate might not be a reasonable one under the circumstances. There are very good reasons why the special, below market rate here should not limit the lodestar award to Jaber, including that the rate was not the one normally charged, is far below the market rates reflected in the AIPLA economic survey, and because the Copyright Act's purposes would be disserved by allowing Prepared Food Photos to evade the Act's intended deterrent consequences of failed litigation. Unlike PFP, Jaber cannot use a damages multiplier as a "disincentive," like PFP threatens, [DE 80-5 at 5], but must urge the Court to award *full* fees under Section 505 for a similar purpose.

Prepared Food Photos also does not present any counter-evidence that the market rate for federal intellectual property litigation is less than Jaber's proposed $400 per hour. It has therefore not rebutted Jaber's evidence of Attorney Steinle's usual rate, nor the AIPLA evidence supporting rates even higher than that. Its opposition is entirely a legal argument, relying on a flawed reading of Bell v. Lantz and urging that case limits the Court's discretion. It doesn't. Bell did not overrule Assessment Technologies' permissive language nor did it extend that decision to a rigid rule—or suggest that the Seventh Circuit's many other cases providing a district court with discretion in both halves of the lodestar calculation. Instead, Bell boils down to an evidentiary error by the district court: The Bell court observed that the district "court was mistaken" in its "belief that Bell failed to present any exhibits supporting his claim that [defense counsel's] hourly rate was $250" and that the "district court never properly analyzed [the] evidence" regarding the $410 rate. Bell v. Lantz, 825 F.3d 849, 854 (7th Cir. 2016). It did not reverse and simply enter judgment for Bell (as it often does in appeals of fee awards), but rather remanded to the district court for it to continue

to exercise its discretion with the benefit of all the evidence. Id.

In another copyright case, post-Bell, this District has applied the market rate analysis of Pickett to prevailing defendants, see Design Basics LLC v. Lexington Homes Inc., no. 14-cv-1102, 2017 WL 1901453 (E.D. Wis. May 8, 2017) ("A reasonable hourly rate is 'derived from the market rate for the services rendered.'"), showing that Bell does not handcuff this Court's discretion.

Regardless, Jaber has advanced arguments for why Bell is wrong if the Court were to read it as PFP urges, because Section 505's purpose of deterrence would be disserved by permitting a losing plaintiff to avoid the consequences of its failed litigation and would further treat a prevailing contingency-fee plaintiff like PFP differently from a prevailing hourly-fee defendant like Jaber. What fee "award" is "reasonable," 17 U.S.C. § 505, is not controlled exclusively by the terms of engagement between lawyer and client. As the Seventh Circuit has instructed in Pickett, a district "court is to **consult [] the market** when determining a reasonable hourly rate for contingent fee cases and **non-contingent fee cases**." Pickett, 664 F.3d at 642 (emphasis supplied). A "market" is not defined by the singular engagement between the prevailing party and its attorney, just as the market is not defined by what a plaintiff, like PFP, unilaterally claims is its licensing model.

Limiting a fee award to those actually incurred and paid by a successful defendant would work at cross-purposes to the Copyright Act's goal of "deterrence" in fee determinations.

**4. The Court need not apportion fees between Jaber and Nofal, just as Prepared Food Photos seeks its full, unapportioned fees**

Finally, Prepared Food Photos also argues that if "Nofal paid any of the fees, Jaber is not entitled to reimbursement for [them]." Opp'n [DE 87 at 16]. It essentially argues that Jaber be awarded no fees because PFP succeeded to the extent of $200 against Nofal. While citing out of district decisions, id., they nevertheless support the notion that the Court has discretion in determining the amount of Jaber's fees. Prepared Food Photos' logic, however, is fatally flawed.

It asserts that because defense counsel also represented Nofal, those fees "would have been incurred regardless of whether Jaber was a defendant in this lawsuit or not. Id. at 17. Reversing the order of parties illustrates PFP's logic problem: Fees in defense of Jaber "would have been incurred regardless of whether [Nofal] was a defendant in this lawsuit or not." In fact, PFP's argument counsels against any apportionment when the facts were so closely interrelated between two claims. Illustrating that fact is that Mrs. Jones herself still referred to Nofal and Jaber jointly in her most recent declaration. [DE 87-1 at ¶ 9] ("Defendants' denial"). So too in the legal memorandum authored by PFP's attorneys, which is replete with references to the defendants jointly on key issues. Opp'n, [DE 83 at 2] ("Defendants to acknowledge **their control** of the subject Facebook page" and "Defendants denied **their display** of the photograph" and "Defendants were sticking to **their** nonsensical **position**); id. at 10 ("Defendants [plural] purportedly not controlling the Facebook page"); id. at 12 ("Plaintiff was left with little choice but to pursue this lawsuit to effectuate Defendants' [plural] removal of such from the Facebook page"); id. at 13 ("sincere belief that Defendants [plural] committed copyright infringement and that Defendants [plural] were liable as a result of **their** conduct") (emphasis supplied). That Prepared Food Photos itself is unable to keep the two co-defendants distinct in its legal arguments shows that apportionment is difficult, if not impossible on this record—and PFP makes no effort to parse what fees would be wholly attributable to Nofal only. Its argument that there should be no fee award to Jaber whatsoever simply falls flat.

Contrary to Prepared Food Photos' all-or-nothing argument, the law allows recovery of full fees to a prevailing defendant even where other defendants were found liable. Where "the plaintiff's claims of relief ... involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole,

making it difficult to divide the hours expended on a claim-by-claim basis, ... the district court should focus on the significance of the overall relief obtained by the [prevailing party] in relation to the hours reasonably expended on the litigation." Ustrack v. Fairman, 851 F.2d 983, 988 (7th Cir. 1988). When the claims are so related, then "'[n]o exact calculation of the time' reasonably required to prepare and litigate a case if that case had been confined to its meritorious issues is possible." Divane v. Krull Ele. Co., 319 F.3d 307, 315 (7th Cir. 2003) (quoting Ustrack).

However the Court ultimately resolves the competing fees claims, it should be consistent with regard to apportionment as between the parties: Either (A) Prepared Food Photos' fee award should be reduced (apportioned) to account for time spent prosecuting its failed claim against Jaber, and be awarded its fees only with regard to Nofal (if at all[5]), while Jaber's fees should be similarly apportioned, or (B) no apportionment in either fee claim. The Court ought, for the reasons articulated throughout the post-judgment proceedings, deny PFP's fees and award Jaber fees on a market-based lodestar calculation.

## CONCLUSION

Prepared Food Photos' opposition to Jaber's motion for attorney's fees is unavailing, advancing a number of false assertions about what Jaber argued in his motion and what the case law stands for. It is entirely silent on its settlement demands as the real reason this action was pursued, and they show that its position was unreasonable.

   /s/ Griffin Klema
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Attorney for Defendants
**KLEMA LAW, P.L.**
420 W. Kennedy Boulevard
Tampa, FL 33606

---

[5] To be clear: Nofal argues there are good reasons why the Court should outright deny any fees to Prepared Food Photos as a copyright troll given its conduct in this action as analyzed under the Fogerty factors.

Telephone: 202-713-5292
E-mail: Griffin@KlemaLaw.com